**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHEN IDE, KAREN STEELE-CLARKE, DONALD DOMINIQUE, JR., AND PHILIP TENN, on behalf of themselves and all others similarly situated, | Case No. 20-cv-03542-JMF |
| Plaintiff, | FIRST AMENDED CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| BRITISH AIRWAYS, PLC (UK), | |
| Defendant. | |

## I.      INTRODUCTION

1.      Plaintiffs Stephen Ide, Karen Steele-Clarke, Donald Dominique, Jr., and Philip Tenn purchased round-trip tickets on British Airways PLC, ("BA"). With the onset of the COVID-19 pandemic, BA canceled Plaintiffs' flights. Under BA's Conditions of Carriage, Plaintiffs had the contractual right to a refund. Instead of honoring this contractual right, BA refuses to refund Plaintiffs the amount they paid for their tickets on the canceled flights. Instead, BA has issued vouchers to some, but not all, Plaintiffs. Plaintiffs sue for BA to honor their contract and provide a refund for themselves and all others similarly situated.

2.      BA is the flag carrier for the United Kingdom ("UK") and is the largest international air carrier in the UK. BA holds itself out as "a full service global airline" with an "extensive global route network flying to and from centrally-located airports." According to BA's October 2019 fact sheet, a BA aircraft takes off every 90 seconds, and the airline carries up to 145,000 customers every day and 45 million customers per year.

3.      The COVID-19 pandemic has caused a sharp decline in demand for international air travel. Many airlines—including BA—have cancelled previously booked flights to reduce supply in conformity with the reduced demand.

4.      BA's self-imposed conditions of carriage unambiguously state that: "We will pay fare refunds as set out below if we . . . cancel a flight."

5.      BA's conditions of carriage align with longstanding requirements under federal law. According to an enforcement notice issued by the United States Department of Transportation ("DOT") on April 3, 2020, carriers like BA have a "longstanding obligation . . . to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier." This refund obligation, DOT clarified, applies regardless of whether the cancellation arises from circumstances beyond the carrier's control: "[t]he focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger."

6.      Despite DOT's guidance and in breach of its Conditions of Carriage, BA has engaged in a pattern and practice of denying refunds to its passengers for flights that BA cancelled as a result of the COVID-19 pandemic.

7.      BA's scheme to breach its Conditions of Carriage and deny refunds to its customers relies on making its refund mechanisms difficult to access. Instead of providing the refunds required by its contract, BA directs individuals who seek to apply for a refund on its website to apply for future travel vouchers. As the *Daily Mail* reported, "The refund option has been removed

from [BA's] website but the option to claim a voucher remains."[1] After coercing customers like Mr. Ide and Ms. Steele-Clarke to opt for a voucher, instead of the refund to which they are contractually entitled, BA uses the coerced voucher selection as an excuse to deny the refund. BA thereby retains revenue through subterfuge and misdirection, in violation of its own contractual obligations.

8.       BA's conduct breached the terms of its Conditions of Carriage. Plaintiffs accordingly bring this action to obtain the refunds to which they and the other Class members (as defined below) are entitled. BA's wrongful practice of denying refunds has deprived consumers like Plaintiffs of the money they paid for cancelled travel during a time of crisis when they need access to those funds.

## II.    PARTIES

### A.    Plaintiffs

#### 1.    Stephen Ide

9.       Plaintiff Stephen Ide is a Massachusetts citizen residing in Norton, Massachusetts.

10.      On September 10, 2019, Mr. Ide purchased airline tickets from BA for $701.46. He purchased airfare for a round-trip flight from Boston to London departing March 25, 2020 and returning April 5, 2020. Mr. Ide purchased his tickets from BA online.

11.      On March 18, 2020, Mr. Ide received an email from BA notifying him that his flight had been cancelled.

12.      On March 20, 2020, Mr. Ide called BA on its customer service line to request a refund, but he was unable to connect with a customer service representative.

---

[1] https://www.dailymail.co.uk/news/article-8272931/Travel-agencies-face-legal-action-blocking-7billion-refunds-cancelled-holidays.html (last visited June 18, 2020).

13.     On March 22, 2020, Mr. Ide searched online to find the procedure for getting a refund for his airfare, but he could only find information about getting a travel voucher. Because the voucher was the only relief available, Mr. Ide applied and received an email confirmation that BA had received his request.

14.     On March 24 and 25, 2020, Mr. Ide called BA four times to request that his voucher request be converted to a refund. Each time he was disconnected.

15.     On March 26, 2020, Mr. Ide received an email from BA with a voucher number. The email stated "This voucher can be used as part payment towards a future booking. It must be redeemed for travel on flights taken within 12 months from the date of the first flight in your original booking."

16.     Mr. Ide seeks the refund he is contractually entitled to and does not want a travel voucher because he does not know when or if he will be able to use the voucher.

17.     On April 21, 2020, Mr. Ide again called BA and finally reached a customer service agent. The agent denied his request for a refund because BA had already issued a voucher. The agent told Mr. Ide that he could escalate his complaint by contacting Customer Relations and filing a complaint. Mr. Ide attempted to do so, but the BA website would not permit him to file his complaint.

### 2.     Karen Steele-Clarke

18.     Plaintiff Karen Steele-Clarke is a Georgia citizen residing in Buford, Georgia.

19.     On October 22, 2019, Ms. Steele-Clarke purchased airline tickets from BA for $1315.39. She purchased airfare for a round-trip flight from New York to London departing July 1, 2020 and returning July 8, 2020. Ms. Steele-Clarke purchased her tickets from BA online.

20.     On May 4, 2020, BA emailed Ms. Steele-Clarke and let her know that her outbound flight had been canceled.

21.     Ms. Steele-Clarke promptly went to the BA website and filled out a form that she believed would allow her to request a refund.

22.     On May 7, 2020, BA emailed her a voucher.

23.     She promptly responded, explaining that she had not intended to request a voucher and did not want a voucher. She requested a refund.

24.     BA refused her request. Although she has repeated her request by several channels, including direct messages on Twitter, and British Airways refunded her the extra $114 that she paid for seat selection, she has never obtained a refund for her airfare.

### 3.     Donald Dominique, Jr.

25.     Plaintiff Donald Dominique, Jr., is a Florida citizen residing in North Miami, Florida.

26.     On December 29, 2019, Mr. Dominique purchased airline tickets from BA. He purchased airfare for a round-trip flight from Miami to Paris with a connection in London, departing March 16, 2020 and returning March 20, 2020. Mr. Dominique purchased his tickets through Expedia.

27.     Mr. Dominique's return flight from Paris to London was canceled.

28.     He called Expedia and BA several times.

29.     He was never able to reach a customer service representative at BA.

30.     In early April, he reached a customer service representative at Expedia, who said that he could not obtain a refund for his canceled flight. The representative said that BA had only authorized Expedia to give vouchers.

31.     Mr. Dominique has never received a voucher or a refund. He wants a refund for his canceled flight.

### 4. Philip Tenn

32.    Plaintiff Philip Tenn is a Florida citizen residing in Wesley Chapel, Florida.

33.    In September 2019, Mr. Tenn purchased airline tickets from BA. He purchased airfare for a round-trip flight from Tampa to London, departing March 15, 2020, and returning March 24, 2020. Mr. Tenn purchased his tickets from BA online.

34.    Mr. Tenn's return flight from London was canceled. BA notified Mr. Tenn by email.

35.    Mr. Tenn filled out the voucher form on BA's website, but before he received a voucher, he contacted BA by phone and email and requested a refund. BA refused to provide him a refund.

36.    Although he has contacted BA numerous times since, BA has never provided him a refund.

37.    BA also never provided him a voucher.

38.    He wants a refund for his canceled flight.

### B. Defendant

39.    BA's North American headquarters is in New York, New York.

40.    BA is a subsidiary of the International Consolidated Airlines Group S.A. ("IAG"). BA is incorporated under the laws of England and Wales. Its corporate headquarters is in Harmondsworth, United Kingdom.

## III.    JURISDICTION AND VENUE

41.    This Court has jurisdiction over the lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Plaintiffs and Defendant are domiciled in different states.

42.     The Court has personal jurisdiction over BA because it has sufficient minimum contacts in New York to render the exercise of jurisdiction by this Court fair and proper. BA intentionally avails itself of markets within New York through its promotion, distribution, and sale of transportation services in this State.

43.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because BA's North American headquarters is located within the Southern District of New York and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## IV.    SUBSTANTIVE FACTS

### A.     British Airways's Conditions of Carriage

44.     According to BA, when a customer "buy[s] a ticket to travel on a flight we operate, [the customer] enter[s] into a contract of carriage with us."[2] The contract is governed by, among other things, BA's General Conditions of Carriage.

45.     BA's General Conditions of Carriage "apply to all flights we operate under the BA airline designator code and to any case where we have a legal liability to you in relation to your flight." These General Conditions of Carriage supersede any inconsistent BA regulations.

46.     Clause 9b3 of BA's General Conditions of Carriage concerns specific remedies for flight cancellation, providing:

> If we:
>
> - cancel a flight;
> - delay a flight by five hours or more;
> - fail to stop at your place of stopover or destination; or
> - cause you to miss a connecting flight on which you hold a confirmed reservation;

---

[2]   https://www.britishairways.com/en-us/information/legal/british-airways/general-conditions-of-carriage (last visited May 5, 2020).

you can choose one of the three remedies set out immediately below.

Remedy 1

We will carry you as soon as we can to the destination shown on your ticket on another of our scheduled services on which a seat is available in the class of service for which you have paid the fare. If we do this, we will not charge you extra and where necessary, will extend the validity period of your ticket.

Remedy 2

We will carry you to the destination shown on your ticket in the class of service for which you have paid the fare at a later date at your convenience and within the validity period of your ticket on another of our scheduled services on which a seat is available. If we do this, we will not charge you extra.

Remedy 3

We will give or obtain for you an involuntary fare refund.

We will give you additional assistance, such as compensation, refreshments and other care and reimbursement, if required to do so by any law which may apply. We will have no further liability to you.

(Emphasis omitted).

47.   An "involuntary fare refund" is defined as "a refund, under clause 10b, of the fare for your ticket." (Emphasis omitted).

48.   Clause 10b, in turn, provides:

10b1) We will pay fare refunds as set out below if we:

- cancel a flight

- make a significant change to a flight time which is not acceptable to you

- delay a flight by five hours or more

- fail to stop at your place of destination or stopover

- cause you to miss a connecting flight on which you held a confirmed reservation or

- refuse to carry you because a banning notice is in force against you or for some other reason pursuant to these conditions where reference is made to this clause.

10b2) If you have not used any part of the ticket, the refund will be equal to the fare and any carrier imposed charges and surcharges, and taxes, fees and charges you have paid.

10b3) If you have used part of the ticket, the refund will be equal to at least the difference between the fare and any carrier imposed charges and surcharge and taxes, fees and charges you have paid and the correct fare and carrier imposed charges and surcharges, and taxes, fees and charges for travel between the points for which you have used your ticket.

(Emphasis omitted).

49.     Under these terms, if BA cancels a flight, it is contractually obligated to provide to each affected passenger the option to receive a full refund of the fare for his or her ticket.

**B.     The COVID-19 Pandemic**

50.     In late 2019, the Chinese government confirmed several cases of a novel illness causing pneumonia-like symptoms. The illness was subsequently identified as COVID-19 (also known as the "Coronavirus" or "SARS-CoV-2"). By January 2020, the U.S. government confirmed several domestic cases.

51.     COVID-19 spread rapidly through the world in the first quarter of 2020. Millions have now been infected. The World Health Organization characterized COVID-19 as a "public health emergency of international concern" in late January and as a pandemic on March 11, 2020.[3]

52.     Because the virus that causes COVID-19 is highly infectious, and because the illness can be severe or fatal, federal, state, and local governments in the United States have implemented travel restrictions and shelter-in-place or stay-at-home orders. New York issued its

---

[3]  https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 (last visited June 18, 2020).

stay-at-home order on March 20, 2020.[4] And as of the filing of this Complaint, the vast majority of states have ordered their citizens to shelter in place for protection of their personal health and safety and that of the broader public.

53.     The crisis, travel restrictions, and fear of contracting or spreading the disease have caused a sharp drop in demand for air travel. IAG stated that, in response to the declining demand, it was "making significant reduction to its flying schedules." BA has acknowledged that it may take "years" for demand to return to 2019 levels.

### C.     The DOT Notice

54.     As airlines like BA began to cancel flights *en masse*, DOT on April 3, 2020 issued an "Enforcement Notice Regarding Refunds by Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel."[5] This DOT notice advises, in relevant part, "U.S. and foreign carriers, operating at least one aircraft having a seating capacity of 30 or more seats, that passengers should be refunded promptly when their scheduled flights are cancelled or significantly delayed." The DOT notice further states: "Airlines have long provided such refunds, including during periods when air travel has been disrupted on a large scale, such as the aftermath of the September 11, 2001 attacks, Hurricane Katrina, and presidentially declared natural disasters. Although the COVID-19 public health emergency has had an unprecedented impact on air travel, the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged."

---

[4] https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.8.pdf (last visited June 18, 2020).
[5] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020.pdf. (last visited June 18, 2020).

55.     The DOT issued its notice due to its receipt of an increasing number of customer complaints from passengers like Plaintiffs who reported being denied refunds. The notice thus makes clear that:

> Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions). The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger.

**D.     Despite Its Contractual Obligations British Airways Is Acting to Deprive Consumers of Refunds During the Pandemic**

56.     During the COVID-19 crisis, BA has canceled a high volume of flights. While exact numbers are in the exclusive possession of BA, in late March, airlines were canceling over one-third of all scheduled flights each day in the United States.

57.     Because of the number of flights cancelled, BA had substantial financial incentives to impede passengers' ability to obtain the refunds to which they were contractually entitled.

58.     To limit the number of refunds BA would be required to issue, no later than mid-March 2020, BA modified its website to mislead its customers into accepting vouchers instead of the refunds it was contractually required to make available.

59.     Customers with canceled flights are presented with a page similar to the page reproduced below.



60.     The page shown above has a button in the lower right that purports to provide the option to "[c]ancel and refund flight(s)[.]" But clicking on the button leads to the following screen:



61.     The screen above does *not* provide the option to cancel and receive a refund. It provides only the option to apply to receive a voucher for future travel.

62.     The screen shown above is confusing and misleading to an ordinary customer. Further, a customer who trusted the text in the button on the previous screen—"Cancel and refund flight(s)"—could believe that filling out this application was connected with receiving a refund.

63.     But, in fact, filling out this application *prevents* a customer from receiving a refund from BA. As Mr. Ide and Ms. Steele-Clarke discovered, if a customer fills out this application, BA will refuse to provide a refund.

64.     There is no consistently usable way to request a refund on the BA website despite BA's contractual obligation to make available a refund option.

65.     The only way to receive a refund is to call BA. But this option is also unavailable for many customers. BA disconnects a large percentage of calls due to heavy call volume or other reasons. Even if the call connects, customers often must wait for hours on hold before speaking to a live customer service representative, which is the only way to receive a refund. There is no automated way to receive a refund over the phone.

66.     As a result, customers are frequently unable to reach a customer service representative and consequently cannot obtain the refunds to which they are contractually entitled. Very few BA customers succeed in obtaining the refunds for cancelled flights to which they have a contractual right.

67.     BA's conduct is ongoing. The *Independent* reported on April 21, 2020, that "BA has removed the option of being able to submit a simple refund claim form on its website."[6]

68.     Similarly, an April 28 article on the British financial website *This Is Money* reported, in regard to BA, that "[t]he refund option has been removed from its website" and "[w]hen we called this week, it played an automated message, then cut out."[7]

69.     As the travel website *Traveling for Miles* noted:

> Most BA customers are (a) not going to want to spend hours on hold
> and (b) are probably not going to realize that they don't have to

---

[6] https://www.independent.co.uk/travel/news-and-advice/flight-cancelled-refund-easyjet-ryanair-british-airways-ba-how-to-claim-a9444801.html (last visited June 18, 2020).

[7] https://www.thisismoney.co.uk/money/holidays/article-8266529/The-7bn-refund-rip-Holiday-plans-ruins.html (last visited June 18, 2020).

accept a voucher in place of a full cash refund. After all, the button they clicked on promised them an option for a refund but the page it led to just offered a voucher – a lot of people are going to think that the voucher *is* the refund.

**At best this is deceptive, at worst it's an outright scam to help the airline preserve cash.**[8]

(Emphasis in original).

70. The travel website *God Save the Points* stated:

British Airways chose . . . to trick people into accepting vouchers with the airline for future travel, instead of handing back the cash legally owed, if wished. That's duplicitous, and as people in all industries lose their jobs en masse, it's wrong to deceive customers . . . .

Worse, it's been proven that this was intentional on the part of British [A]irways. The airline modified the refund and cancellation page to hide the refund option entirely.

The airline intentionally redirected customers who were due a full refund to their original form of payment, to a form which gave them only an option for a voucher to use toward a future flight. And of course, they understaffed the phones, so anyone who knew better couldn't get through.

A refund button was nowhere to be found. Again, it was intentionally hidden. Only after more than a day of trial and error, Head For Points was able to find a workaround using a particular browser.

Don't picture the 1% of tech savvy enthusiasts who played around with the website all day, picture the 99% of travelers here, almost all of which assumed they were presented their full legal options, who absolutely were not. That's a lot of money.[9]

---

[8]  https://travelingformiles.com/how-to-force-the-british-airways-website-to-offer-a-refund/  (last visited June 18, 2020).

[9]   https://www.godsavethepoints.com/british-airways-deceives-passengers-about-refund-rights/ (last visited June 18, 2020).

## V.   <u>CLASS ALLEGATIONS</u>

71.     Plaintiffs bring this action under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) as a representative of a class seeking damages and injunctive relief defined as follows:

> All persons or entities in the United States who purchased at least one ticket for a British Airways flight that was canceled between January 1, 2020, and the present and who did not receive a refund (the "Class").

72.     The following persons and entities are excluded from the Class: Defendant, its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; and the judicial officers and their immediate family members and associated court staff assigned to this case. Plaintiffs reserve the right to modify the class definition based upon discovery and further investigation and/or to add appropriate subclasses.

73.     The members of the Class are so numerous that joinder is impracticable. The Class includes at least thousands of members. BA sells millions of tickets every year, and the recent cancellation of BA flights affected thousands of U.S. travelers. These individuals are widely dispersed throughout the country.

74.     Plaintiffs' claims are typical of the claims of all Class members. Plaintiffs' claims arise out of a common course of conduct that gives rise to the claims of all other Class members. Plaintiffs and all Class members were and will continue to be damaged by the same wrongful conduct, *i.e.*, they were not able to obtain refunds from BA to which they are contractually entitled for cancelled flights.

75.     Plaintiffs will fairly and adequately protect and represent the interests of the Class. Plaintiffs' interests are coincident with, and not antagonistic to, those of the Class.

76.     Plaintiffs are represented by counsel who are experienced and competent in the prosecution of class action litigation and have particular expertise with consumer class action litigation.

77.     Questions of law and fact common to the Class include:

a.   Whether BA's customers had a contractual right to refunds for flights canceled by BA;

b.   Whether BA breached its contract with customers when it did not provide refunds for flights that BA canceled;

c.   Whether BA breached its contract with customers when it failed to provide an adequate mechanism for customers entitled to receive refunds for flights that BA canceled, to request or otherwise obtain such refunds;

d.   Whether BA breached its contract by providing Class members with vouchers instead of refunds;

e.   Whether BA's conduct breaches its contracts with Class members;

f.   The appropriate injunctive relief; and

g.   The quantum of damages to which the Class is entitled.

78.     Questions of law and fact common to the Class members predominate over any questions that may affect only individual Class members, because BA has acted on grounds generally applicable to the entire Class.

79.     Class treatment is a superior method for the fair and efficient adjudication of the controversy because, among other things, class treatment will permit a large number of similarly situated persons to prosecute their common claims in a similar forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons and entities with a means of obtaining redress on claims that likely

would be impracticable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

80.     Class treatment also is appropriate under Rule 23(b)(2) because BA has acted and refused to act on grounds that apply generally to the Class such that final injunctive relief and/or declaratory relief is warranted with respect to the Class as a whole.

## VI.     CLAIM FOR BREACH OF CONTRACT

81.     Plaintiffs restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

82.     Defendant made an offer to Plaintiffs and members of the Class to enter into a contract for one or more airplane flights through passenger tickets for air travel between specific locations, on specific flight numbers, on specific dates and times, at specific prices.

83.     Defendant's offer included a promise that Defendant, at Plaintiffs and Class members' election, would refund fares and any carrier-imposed charges and surcharges, and taxes, fees and charges that Plaintiffs and Class members have paid if Defendant canceled the flights purchased. This promise was specifically identified in Defendant's materially uniform General Conditions of Carriage.

84.     Defendant made such offers in writing through its direct channels (such as its website) and through traditional travel agencies and online travel agencies.

85.     The terms of Defendant's offer contained an express, definite promise by Defendant and gave Plaintiffs and members of the Class the power to agree to the terms of Defendant's offer through the act of purchasing a ticket or accepting transportation on Defendant's aircraft.

86.     Plaintiffs and members of the Class accepted Defendant's offer, agreeing to the terms contained in Defendant's offer, including the General Conditions of Carriage. Plaintiffs and members of the Class communicated their acceptance of Defendant's offer by purchasing one or more plane tickets.

87.     Plaintiffs and members of the Class provided valuable consideration, namely the monetary value of the fare and all charges and taxes paid.

88.     Plaintiffs and members of the Class performed all obligations and conditions required and expected of them under their contract with Defendant.

89.     Defendant canceled flights for which Plaintiffs and members of the Class had tickets.

90.     Defendant failed to provide refunds to Plaintiffs and members of the Class, as it was contractually obligated to do. Instead of offering refunds, Defendant acted to prevent Plaintiffs and members of the Class from requesting refunds, and in lieu of offering refunds, gave vouchers for future travel.

91.     As a result, Defendant failed to perform and/or has materially breached the express terms of its contracts (self-imposed obligations) with Plaintiffs and members of the Class.

92.     Because of Defendant's failure to perform the contract, Plaintiffs and members of the Class have been damaged and/or did not receive the benefits, payment, and/or performance to which they were entitled.

93.     As a result, Plaintiffs and members of the Class are entitled to complete refunds for all fares, charges, and taxes paid, in an amount to be proven at trial.

## VII.    <u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully demands that the Court:

A.    Determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2), and (b)(3), direct that notice of this action be given to the Class pursuant to Rule 23(c)(2), and appoint Plaintiffs as named representatives of the Class;

B.    Permit expedited discovery proceedings leading to a prompt trial on the merits before a jury;

C.    Enter judgment against Defendant and in favor of Plaintiffs and the Class;

D.    Award damages and refunds in the amount of unrefunded monies paid for BA airline tickets, in addition to statutory damages, punitive or exemplary damages, and pre-judgment and post-judgment interest, and such other relief as permitted by law;

E.    Award Plaintiffs and the Class their costs of suit, including reasonable attorneys' fees as provided by law;

F.    Enter injunctive relief to stop Defendants' unlawful conduct; and

G.    Award such further and additional relief as is necessary to correct for harms Defendants' unlawful conduct caused and as the Court may deem just and proper under the circumstances.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated:  June 19, 2020                         /s/ *Adam E. Polk*
                                              Adam E. Polk (*pro hac vice*)
                                              Scott Grzenczyk (*pro hac vice*)
                                              Tom Watts (*pro hac vice*)
                                              **GIRARD SHARP LLP**
                                              601 California Street, Suite 1400

San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
scottg@girardsharp.com
tomw@girardsharp.com

E. Michelle Drake
John G. Albanese
**BERGER MONTAGUE PC**
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel: (612) 594-5933
Fax: (612) 584-4470
Email: emdrake@bm.net
        jalbanese@bm.net

Shanon J. Carson
**BERGER MONTAGUE PC**
1818 Market Street
Suite 3600
Philadelphia, PA 19103
scarson@bm.net
215-875-4656

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Adam E. Polk, hereby certify that on June 19, 2020, I caused the forgoing document to be filed electronically with the United States District Court for the Southern District of New York through the Court's mandated ECF service.

Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing. I declare under penalty of perjury that the foregoing is true and correct.

/s/ *Adam E. Polk*