**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------------

STEPHEN IDE, KAREN STEELE-CLARKE,
DONALD DOMINIQUE, JR., AND PHILIP
TENN, on behalf of themselves and all others
similarly situated,

                         Plaintiffs,                              Case No. 1:20-cv-03542-JMF

v.

BRITISH AIRWAYS, PLC (UK),

                         Defendant.

-------------------------------------------------------------------------------

### DEFENDANT BRITISH AIRWAY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT AND COMPEL ARBITRATION (IN PART)

**DLA PIPER LLP (US)**

Keara M. Gordon
Colleen Carey Gulliver
William J. Diggs
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
william.diggs@us.dlapiper.com

*Attorneys for Defendant British Airways*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................3

    A.    The Covid-19 Pandemic Forces BA to Cancel Flights...................................3

    B.    BA's Response to Covid-19..............................................................................4

        1.    BA's COC ...........................................................................................4

        2.    BA Offers Refunds and Vouchers .....................................................5

    C.    The Named Plaintiffs ......................................................................................6

        1.    Donald Dominque, Jr. ........................................................................6

        2.    Philip Tenn........................................................................................7

        3.    Stephen Ide........................................................................................8

        4.    Karen Steele-Clarke .........................................................................8

LEGAL STANDARD................................................................................................9

ARGUMENT ..........................................................................................................10

I.    EXPEDIA'S ARBITRATION AGREEMENT AND CLASS ACTION WAIVER
    PRECLUDES MR. DOMINQUE'S CLAIM. ..................................................10

    A.    The Parties Entered into a Valid and Enforceable Arbitration Agreement
        and Class Action Waiver. ...............................................................................11

    B.    Mr. Dominque's Claim Is Subject to the Arbitration Provision and Class
        Action Waiver. ...............................................................................................13

II.    THE PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT.
    .................................................................................................................................14

    A.    BA Did Not Breach the COC...........................................................................14

        1.    Mr. Dominique and Mr. Tenn...........................................................14

        2.    Mr. Ide and Ms. Steele-Clark...........................................................15

    B.    The DOT Guidance Cannot Support a Breach of Contract Claim.......................18

III.    THE ADA PRE-EMPTS THE CLAIMS.............................................................20

    A.    The ADA Limits Breach of Contract Claims to the Parties' Bargain...................21

    B.    The Plaintiffs' Breach of Contract Claims Are Really Pre-Empted Claims
        for Breach of Good Faith and Fair Dealing or Consumer Protection Laws. .........22

IV.    THE PLAINTIFFS' REMEDIES SOUGHT BEYOND COMPENSATORY
    DAMAGES MUST BE STRICKEN. ..................................................................24

    A.    The COC's Limitation of Liability Applies.........................................................24

    B.    Statutory and Punitive Damages are Unavailable..................................................24

C.      The Plaintiffs Lack Article III Standing for Injunctive Relief................................24

CONCLUSION..........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C.L. Computs. & Software, Inc. v. Fed. Express Corp.*,
  2016 WL 946127 (N.D. Cal. Mar. 14, 2016) ........................................................................21

*A.I.B. Express v. FedEx Corp.*,
  358 F. Supp. 2d 239 (S.D.N.Y. 2004) ..................................................................................22

*Abdel-Karim v. EgyptAir Airlines*,
  116 F. Supp. 3d 389 (S.D.N.Y. 2015) .............................................................................14, 21

*Air Transp. Ass'n of Am., Inc. v. Cuomo*,
  520 F.3d 218 (2d Cir. 2008) ................................................................................................20

*Alatortev v. JetBlue Airways, Inc.*,
  2018 WL 784434 (N.D. Cal. Feb. 7, 2018) ..........................................................................21

*Am. Airlines, Inc. v. Wolens*,
  513 U.S. 219 (1995) ................................................................................................21, 22, 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................................9, 10

*Atkins v. Apollo Real Estate Advisors, L.P.*,
  2008 WL 1926684 (E.D.N.Y. Apr. 30, 2008) ........................................................................3

*Bailey v. Rocky Mountain Holdings, LLC*,
  889 F.3d 1259 (11th Cir. 2018) ...........................................................................................19

*Bakon v. Rushmore Serv. Ctr., LLC*,
  2017 WL 2414639 (E.D.N.Y. June 2, 2017) .........................................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................10

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
  784 F.3d 887 (2d. Cir. 2015) ...............................................................................................14

*Borrero v. Ruppert Hous. Co., Inc.*,
  2009 WL 1748060 (S.D.N.Y. June 19, 2009) .......................................................................11

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005) ..................................................................................................3

*Buck v. Am. Airlines, Inc.*,
   476 F.3d 29 (1st Cir. 2007)...................................................................................20

*Buonasera v. Honest Co., Inc.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016)....................................................................25

*Burcham v. Expedia, Inc.*,
   2009 WL 586513 (E.D. Mo. Mar. 6, 2009) ...........................................................12

*Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*,
   537 F. Supp. 2d 546 (S.D.N.Y. 2008), *aff'd*, 572 F.3d 76 (2d Cir. 2009) ..............17

*Cargill Int'l S.A. v. M/T Pavel Dybenko*,
   991 F.2d 1012 (2d Cir. 1993)................................................................................13

*Carver v. City of New York*,
   621 F.3d 221 (2d Cir. 2010)..................................................................................25

*Cenci v. Mall Airways, Inc.*,
   531 N.Y.S.2d 743 (N.Y. City Ct. 1988) ................................................................16

*Chanze v. Air Evac EMS, Inc.*,
   2018 WL 5723947 (N.D.W.V. Nov. 1, 2018) ...................................................23, 24

*Church v. Expedia Inc.*,
   2019 WL 2422577 (W.D. Wash. June 10, 2019)....................................................13

*Cox v. Spirit Airlines, Inc.*,
   786 F. App'x 283 (2d Cir. 2019) ...........................................................................22

*Delta Air Lines, Inc. v. Black*,
   116 S.W.3d 745 (Tex. 2003)..................................................................................22

*Dennis v. Delta Air Lines, Inc.*,
   2011 WL 4543491 (E.D.N.Y. Aug. 18, 2011)...................................................15, 18

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*,
   631 F.3d 42 (2d Cir. 2011)....................................................................................14

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
   423 F. Supp. 2d 173 (S.D.N.Y. 2006).....................................................................3

*Feldman v. United Parcel Service, Inc.*,
   2008 WL 800989 (S.D.N.Y. Mar. 24, 2008) ....................................................23, 24

*Gally v. Columbia Univ.*,
   22 F. Supp. 2d 199 (S.D.N.Y. 1998)......................................................................18

iv

*Giuffre v. Delta Air Lines, Inc.*,
    2012 WL 3988981 (E.D.N.Y. Sept. 11, 2012) .......................................................19

*Glover v. Colliers Intern. NY, LLC*,
    2014 WL 5410016 (S.D.N.Y. Oct. 24, 2014) ....................................................9, 10

*Gonnella v. United States Sec. & Exch. Comm'n*,
    954 F.3d 536 (2d Cir. 2020)..................................................................................20

*Hekmat v. U.S. Transp. Sec. Admin.*,
    247 F. Supp. 3d 427 (S.D.N.Y. 2017).....................................................................14

*Howell v. Alaska Airlines, Inc.*,
    994 P.2d 901 (Wash. App. 2000)......................................................................21, 23

*Hughes v. Southwest Airlines Co.*,
    961 F.3d 986 (7th Cir. 2020) .........................................................................16, 17

*In re Am. Exp. Fin. Advisors Securities Litig.*,
    672 F.3d 113 (2d Cir. 2011)...................................................................................11

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004)...................................................................................11

*Johnson v. Parts Auth., LLC*,
    2017 WL 9511079 (E.D.N.Y. Aug. 17, 2017), *report and recommendation
    adopted as modified*, 2017 WL 4402463 (E.D.N.Y. Sept. 30, 2017) .....................13

*Knife Rights, Inc. v. Vance*,
    802 F.3d 377 (2d Cir. 2015)...................................................................................25

*Kommer v. Bayer Consumer Health*,
    710 F. App'x 43 (2d Cir. 2018) ..............................................................................25

*Kurtz v. Costco Wholesale Corp.*,
    2020 WL 3480830 (2d Cir. June 26, 2020) ...........................................................25

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)......................................................................................9

*Martin v. United Airlines, Inc.*,
    2017 WL 3687347 (April 18, 2017 W.D. Okla.)......................................................20

*Martin v. United Airlines, Inc.*,
    727 F. App'x 459 (10th Cir. 2018) ...................................................................15, 17

*McGarry v. Delta Air Lines*, Inc.
    2019 WL 2558199 (C.D. Cal. June 18, 2019) ..................................................21, 22

*McLean-Laprade v. HSBC*,
  2013 WL 3930565 (N.D.N.Y. July 30, 2013) .......................................................................25

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017)....................................................................................................11

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992)........................................................................................................20, 23

*Morelli v. Alters*,
  2020 WL 1285513 (S.D.N.Y. Mar. 18, 2020) ......................................................................11

*Moreno v. Expedia*,
  2018 WL 3059617 (W.D.N.C. June 20, 2018) ......................................................................12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)..................................................................................................................10

*Nayal v. HIP Network Servs., IPA Inc.*,
  620 F. Supp. 2d 566 (S.D.N.Y. 2009)...................................................................................11

*Nicosia v. Amazon, Inc.*,
  834 F.3d 220 (2d Cir. 2016)..................................................................................................25

*Northwest, Inc. v. Ginsberg*,
  572 U.S. 273 (2014)........................................................................................................21, 23

*Oei Hong Leong v. Goldman Sachs Group, Inc.*,
  2014 WL 2893310 (S.D.N.Y. June 25, 2014) .......................................................................13

*Olsen v. Charter Commun., Inc.*,
  2019 WL 3779190 (S.D.N.Y. Aug. 9, 2019) ........................................................................14

*PaineWebber, Inc. v. Bybyk*,
  81 F.3d 1193 (2d Cir. 1996)..................................................................................................19

*Pena v. British Airways, PLC (UK)*,
  2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020) .................................................................21, 23

*Plazza v. Airbnb, Inc.*,
  289 F. Supp. 3d 537 (S.D.N.Y. 2018)...................................................................................11

*Rapa v. City of New York*,
  2015 WL 5671987 (S.D.N.Y. Sept. 25, 2015).......................................................................25

*Roberts v. Weight Watchers Int'l, Inc.*,
  217 F. Supp. 3d 742 (S.D.N.Y. 2016)...................................................................................24

*Ruta v. Delta Airlines, Inc.*,
   322 F. Supp. 2d 391 (S.D.N.Y. 2004) ................................................................. 18

*Saizhang Guan v. Uber Techs., Inc.*,
   236 F. Supp. 3d 711 (E.D.N.Y. 2017) ................................................................. 11

*Santora v. Capio Partners, LLC*,
   409 F. Supp. 3d 106 (E.D.N.Y. 2017) ................................................................. 3

*Schachter v. U.S. Life Ins. Co. in City of New York*,
   77 F. App'x 41 (2d Cir. 2003) ........................................................................... 9

*Schneberger v. Air Evac EMS, Inc.*,
   2017 WL 1026012 (W.D. Okla. Mar. 15, 2017), *aff'd*, 749 F. App'x 670 (10th
   Cir. 2018) ............................................................................................. 23, 24

*Simeon v. Domino's Pizza LLC*,
   2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019) .......................................................... 11

*Spear, Leeds & Kellogg v. Cent. Life Assurance Co.*,
   85 F.3d 21 (2d Cir. 1996) ................................................................................ 12

*Star Marianas Air, Inc. v. Commonwealth Ports Authority*,
   2018 WL 4140780 (D.N.M.I. Aug. 30, 2018) ......................................................... 19

*Statland v. Am. Airlines, Inc.*,
   998 F.2d 539 (7th Cir. 1993) ............................................................................ 21

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   2020 WL 2907676 (S.D.N.Y. June 3, 2020) ......................................................... 12

*Van Den Heuvel v. Expedia Travel*,
   2017 WL 5133270 (E.D. Cal. Nov. 6, 2017), *report and recommendation
   adopted*, 2017 WL 6512945 (E.D. Cal. Dec. 20, 2017) ........................................ 12

*Vitrano v. N.A.R., Inc.*,
   2020 WL 1493620 (E.D.N.Y. Mar. 27, 2020) ....................................................... 12

*Waul v. American Airlines, Inc.*,
   2003 WL 22719273 (Cal. App. Ct. Nov. 17, 2003) ........................................... 23, 24

*Zimmerman v. UBS AG*,
   2018 WL 4054860 (S.D.N.Y. Aug. 24, 2018), *appeal dismissed*, 789 Fed.
   Appx. 914 (2d Cir. 2020) ............................................................................... 10

## Statutes

9 U.S.C. § 2 .................................................................................................... 2

9 U.S.C. § 4................................................................................................................3, 10

49 U.S.C. § 41712......................................................................................................19

49 U.S.C. § 41713......................................................................................................20

Administrative Procedure Act, 5 U.S.C. § 553.........................................................20

Airline Deregulation Act of 1978, 49 U.S.C. § 1305 ................................................3

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ............................................................2

**Other Authorities**

84 Fed. Reg. 71,714 (Dec. 27, 2019) ......................................................................20

Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) ................................................9

Justice Manual § 1-20.100 ......................................................................................19

## PRELIMINARY STATEMENT

Coronavirus ("Covid-19") unleashed unprecedented destructive effects throughout the globe.  Among other things, it completely disrupted air travel.  The First Amended Complaint ("FAC") in this case alleges that, in a normal year, "a [British Airways Plc ("BA")] aircraft takes off every 90 seconds, and [BA] carries up to 145,000 customers every day and 45 million customers per year."  (FAC ¶ 2.)  2020 is not a normal year.  Stay at home orders and government restrictions on travel caused a 94 percent reduction in passenger capacity from late March through May 7, 2020; most aircraft were grounded.  (Ex. 1.)  To illustrate the severity of the reduction, the TSA screened an average of 2,316,910 people per day over the period from April 1 to April 12, 2019; in the same period in April 2020, they screened only an average of 110,644 passengers per day.  (Ex. 2.)

Through this turmoil, BA worked to stay ahead of the rapidly changing public health crisis.  When it was forced to cancel flights, BA – as its Conditions of Carriage ("COC") require – provided refunds.  By May 13, 2020, BA had provided cash refunds on 921,000 tickets involving 2.11 million flights, and BA was processing 47,400 additional bookings.  (Ex. 3.)  BA also made vouchers available to customers who preferred a voucher for future travel.  As of May 13, 2020, over 346,000 customers elected to receive a voucher.  (*Id.*)  BA's website made clear that refunds, not just vouchers, were available, directing customers who did not wish to rebook or elect a voucher to call BA "to discuss your refund options."  (Ex. 4; *see also* Ex. 5 (informing customers that "there are a number of options available," and that BA will "rebook or refund your ticket" via BA's "Manage My Booking" page or customers could call BA to "discuss rebooking options").)  And, on the page where one filled out a request for a voucher (which was clearly marked as such), BA again stated that, instead of a voucher, one could "contact [BA] to discuss your refund

options."  (FAC ¶ 60.)

Plaintiffs Stephen Ide and Karen Steele-Clarke elected to receive vouchers from BA, and BA provided them.  BA also offered to provide a voucher to Philip Tenn, even though BA did not actually cancel Mr. Tenn's flight.  Donald Dominique, Jr., the fourth named plaintiff, alleges that he has not received a voucher or refund, but, as explained below, his claim cannot be adjudicated in this Court.  All of their claims fail, for the reasons set forth below, and respectfully, the Court should dismiss them.

First, Mr. Dominique's claim belongs in arbitration, not in this Court.  He bought the plane ticket at issue on Expedia.com.  To do so, Mr. Dominique explicitly consented to Expedia's Terms of Use ("Expedia Terms"), which includes an agreement to arbitrate "any and all" disputes asserted against Expedia's travel suppliers (such as BA) as well as a class action waiver.  BA, as an intended third-party beneficiary, can enforce this arbitration agreement and class action waiver.  Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), the Court should require Mr. Dominique to honor his valid agreement, compel him to arbitrate his claim on an individual basis only, and dismiss his claim with prejudice.  (*See* Section I).

Second, the FAC fails to state a viable breach of contract claim.  BA has not breached the applicable contract: the COC.  Rather, BA has made clear that it will refund the purchase price for flights that it cancelled, and it has done so.  BA made the option of a refund or voucher available and two of the plaintiffs elected instead to receive a voucher in lieu of a refund, which BA provided.  They are not entitled to any other relief.  The other two plaintiffs were not entitled to refunds, but BA offered them vouchers.   And, guidance issued by the Department of Transportation ("DOT") cannot predicate a breach of contract claim.  (*See* Section II).

Third, to the extent that the plaintiffs claim that they were confused by BA's website, that

they would have preferred that BA make refunds available through another mechanism, or that they think BA's refund practices were misleading or in violation of DOT guidance, the Airline Deregulation Act of 1978, 49 U.S.C. § 1305(a)(1) ("ADA"), pre-empts any such claims.  (*See* Section III).

Finally, even if some portion of the FAC survives (which it should not), certain of the relief requested must be stricken as the COC limits relief to compensatory damages only and the plaintiffs do not have standing to seek injunctive relief.  (*See* Section IV).

## STATEMENT OF FACTS

### A.    The Covid-19 Pandemic Forces BA to Cancel Flights.

BA is a "global airline with an extensive global route network."  (FAC ¶ 2 (internal quotation marks omitted).)[1]  In 2020, however, Covid-19, a dangerous and "highly infectious" disease, spread "rapidly" around the world—infecting "[m]illions," and quickly becoming a global "public health emergency."  (*Id.* ¶¶ 51, 52.)  Federal, state, and local governments across the U.S. (and globally) implemented strict "travel restrictions and shelter-in-place or stay at home orders" that severely affected industries such as airlines.  (*Id.* ¶ 52.)  In this global health crisis, BA, like nearly all other airlines, was forced to cancel flights.  (*See id.* ¶ 3.) These travel restrictions and

---

[1]    For purposes of this motion, BA accepts the plaintiffs' allegations as true except to the extent that they are contradicted by documentary evidence.  BA reserves the right to dispute the accuracy of any factual allegation if the case proceeds past this motion (which it should not). Exhibits cited "Ex." are attached to the Declaration of Keara M. Gordon, dated July 24, 2020.

The Court is not required to accept as true allegations that are contradicted by documents. *See, e.g.*, *Atkins v. Apollo Real Estate Advisors, L.P.*, 2008 WL 1926684, at *1 (E.D.N.Y. Apr. 30, 2008). When a "complaint relies on the terms of [an] agreement," the Court "may look to the agreement itself."  *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).  The Court may also consider "any materials implicitly or explicitly incorporated by reference into … pleadings", and it may take judicial notice of information on a party's website.  *Santora v. Capio Partners, LLC*, 409 F. Supp. 3d 106, 108 (E.D.N.Y. 2017); *Doron Precision Sys., Inc.  v.  FAAC, Inc.*, 423 F.  Supp.  2d 173, 179 (S.D.N.Y.  2006).

forced cancellations have caused intense losses—the International Air Transport Association grimly reports that airlines will ultimately suffer $84 billion in losses this year, or 3.2 times more loss than during the last global financial crisis.  (Ex. 6.)

### B.   BA's Response to Covid-19.

#### 1.   BA's COC

When a customer purchases a ticket to fly with BA, the customer enters into a contract with BA (the COC) and accepts applicable fare rules.  (FAC ¶¶ 1, 8.)  The COC addresses when refunds are available.  If a customer cancels a booking, the COC provides that BA "will refund the fare and carrier-imposed charges and surcharges for your ticket, or any unused part of it and any taxes, fees and charges, as set out in the fare rules and conditions applicable to your booking."  (Ex. 7 § 10a1).)  Refunds are not available, however, for tickets marked "non-refundable."  (*Id.* § 3(a)3.)  Accordingly, BA informs customers to "choose the fare which best suits your needs and consider taking out insurance to cover instances where you might have to cancel your ticket."  (*Id.*)

If, however, BA is forced to cancel a flight, then customers can "choose one of three remedies set out immediately below."  (*Id.* § 9(b).)  Those three remedies include that BA: (1) "will carry you as soon as [it] can" to your destination, (2) "will carry you to [your] destination … at a later date at your convenience and within the validity period of your ticket" (essentially a voucher); or (3) "will give or obtain for you an involuntary fare refund."  (*Id.*)  The COC thereafter defines the term "involuntary fare refund," the third remedy from which customers can choose when BA cancels a flight, as either: (1) a full refund if the ticket has not yet been used, or (2) if the customer has used part of the ticket, a full refund for the unused portion.  (*Id.* § 10(b)(1)–(2).)

Different rules apply when a customer fails to show up for a flight.  In that event, the COC provides that the ticket will have no value: "[i]f you change your transportation without our agreement, your unused flight coupons will not be valid for travel and will have no value."  (*Id.* §

3(c)(5).)  Also, "[i]f you fail to cancel a booking before the check-in deadline for your flight and do not show up for the flight, we may decide to cancel your return or onward reservations" and, in those circumstances, BA is not obligated to provide a refund.  (*Id.* § 3(c)(10).)

### 2.      BA Offers Refunds and Vouchers

BA's website explicitly explained to customers that, if BA cancelled their flight due to Covid-19, BA would refund the cost of the ticket.  Among other things, BA's website offered answers to questions regarding the impact of Covid-19.  One of those questions, and BA's answer, was:

> "Are you eligible for a refund?"  . . .  "If your flight was cancelled and you do not wish to rebook or claim a voucher, please contact us . . . **to discuss your refund options.**  Please contact us on 877-767-7960 if you are calling from the USA."

(Ex. 4. (emphasis added); *see also* Ex. 5 (informing customers that BA will "rebook or refund you for your ticket via Manage My Booking or you can discuss rebooking options by calling [BA]").) Indeed, as the FAC admits, BA offered customers the option to rebook their flights or "**obtain a full refund** by canceling [their] entire booking."  (FAC ¶ 59.)  And, BA instructed customers that "[t]o rebook or **refund** *please call us*."  (*Id.* (emphasis added).)

Alternatively, BA provided customers the option to elect a voucher.  (*See* Exs. 4, 5.)  The form that one filled out to receive a voucher made clear that it was a request for a "Future Travel Voucher," as those words appeared in large font and bold.  (FAC ¶ 60.)  A box at the top of the page also expressly instructed customers to "please fill out this form to receive [their] voucher, **or contact us to discuss your refund options**."  (*Id.* (emphasis added).)

In accordance with the COC and its website statements, BA has, indeed, provided refunds for flights it cancelled as a result of Covid-19.  As of May 13, 2020, BA provided cash refunds to about 2.1 million people.  (Ex. 3.)  Moreover, even though not required to so, BA offered

customers the ability to cancel upcoming flights and receive vouchers for the full amount of their flight, even for flights that would otherwise be non-refundable. (*See* Exs. 4, 5.)  As one might expect, and as disclosed on BA's website, given the number of cancellations and questions, call volumes are quite high and BA thus asked for customers' patience during this difficult time. (*Id.*)

### C.    The Named Plaintiffs

#### 1.    Donald Dominque, Jr.

Mr. Dominque alleges that he purchased BA plane tickets from Expedia on December 29, 2019, for travel "from Miami to Paris with a connection in London, departing March 16, 2020 and returning March 20, 2020." (FAC ¶ 26.)  Mr. Dominque's tickets were non-refundable. (Ex. 8.)  Mr. Dominique does *not* allege that BA cancelled his outbound flight and he does not allege that he flew from Miami to Paris on March 16; rather, Mr. Dominique alleges only that his "return flight from Paris to London was canceled." (FAC ¶ 27.)  As discussed above, BA does not have an obligation to refund non-refundable tickets when a passenger is a no show and the COC explicitly provide BA the right to cancel further travel if a customer does not show up for his or her flight. (Ex. 7, §§ 3(c)(5), (6), (10).)  Mr. Dominique was a no show for his outbound flight. (Ex. 8.)

Mr. Dominique claims that he thereafter "called Expedia and BA several times," but he admits that he never actually spoke to any BA representative. (FAC ¶¶ 28–29.)  Rather, Mr. Dominque alleges only that he spoke to an Expedia representative, who purportedly informed him that Expedia (not BA) was only authorized to provide vouchers. (*Id.* ¶ 30.)  There is no allegation that BA actually told Mr. Dominque anything.

When Mr. Dominque booked his flight with Expedia, he was required to accept the Expedia Terms.  To complete his booking, Mr. Dominque was required to click on a yellow "Complete Booking" button, which appeared next to the statement "I acknowledge that I have read and accept

the … Terms and Conditions."  (Ex. 9.)  The words "Terms and Conditions" provided a hyperlink

to the Expedia Terms, which are prefaced with the following statement: "Please read … carefully,

as they contain important information about limitations of liability and resolution of disputes

through arbitration rather than in court."  (Ex. 10.)  The Expedia Terms provide, among other

things:

- "Any and all Claims will be resolved by binding arbitration, rather than in court, except that you and we may assert Claims on an individual basis in small claims court if they qualify. This includes any Claims you assert against us, our subsidiaries, travel suppliers or any companies offering products or services through us (which are beneficiaries of this arbitration agreement). This also includes any Claims that arose before you accepted these Terms of Use, regardless of whether prior versions of the Terms of Use required arbitration."

- "Any and all proceedings to resolve Claims will be conducted only on an individual basis and not in a class, consolidated, or representative action. If for any reason a Claim proceeds in court rather than in arbitration, you and we each waive any right to a jury trial."

(*Id.*)

### 2.    Philip Tenn

Mr. Tenn alleges that he bought tickets on BA's website in September 2019 for travel

"from Tampa to London, departing March 15, 2020, and returning March 24, 2020."  (FAC ¶ 33.)

Mr. Tenn purchased non-refundable tickets.  (Ex. 11.)  Like Mr. Dominique, Mr. Tenn does *not*

allege that BA cancelled his outbound flight or that he was a passenger on his outbound flight;

rather, Mr. Tenn alleges only that his "return flight from London was canceled."  (FAC ¶ 34.)  As

discussed above, BA does not have an obligation to refund non-refundable tickets when a

passenger is a no show and the COC explicitly provide BA the right to cancel further travel if a

customer does not show up for his or her flight.  (Ex. 7, §§ 3(c)(5), (6), (10).)  Mr. Tenn was a no

show for his outbound flight.  (Ex. 11.)

Even though there is no allegation that BA cancelled Mr. Tenn's flight because of Covid-

19, Mr. Tenn "filled out the voucher form on BA's website." (FAC ¶ 35.) Mr. Tenn claims that he subsequently contacted BA and asked for a refund, which he claims BA refused. (*Id.* ¶¶ 36–38.) Even though Mr. Tenn's flight was non-refundable, and thus no refund was due, because of the unprecedented nature of Covid-19, BA went above and beyond what it was required to do and chose to offer Mr. Tenn a voucher for the full value of both flights. (*See* Ex. 5; FAC ¶ 35.)

### 3.   Stephen Ide

Mr. Ide bought tickets on BA's website on September 10, 2019 to travel from "Boston to London departing March 25, 2020 and returning April 5, 2020." (FAC ¶ 10.) He alleges that on March 18, 2020, BA e-mailed him to say that his flight was cancelled. (*Id.* ¶ 11.) As discussed above, BA's website clearly provides that customers, like Mr. Ide, could call BA to "obtain a full refund." (*Id.* ¶ 59.) He did not do so. (*Id.* ¶ 12.) Instead, Mr. Ide elected to fill out the online form that is clearly an option different from a "refund" and entitled "**Future Travel Voucher Application,"** which, in turn, informed Mr. Ide that he could "fill out this form to receive your **voucher**, or **contact us to discuss your refund options**", again clearly differentiating a "voucher" from a "refund." (*Id.* ¶ 60. (second emphasis added).)

Mr. Ide received the requested voucher. (FAC ¶ 15.) Almost a month later, on April 21, 2020, Mr. Ide alleges that he spoke to a BA customer service representative. (*Id.* ¶ 17.) Although Mr. Ide alleges that the representative was unable to convert his voucher into a cash refund, he admits that the representative explained to him that he was free to contact "Customer Relations" and ask them to do so. (*Id.*) Mr. Ide does not allege that he later contacted Customer Relations.

### 4.   Karen Steele-Clarke

Ms. Steele-Clarke bought a plane ticket on BA's website on October 22, 2019 for travel from "New York to London departing July 1, 2020 and returning July 8, 2020." (*Id.* ¶ 19.) She alleges that on May 4, 2020, BA e-mailed her to say that her flight was canceled. (*Id.* ¶ 20.) She,

like Mr. Ide, went to BA's website, where she was presented with three options: "[r]ebook onto another flight," "[a]pply for a voucher," or "contact [BA] … to discuss your refund options."  (*See* Ex. 5; FAC ¶ 60.)  Instead of calling BA and asking for a refund, Ms. Steele-Clarke filled out the voucher request form, and BA e-mailed her a voucher on May 7, 2020.  (FAC ¶¶ 21–22.)  Ms. Steele-Clarke alleges that she later decided she "did not want a voucher" and "requested a refund." (*Id.* ¶ 23.)  After she affirmatively chose to select a travel voucher instead of calling for a cash refund, she alleges that BA refused to convert the travel voucher into a cash refund.  (*See id.* ¶ 24.)

## LEGAL STANDARD

BA brings this motion pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and the FAA.  *Glover v. Colliers Intern. NY, LLC*, 2014 WL 5410016, at *1, n.1 (S.D.N.Y. Oct. 24, 2014) (Furman, J.) (treating motion "as a motion to dismiss pursuant to Rule 12(b)(6) or a motion to compel arbitration and to stay the case pending such arbitration under the FAA").  Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject-matter jurisdiction … when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Courts lack jurisdiction when the plaintiff lacks Article III standing. *Schachter v. U.S. Life Ins. Co. in City of New York*, 77 F. App'x 41, 42 (2d Cir. 2003).  The plaintiff bears the burden of establishing standing.  *Makarova,* 201 F.3d at 113.

Under Rule 12(b)(6), a complaint must be dismissed if it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Determining whether allegations are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft*, 556 U.S. at 679.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.

"In evaluating a motion to compel arbitration, a district court must apply the summary

judgment standard, and thus may grant the motion only if 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law.'" *Zimmerman v. UBS AG*, 2018 WL 4054860, at *2 (S.D.N.Y. Aug. 24, 2018) (Furman, J.), *appeal dismissed*, 789 Fed. Appx. 914 (2d Cir. 2020) (quotations omitted) (internal citation omitted).  In evaluating "whether the parties agreed to arbitrate … a court must apply 'ordinary state-law principles that govern the formation of contracts.'" *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

## ARGUMENT

## I. EXPEDIA'S ARBITRATION AGREEMENT AND CLASS ACTION WAIVER PRECLUDES MR. DOMINQUE'S CLAIM.

Mr. Dominque's claim must be dismissed with prejudice because he is subject to Expedia's arbitration agreement and class action waiver.  "The FAA mandates that a written agreement to arbitrate 'shall be valid, irrevocable, and enforceable[.]'" *Glover*, 2014 WL 5410016, at *4 (quoting 9 U.S.C. § 2).  Embodying the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), the FAA allows a party to petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Zimmerman*, 2018 WL 4054860, at *2 (quotations omitted).  "[C]ourts have the discretion to dismiss … an action when all of the issues in it must be arbitrated." *Borrero v. Ruppert Hous. Co., Inc.*, 2009 WL 1748060, at *2 (S.D.N.Y. June 19, 2009) (dismissing claim) (internal citation omitted).  Similarly, class action waivers are valid and enforceable. *See, e.g., Nayal v. HIP Network Servs., IPA Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) (class action waiver was enforceable).

In deciding whether a dispute is arbitrable, the Court must answer two questions: "(1) whether the parties have entered into a valid agreement to arbitrate, and if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 547 (S.D.N.Y. 2018) (quoting *In re Am. Exp. Fin. Advisors Securities Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citations omitted)).  Both requirements are met here.

### A.      The Parties Entered into a Valid and Enforceable Arbitration Agreement and Class Action Waiver.

The Expedia Terms contain an arbitration agreement, requiring that Mr. Dominique arbitrate on an individual basis only "any and all Claims."  (Ex. 10.)  This language evidences an "unambiguous agreement to arbitrate" because it provides that parties must "submit 'any dispute' to arbitration." *Morelli v. Alters*, 2020 WL 1285513, at *8 (S.D.N.Y. Mar. 18, 2020); *see JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) ("broad" arbitration provisions should be enforced). "Moreover, because the [arbitration agreement] is valid and enforceable, the class action waiver contained within the [a]greement is also enforceable[.]" *Simeon v. Domino's Pizza LLC*, 2019 WL 7882143, at *5 (E.D.N.Y. Feb. 6, 2019) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 3444 (2011) (upholding class action waiver)).  Courts routinely enforce class action waivers and compel parties to arbitration on an individual basis.  *See Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 734 (E.D.N.Y. 2017) (enforcing class action waiver); *see also Vitrano v. N.A.R., Inc.*, 2020 WL 1493620, at *9 (E.D.N.Y. Mar. 27, 2020) (same).

Mr. Dominique is bound by the arbitration agreement.  "The Second Circuit routinely enforces clickwrap agreements as valid and binding contracts, 'for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.''" *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2020 WL 2907676, at *3 (S.D.N.Y. June 3, 2020) (finding enforceable agreement) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)).

Here, Expedia required Mr. Dominque to click on a yellow "Complete Booking" button, which appeared next to the statement "I acknowledge that I have read and accept the … Terms and Conditions"; they contained a hyperlink to the Expedia Terms, which contained a conspicuous warning: "Please read … carefully, as they contain important information about limitations of liability and resolution of disputes through arbitration rather than in court."  (Ex. 10.)  Courts routinely have held that the Expedia Terms constitute a valid and binding agreement.  *See, e.g., Moreno v. Expedia*, 2018 WL 3059617, at *3 (W.D.N.C. June 20, 2018) (granting motion to compel arbitration); *Van Den Heuvel v. Expedia Travel*, 2017 WL 5133270, at *2 (E.D. Cal. Nov. 6, 2017), *report and recommendation adopted*, 2017 WL 6512945 (E.D. Cal. Dec. 20, 2017) (same); *Burcham v. Expedia, Inc.*, 2009 WL 586513, *2, 4 (E.D. Mo. Mar. 6, 2009) (enforcing forum selection clause).

As a third-party beneficiary of the Expedia Terms, BA may compel Mr. Dominque to individual arbitration.  It is well settled in the Second Circuit that "the FAA requires the enforcement of an arbitration agreement not just in favor of parties to the agreement, but also in favor of third-party beneficiaries[.]"  *Spear, Leeds & Kellogg v. Cent. Life Assurance Co.*, 85 F.3d 21, 26 (2d Cir. 1996).  To determine if a non-signatory is a third-party beneficiary, courts look to whether "the parties to that contract intended to confer a benefit on [the non-signatory party] when contracting."  *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1019-20 (2d Cir. 1993) (quotation omitted).  "[T]hird parties may enforce contractual terms if the contract expressly provides that they may do so."  *Oei Hong Leong v. Goldman Sachs Group, Inc.*, 2014 WL 2893310, at *5 (S.D.N.Y. June 25, 2014) (Furman, J.) (quotation omitted) (compelling arbitration).

Here, the Expedia Terms expressly provide that "travel suppliers or any companies offering products or services," like BA, are "*beneficiaries* of this arbitration agreement." (Ex. 10 (emphasis

added).)   As a result, BA is a third-party beneficiary and may compel Mr. Dominique into individual arbitration.  *See Bakon v. Rushmore Serv. Ctr., LLC*, 2017 WL 2414639, at *3 (E.D.N.Y. June 2, 2017) (holding non-signatory could invoke arbitration agreement); *Johnson v. Parts Auth., LLC*, 2017 WL 9511079, at *6 (E.D.N.Y. Aug. 17, 2017), *report and recommendation adopted as modified*, 2017 WL 4402463 (E.D.N.Y. Sept. 30, 2017) (holding non-signatory could enforce arbitration provision which included class waiver clause).  Further, by agreeing to the Expedia Terms, Mr. Dominique agreed to pay BA money.  (*See* Ex. 10 ("you agree to abide by the terms and conditions of purchase imposed by any supplier with whom you elect to deal, including, but not limited to, payment of all amounts when due").)  "It is hard to imagine a more direct benefit under a contract than a provision providing for the payment of money."  *Church v. Expedia Inc.*, 2019 WL 2422577, at *4 (W.D. Wash. June 10, 2019) (granting motion to dismiss; holding that hotel defendants were "suppliers" under third-party booking arbitration provision).

**B.    Mr. Dominique's Claim Is Subject to the Arbitration Provision and Class Action Waiver.**

BA respectfully requests that the Court compel Mr. Dominique to submit his claim to individual arbitration, as whether Mr. Dominique's particular claim is subject to the arbitration agreement and class action waiver is a question for the arbitrator, not the Court.  "The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'"  *Olsen v. Charter Commun., Inc.*, 2019 WL 3779190, at *7 (S.D.N.Y. Aug. 9, 2019).  Here, the arbitration clause provides that "*any and all claims* will be resolved by binding arbitration."  (Ex. 10 (emphasis added).)  The Expedia Terms define Claims as any disputes "arising out of or relating in any way to … these Terms of Use."  (*Id.*)  "Even absent an express contractual commitment of the issue of arbitrability to arbitration, a referral of 'any and all'

controversies reflects such a broad grant of power to the arbitrators' as to evidence the parties' clear 'inten[t] to arbitrate issues of arbitrability."  *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 898 (2d. Cir. 2015) (internal quotation omitted).  Accordingly, BA respectfully requests that the Court compel Mr. Dominque to submit his claim to binding arbitration and dismiss it with prejudice.

## II.     THE PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT.

To state a claim for breach of contract, a plaintiff must allege: (1) a contract; (2) that the plaintiff performed; (3) the defendant breached; and (4) resulting damages.  *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011); *Abdel-Karim v. EgyptAir Airlines*, 116 F. Supp. 3d 389, 406-07 (S.D.N.Y. 2015) (dismissing contract claim).  Here, because the plaintiffs have failed to allege that BA actually breached the COC, their claims must be dismissed.

### A.     BA Did Not Breach the COC.

"For a breach of contract claim, Plaintiff must provide specific allegations as to ... what provisions of the agreement were breached as a result of the acts at issue."  *Hekmat v. U.S. Transp. Sec. Admin.*, 247 F. Supp. 3d 427, 433 (S.D.N.Y. 2017) (quotation omitted).  Here, the plaintiffs do not allege a contractual provision that BA breached.

#### 1.     Mr. Dominique and Mr. Tenn

Mr. Dominique agreed to individual arbitration of his dispute, but he and Mr. Tenn cannot allege that BA cancelled their outbound flight, as opposed to them just not showing up for it.  (FAC ¶¶ 26–7, 33–4; Exs. 8, 11.)  When a customer chooses not to appear for a flight, the cancellation of other flights in the booking is not an involuntary cancellation requiring a refund.  The COC and the applicable fare rules provide that Mr. Dominique's and Mr. Tenn's failure to appear for an outgoing flight rendered both tickets without value and permitted BA to cancel their return flights. (Ex. 7 §§ 3(c)(5), (6), (10).)  "No one buying a nonrefundable ticket could have any illusions that

he or she could miss the flight and get a full refund." *Martin*, 727 F. App'x at 463 (affirming dismissal of breach of contract claim). Nevertheless, because of the unprecedented nature of Covid-19, BA went above and beyond what it was required to do and chose to offer Mr. Tenn a voucher for the full value of both flights. (*See* FAC ¶ 35, Exs. 4, 5.)[2] Because BA acted in accordance with the COC and applicable fare rules, there is no breach. *See Dennis v. Delta Air Lines, Inc.*, 2011 WL 4543491, at *4 (E.D.N.Y. Aug. 18, 2011) (citing cases) (no breach where airline denied plaintiff boarding in accordance with the contract). Absent any allegation that either Mr. Dominique or Mr. Tenn traveled on their outbound flights or that BA cancelled these flights due to Covid-19, they are not eligible for refunds under the COC. (*Id.*; Ex. 7 §§ 3(c)(5), (6), (10).)

### 2.    Mr. Ide and Ms. Steele-Clark

The plaintiffs admit that the COC expressly identifies three alternative remedies available when BA cancels a flight; it: (1) "will carry you as soon as [it] can" to your destination, (2) "will carry you to [your] destination … at a later date at your convenience and within the validity period of your ticket" (essentially a voucher), *or* (3) "will give or obtain for you an involuntary fare refund." (FAC ¶¶ 46-49; Ex. 7 § 9(b)(3).)

The plaintiffs do not allege that BA failed to provide them these three options as the COC requires. Quite the opposite, the plaintiffs repeatedly admit that BA made these three options available. (FAC ¶ 1; *see also id.* ¶ 7 (noting "option to claim a voucher"), ¶ 49 (noting "option to receive a full refund of the fare"), ¶ 59 (listing options "to re-book or refund").) Mr. Ide and Ms. Steele-Clark admit that they viewed BA's website – which explicitly advised them to call BA on a toll-free number if they wanted a refund – but they chose not to call for a refund and instead

---

[2]    Mr. Dominique does not allege that he requested a voucher or refund from BA, only from Expedia. (FAC ¶ 31.) But even if Mr. Dominique had asked BA for a refund, because he purchased a non-refundable ticket, BA had no obligation to refund him.

elected to request a voucher, which they received, and which is for the full amount of the purchase price for their flights.  (FAC ¶¶ 13, 21-22; Exs. 4, 5.)  By issuing the voucher, BA complied with its contractual obligations.  *See, e.g., Hughes v. Southwest Airlines Co.*, 961 F.3d 986, 989 (7th Cir. 2020) (no breach of contract where airline acted in accordance with its contract of carriage); *Cenci v. Mall Airways, Inc.*, 531 N.Y.S.2d 743 (N.Y. City Ct. 1988) (dismissing breach of contract claim because airline's "obligation to plaintiff was fulfilled upon its providing plaintiff with a means of reaching [her destination], and upon plaintiff's acceptance of said alternative transportation.")  While Mr. Ide alleges that he later changed his mind and wanted a refund, he does not allege that BA refused, but rather a customer service representative advised him to contact Customer Relations, which he did not do.  (FAC ¶ 17.)  And while Ms. Steele-Clarke vaguely alleges that BA refused to allow her to transform the voucher that she requested into a refund, she fails to allege any specific facts concerning BA's alleged response other than that she "repeated her request by several channels, including … Twitter."  (*Id.* at ¶ 24.)  Contrary to the plaintiffs' allegations, BA has not "failed to provide refunds" to eligible customers who selected that remedy; rather, BA refunded over one million customers for cancelled flights.  (*See, e.g.*, Ex. 3.)

Acknowledging that BA does, in fact provide refunds, the plaintiffs complain that "[t]he only way to receive a refund is to call BA."  (FAC ¶ 65.)  But, the plaintiffs fail to point out any COC contractual provision (nor can they) that mandates that BA provide refunds in any particular manner or that providing them by way of a telephone call violates a contractual provision.  As a result, requiring customers to call to obtain a refund is not a breach of contract and the Court cannot read into the contract an implied term that does not exist.[3]  *See Hughes*, 961 F.3d at 989.  In

---

[3]    As discussed in Section III, any claim based upon alleged contractual terms to which BA did not agree would also be pre-empted by the ADA.

*Hughes*, for example, the Court found that the plaintiff failed to allege a breach of contract claim against an airline where it acted in accordance with its contract of carriage.  There, the airline cancelled the plaintiff's flight, and, as provided by the contract of carriage, offered him an alternative flight or a refund, and he chose the alternative flight.  Nevertheless, the plaintiff sued and argued that the airline breached an implied contractual provision that it should have had sufficient de-icer to avoid the cancelation in the first place.  The trial court rejected the argument, and the Seventh Circuit affirmed, noting, "[i]t is not our place to rewrite contracts."  *Id*. at 989– 90; *see also Martin v. United Airlines, Inc.*, 727 F. App'x 459, 460 (10th Cir. 2018) (dismissing breach of contract claim where airline "did nothing more than enforce ... enforceable contract[s]"); *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 537 F. Supp. 2d 546, 552 (S.D.N.Y. 2008), *aff'd*, 572 F.3d 76 (2d Cir. 2009) ("It is a fundamental contracts principle that a 'court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case.'") (quoting *Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir. 1992) (internal citations omitted)).

To the extent that the plaintiffs were frustrated by "heavy call volumes" resulting in "wait" times (FAC ¶ 65), those inconveniences are the unfortunate byproduct of Covid-19, but not a breach of contract.  *See Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998) ("mere delay in reporting grades does not give rise" to breach of contract claim "against a university, absent allegations that the university made a specific promise to report such grades by a certain date and that such a promise was material to the student's contractual relationship with the

university").[4]

### B.    The DOT Guidance Cannot Support a Breach of Contract Claim.

In an attempt to manufacture a breach of contract claim, the plaintiffs rely on an April 3, 2020 advisory notice from the DOT entitled "Enforcement Notice Regarding Refunds by Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel" (the "DOT Guidance").  (*See* FAC ¶¶ 5, 6, 54–55).)  But the DOT Guidance cannot support the plaintiffs' breach of contract claim for at least three reasons.

First, the DOT Guidance is not a contractual obligation of BA because BA did not incorporate it into the COC – nor could it have done so since the plaintiffs purchased their tickets months before the DOT Guidance was even issued.  (*Compare id.* ¶¶ 10, 19, 26, 33 (alleging that the plaintiffs purchased their tickets in 2019), *with id.* ¶ 5 (the DOT Guidance was issued on April 3, 2020).)  Parties to a contract are not bound by the terms of any document outside that contract unless it is clearly identified or incorporated in the agreement.  *See, e.g., PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (documents "must be so referred to and described so that they may be identified beyond all reasonable doubt") (internal citation omitted).

---

[4]    Even if the plaintiffs had alleged some breach by BA (which they have not), the plaintiffs' breach of contract claims would still fail as a matter of law because the plaintiffs have failed to allege damages.  Neither Mr. Dominique nor Mr. Tenn have alleged that they were entitled to a cash refund—without a purported breach, they cannot allege damages.  Similarly, Mr. Ide and Ms. Steele-Clark have not alleged a breach because they affirmatively chose their remedy in the form of a travel voucher for the full equivalent value of the flight, and they are not entitled to damages beyond such a voucher.  *See Dennis v. Delta Air Lines, Inc.*, 2011 WL 4543491, at *4 (E.D.N.Y. Aug. 18, 2011) (citing cases) (no damages where recovery was limited to "refund value of the unused portion of [the] ticket" and defendant had "refunded the value of the unused portion of [the] ticket," so "plaintiff could not have recovered any additional damages even if defendant had breached the contract"); *Ruta v. Delta Airlines, Inc.*, 322 F. Supp. 2d 391, 399 (S.D.N.Y. 2004) ("Plaintiff's claim for breach of contract must be dismissed because Plaintiff did not suffer any damages within the terms of her contract" where plaintiff received a new ticket and was not contractually entitled to further refund).

Second, only the DOT—not private plaintiffs—has the power to enforce DOT regulations. Neither the DOT Guidance nor the statute cited therein (49 U.S.C. § 41712), provides for a private right of action.  Indeed, courts consistently have held that "49 U.S.C. § 41712 prohibits certain deceptive practices by airlines and grants the Secretary of Transportation power to investigate such practices and bring an action to stop them, *but it does not provide for a private right of action*." *Giuffre v. Delta Air Lines, Inc.*, 2012 WL 3988981, at *3 (E.D.N.Y. Sept. 11, 2012) (emphasis added) (dismissing claims); *see also Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1268 n. 21 (11th Cir. 2018) ("The prohibition on unfair or deceptive practices in 49 U.S.C. § 41712 has been held not to create a private right of action."); *Star Marianas Air, Inc. v. Commonwealth Ports Authority*, 2018 WL 4140780, *5 (D.N.M.I. Aug. 30, 2018) (no a private right of action).

Third, even if a private plaintiff could enforce DOT regulations (which he or she cannot), the DOT Guidance is merely guidance.  In it, the DOT does not mandate refunds, rather, it uses the more permissive term "should," which emphasizes that it is merely guidance.  The DOT expressly has recognized that its "guidance documents cannot create binding requirements that do not already exist by statute or regulation" and that the DOT "may not use its enforcement authority to convert agency guidance documents into binding rules."  *Admin. Rulemaking, Guidance and Enforcement Procedures (Final Rule)*, 84 Fed. Reg. 71,714, 71,731 (Dec. 27, 2019); *see also* Justice Manual § 1-20.100, *Limitation on Use of Guidance Documents in Litigation* (explaining that "Department may not bring actions based solely on allegations of noncompliance with guidance documents").  Rather, to be a lawful rule binding on BA, the DOT Guidance must have been preceded by prior public notice and an opportunity for comment, which did not occur.  *See* Administrative Procedure Act ("APA"), 5 U.S.C. § 553; *see also Gonnella v. United States Sec. & Exch. Comm'n*, 954 F.3d 536, 546–47 (2d Cir. 2020) ("legislative rules ... must go through

19

Notice and Comment procedures") (internal quotation omitted).  Therefore, the DOT Guidance cannot support a breach of contract claim.

## III.     THE ADA PRE-EMPTS THE CLAIMS.

To prevent states from "undo[ing] federal deregulation with regulation of their own," *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992), the ADA includes a broad pre-emption provision that provides that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart."  49 U.S.C. § 41713(b)(1).  "[T]he Supreme Court has repeatedly emphasized the breadth of the ADA's preemption provision."  *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 222 (2d Cir. 2008) (finding ADA pre-emption).

Courts have held that claims for refunds are "related to the price, route, or service of an airline" and are therefore pre-empted.  *See, e.g.*, *Martin v. United Airlines, Inc.*, 2017 WL 3687347, at *5 (April 18, 2017 W.D. Okla.) (concluding "there is no dispute that [issuance of money-credits for cancelled flights] relate to defendant's prices and services," and therefore are pre-empted); *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 36 (1st Cir. 2007) ("freshman-year economics" dictates that claim for refund of taxes and fees was pre-empted because it related to an air carrier price and rates) (collecting cases); *Statland v. Am. Airlines, Inc.*, 998 F.2d 539, 542 (7th Cir. 1993) (finding it "obvious that canceled ticket refunds relate to rates"); *Howell v. Alaska Airlines, Inc.*, 994 P.2d 901, 905 (Wash. App. 2000) ("challenge to [airline's] refusal to refund the price of a nonrefundable ticket is preempted by the ADA").

As demonstrated above, there is no breach of the COC.  In an attempt to create one, the plaintiffs (A) seek to impose contractual terms that the COC do not contain such as (1) the mechanism by which they would prefer a refund or (2) DOT Guidance, and (B) pursue consumer protection claims masquerading as breach of contract claims. The ADA, however, pre-empts all

such claims.

### A.    The ADA Limits Breach of Contract Claims to the Parties' Bargain.

The Supreme Court has recognized only a single, narrow exception to ADA preemption. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232-33 (1995). *Wolens* creates an exception to ADA pre-emption for breach of contract suits to enforce an "airline's alleged breach of its own, self-imposed undertakings." *Id*. at 228.   To avoid pre-emption, the breach of contract claim must be limited to "the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id*. at 233; *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281 (2014); *Abdel-Karim*, 116 F. Supp. 3d at 406–7.   Breach of contract claims based on purported obligations that the airline did not voluntarily undertake are pre-empted.  *See, e.g.*, *Pena v. British Airways, PLC (UK)*, 2020 WL 3989055, at *4 (E.D.N.Y. Mar. 30, 2020) (dismissing claim); *McGarry v. Delta Air Lines, Inc.* 2019 WL 2558199, at *5-6 (C.D. Cal. June 18, 2019) (same); *Alatortev v. JetBlue Airways, Inc.*, 2018 WL 784434 (N.D. Cal. Feb. 7, 2018) (same); *A.C.L. Computs. & Software, Inc. v. Fed. Express Corp.*, 2016 WL 946127 (N.D. Cal. Mar. 14, 2016) (same).[5]

The narrow *Wolens* exception to pre-emption is not applicable here.  First, BA never agreed

---

[5]    The Second Circuit issued a summary order vacating in part and remanding the dismissal of a breach of contract claim that the district court found the ADA pre-empted.  *See Cox v. Spirit Airlines, Inc.*, 786 F. App'x 283 (2d Cir. 2019).  *Cox* does not require a finding against pre-emption here for several reasons.  First, it is a summary order, not a published opinion, and thus lacks precedential effect.  2d Cir. IOP 32.1.1(b).  Second, the *Cox* Court expressly acknowledged the clearly established law that courts are limited "to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement."  *Cox*, 786 F. App'x at 285. Third, the issue in *Cox* was a matter of "contract interpretation" in light of ambiguities in the contract, *id.* at 286, whereas here, the COC is clear as to the remedies available for cancelled flights.   Fourth, the Second Circuit did not actually conclude that the ADA would not have ultimately pre-empted the plaintiff's claim; rather, the Second Circuit merely remanded the case because it "was not dismissible on the pleadings" in light of the contract ambiguities.  *Id.*

to provide refunds in any particular manner (such as online) and there is no contractual provision mandating that BA provide refunds in the way the plaintiffs prefer.  Second, BA did not incorporate the DOT Guidance into the COC (nor could it have done so since the plaintiffs purchased their tickets months before the DOT Guidance was even issued).  Thus, neither can be characterized as part of BA's "self-imposed undertakings."  *Wolens*, 513 U.S. at 228.  Where, as here, a claim constitutes an enlargement of the parties' bargain based on policies external to the agreement, the claim is pre-empted because "such an enlargement would interfere with the ADA's purpose of deregulating air carriers."  *A.I.B. Express v. FedEx Corp.*, 358 F. Supp. 2d 239, 253 (S.D.N.Y. 2004*)* (pre-empting claims enlarging defendant's contractual obligations based on policies external to agreement and relating to prices); *see also McGarry,* 2019 WL 2558199, at *5 (Delta's "Contract of Carriage itself contains no self-imposed promise from Delta as to **how** it will handle customer data … [P]ermitting Plaintiff to read into the Contract of Carriage additional obligations would be a direct circumvention of the broad pre-emptive sweep of the ADA.") (emphasis in original); *Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745, 755 (Tex. 2003) (contract claim "seeks to enlarge Delta's obligations" and the court was "confined, in breach-of-contract actions, to the parties bargain"); *Howell*, 99 Wash. App. at 647 (claims for refunds of nonrefundable tickets under state law theories pre-empted because they sought to enlarge parties' agreement).

### B.    The Plaintiffs' Breach of Contract Claims Are Really Pre-Empted Claims for Breach of Good Faith and Fair Dealing or Consumer Protection Laws.

The law is clear that the ADA pre-empts claims based on good faith and fair dealing or to enforce consumer protection laws.  *See, e.g., Ginsburg*, 572 U.S. at 285 (good faith and fair dealing claims pre-empted); *Wolens*, 513 U.S. at 225 (claims under state consumer protection law are pre-empted); *Morales*, 504 U.S. at 388 (same); *Pena*, 2020 WL 3989055, at *4 (same).

Here, the gravamen of the plaintiffs' claims appears to be their alleged "confusion," or the

refund mechanism, which amount to purported breaches of the covenant of good faith and fair dealing or state consumer protection statutes.  While the plaintiffs style their complaints as breach of contract claims, "it is immaterial [how] Plaintiffs package their claim." *Schneberger v. Air Evac EMS, Inc.*, 2017 WL 1026012, at *4 (W.D. Okla. Mar. 15, 2017), *aff'd*, 749 F. App'x 670 (10th Cir. 2018).  Such claims are pre-empted even "when the claim [i]s ... masquerading as one for breach of contract."  *Chanze v. Air Evac EMS, Inc.*, 2018 WL 5723947, at *5 (N.D.W.V. Nov. 1, 2018); *see also Schneberger*, 2017 WL 1026012, at *4 (if a plaintiff is not "simply attempting to enforce a specific term of the contract," her claim is "merely masquerading" and pre-empted); *Feldman v. United Parcel Service, Inc.*, 2008 WL 800989, at *17 (S.D.N.Y. Mar. 24, 2008) (ADA pre-empts breach of good faith and fair dealing claim framed as a breach of contract claim); *Waul v. American Airlines, Inc.*, 2003 WL 22719273, at *3–4 (Cal. App. Ct. Nov. 17, 2003).

For example, in *Waul*, the plaintiff filed a breach of contract claim against an airline for failure to provide frequent flyer miles that "consumers reasonably believed and expected that they" should have received, but the plaintiff did "not allege the breach of an express term found" in the contract. 2003 WL 22719273, at *3.  The court held that the ADA pre-empted the plaintiff's claim because "[h]owever the breach may be characterized, the source of the asserted obligation is not a commitment that [airline] has made to its frequent flyer customers but plaintiffs conception of what fairness requires and what the law should insist upon."  *Id.* at *3–4.

The same result follows here.  Here, the plaintiffs complain that they did not receive a cash refund via what they deem "an adequate mechanism" or because they were supposedly confused by BA's website.  (FAC ¶¶ 58–70, 77.)  But just as in *Schneberger*, *Chanze*, *Feldman*, and *Waul*, since "the source of the asserted obligation is not a commitment that [BA] has made ... but plaintiffs' conception of what fairness requires," the plaintiffs' claims are pre-empted.

## IV.   THE PLAINTIFFS' REMEDIES SOUGHT BEYOND COMPENSATORY DAMAGES MUST BE STRICKEN.

Even if some portion of the FAC survives (and it should not), the plaintiffs' request for "statutory damages, punitive or exemplary damages" and "injunctive relief" must be stricken.

### A.   The COC's Limitation of Liability Applies.

The COC limits BA's liability only to "compensatory damages which you are entitled to recover for proven losses and costs." (Ex. 7 § 15(g)(3).) "In New York, [a] limitation on liability provision … represents the parties' [a]greement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor." *Roberts v. Weight Watchers Int'l, Inc.*, 217 F. Supp. 3d 742, 753–54 (S.D.N.Y. 2016) (citations and quotations omitted). The COC's limitation of liability is valid, enforceable, and bars any claims for damages beyond compensatory damages.

### B.   Statutory and Punitive Damages are Unavailable.

In any event, the plaintiffs are not entitled to statutory or punitive damages for a breach of contract claim. "Under New York law, the normal measure of damages for breach of contract is expectation damages"; "to impose statutory damages for a breach of contract would be to impose a penalty on the breaching party, whereas [t]he general rule in New York is that punitive damages are not available in breach of contract actions." *McLean-Laprade v. HSBC*, 2013 WL 3930565, at *5 (N.D.N.Y. July 30, 2013).

### C.   The Plaintiffs Lack Article III Standing for Injunctive Relief.

To obtain injunctive relief, "a plaintiff must show a likelihood that he will be injured in the future." *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) (internal quotation omitted). Indeed, "[i]t is well established that, to have standing to pursue injunctive relief, which is a forward-looking remedy, a plaintiff may not rely on past injury alone; instead, a plaintiff must

show a likelihood of future injury." *Rapa v. City of New York*, 2015 WL 5671987, at *1 (S.D.N.Y. Sept. 25, 2015) (internal quotation omitted); *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 388 (2d Cir. 2015). "[P]laintiffs must allege an injury that is 'actual and imminent, not conjectural or hypothetical.'" *Kurtz v. Costco Wholesale Corp.*, 2020 WL 3480830, at *2 (2d Cir. June 26, 2020) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

A plaintiff lacks standing for injunctive relief unless she pled that she intends to purchase the product in the future. *See e.g.*, *Kurtz*, 2020 WL 3480830, at *2 (where plaintiff did not assert a future intention to buy the product, he lacks standing); *Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018) (same); *Nicosia v. Amazon, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (same); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) ("[t]here is no exception to demonstrating future injury when the plaintiff is pursuing a class action").

So too here. Here, the plaintiffs have not alleged that they will purchase a BA flight in the future, nor that such flight will be cancelled by BA because of Covid-19, or that they will be denied a refund if properly requested. Consequently, the plaintiffs lack Article III standing for injunctive relief, and the plaintiffs' request for injunctive relief should be stricken.

## **CONCLUSION**

For the foregoing reasons, BA's Motion should be granted in its entirety.

Dated: July 24, 2020                    Respectfully submitted,

                                        _ /s/ Keara M. Gordon_____
                                        Keara M. Gordon
                                        Colleen Carey Gulliver
                                        William J. Diggs
                                        DLA Piper LLP (US)
                                        1251 Avenue of the Americas
                                        New York, New York 10020-1104
                                        Phone: (212) 335-4500
                                        Facsimile: (212) 335-4501
                                        keara.gordon@us.dlapiper.com
                                        colleen.gulliver@us.dlapiper.com
                                        william.diggs@us.dlapiper.com

                                        *Attorneys for Defendant British Airways*