## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

STEPHEN IDE, KAREN STEELE-CLARK, DONALD DOMINIQUE, JR., AND PHILIP TENN, on behalf of themselves and all others similarly situated,

               Plaintiff,

    v.

BRITISH AIRWAYS, PLC (UK),

               Defendant.

Case No. 1:20-cv-03542-JMF

**PLAINTIFFS' OPPOSITION TO DEFENDANT BRITISH AIRWAY'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT AND COMPEL ARBITRATION (IN PART)**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................. 1

II.    FACTS ................................................................................................................... 2

III.   LEGAL STANDARD............................................................................................ 5

IV.    ARGUMENT ......................................................................................................... 5

    A.    The Court should not consider Exhibits 1-6 and 8-11 in relation to BA's
        motion to dismiss. ...................................................................................... 6

        1.    Exhibits 1, 2, 3, 4, 5, and 6 should not be considered................................ 7

        2.    Internal BA documents concerning Plaintiffs (Exhibits 8 and 11) and
              Expedia documents (Exhibits 9 and 10) should not be considered. .......... 9

    B.    BA breached the COC. ................................................................................ 10

        1.    BA has not provided any of the remedies that its COC guarantees
              for a canceled flight. ................................................................................ 10

        2.    BA did not allow consumers to choose their remedy. .............................. 12

              a.    BA was contractually obligated to let its consumers choose a
                  refund. ...................................................................................... 12

              b.    BA unlawfully interfered with its customers' choice of a
                  refund. ...................................................................................... 13

              c.    BA's contentions that it did not unlawfully interfere are
                  meritless. ................................................................................... 14

        3.    BA was obligated to refund Mr. Tenn for his canceled flight. ................. 15

        4.    Plaintiffs have damages. .......................................................................... 17

    C.    The Airline Deregulation Act does not preempt Plaintiffs' claims. .................... 18

        1.    Breach of contract claims are not preempted............................................ 18

        2.    BA argues that other claims would be preempted, but Plaintiffs
               did not assert those claims. ....................................................................... 19

    D.    Mr. Dominique's claim should be stayed pending arbitration............................. 22

    E.    BA's request to strike portions of Plaintiffs' complaint should be denied........... 23

        1.    BA's limitation of liability clause does not apply here............................. 23

        2.    Punitive or exemplary damages are available........................................... 24

       3.     Plaintiffs have standing to seek injunctive relief. ..................................... 25

V.    CONCLUSION............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Allen v. WestPoint-Pepperell, Inc.*
  945 F.2d 40 (2d Cir. 1991) ................................................................................. 6

*Am. Airlines, Inc. v. Wolens*
  513 U.S. 219, (1995) .................................................................... 18, 20, 21

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ......................................................................................... 5

*Barberan v. Nationpoint*
  706 F. Supp. 2d 408 (S.D.N.Y. 2010) ............................................................. 8

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ......................................................................................... 5

*Boone v. United States*
  2017 WL 398386 (S.D.N.Y. Jan. 30, 2017) .................................................. 17

*Borrero v. Ruppert Hous. Co., Inc.*
  2009 WL 1748060 (S.D.N.Y. June 19, 2009) ............................................... 22

*Chambers v. Time Warner, Inc.*
  282 F.3d 147 (2d Cir. 2002) ............................................................................ 7

*Chanze v. Air Evac EMS, Inc.*
  2018 WL 5723947 (N.D.W. Va. Nov. 1, 2018) ............................................ 20

*Chunn v. Amtrak*
  2015 WL 10520663 (S.D.N.Y. Aug. 6, 2015) ................................................ 8

*Cox v. Spirit Airlines, Inc.*
  786 F. App'x 283 (2d Cir. 2019) .............................................................. 18, 19

*Cuson v. Maryland Cas. Co.*
  735 F. Supp. 966 (D. Haw. 1990) .................................................................. 24

*Davidoff v. Progressive Hawaii Ins. Co.*
  2013 WL 124353 (M.D. Tenn. Jan. 9, 2013) ................................................ 24

*Davis v. Key Gas Corp.*
  124 P.3d 96 (Kan. App. 2005) ....................................................................... 15

*Dennis v. Delta Air Lines, Inc.*
  2011 WL 4543491 (E.D.N.Y. Aug. 18, 2011) .............................................. 17

*DiFolco v. MSNBS Cable L.L.C.*
  622 F.3d 104 (2d Cir. 2010) ............................................................................ 6

*Doe v. Bank of Am., N.A.*
  2018 WL 295565 (D.N.J. Jan. 3, 2018) ................................................................. 23

*Dover v. British Airways, PLC (UK)*
  2017 WL 4358726 (E.D.N.Y. Sept. 29, 2017) ........................................................ 21

*Drake v. Lab. Corp. of Am. Holdings*
  458 F.3d 48 (2d Cir. 2006) ...................................................................................... 25

*F.T.C. v. Tax Club, Inc.*
  994 F. Supp. 2d 461 (S.D.N.Y. 2014) ...................................................................... 5

*Faulkner v. Beer*
  463 F.3d 130 (2d Cir. 2006) ....................................................................................... 7

*Feldman v. United Parcel Service, Inc.*
  2008 WL 800989 (S.D.N.Y. Mar. 24, 2008) .......................................................... 19

*Gulf, M. & O. R. Co. v. Illinois Cent. R. Co.*
  128 F. Supp. 311 (N.D. Ala. 1954) ......................................................................... 15

*Hill v. UnitedHealthcare Ins. Co.*
  2017 WL 7038128 (C.D. Cal. Mar. 21, 2017) ........................................................ 25

*In re Mexico Money Transfer Litig.*
  267 F.3d 743 (7th Cir. 2001) ................................................................................... 11

*Katz v. Cellco P'ship*
  794 F.3d 341 (2d Cir. 2015) .................................................................................... 22

*LaSociete Generale Immobiliere v. Minneapolis Cmty. Dev. Agency*
  44 F.3d 629 (8th Cir. 1994) ..................................................................................... 15

*Lipsky v. Commonwealth United Corp.*
  551 F.2d 887 (2d Cir. 1976) .................................................................................... 23

*Lussoro v. Ocean Fin. Fed. Credit Union*
  2020 WL 1941236 (E.D.N.Y. Apr. 22, 2020) ........................................................ 10

*Marcus v. AT&T Corp.*
  138 F.3d 46 (2d Cir. 1998) ...................................................................................... 19

*Martin v. United Airlines, Inc.*
  727 F. App'x 459 (10th Cir. 2018) .......................................................................... 17

*Nikish Software Corp. v. Manatron, Inc.*
  801 F. Supp. 2d 791 (S.D. Ind. 2011) ............................................................. 12, 14

*Northwest, Inc. v. Ginsberg*
  572 U.S. 273 (2014) ........................................................................................... 20, 21

*Orosz v. Regeneron Pharm., Inc.*
  2016 WL 11484449 (S.D.N.Y, Aug. 30, 2016) ...................................................................... 7

*Pogge v. Fullerton Lumber Co.*
  277 N.W.2d 916 (Iowa 1979) ............................................................................................ 24

*Rice v. Smithtown Volkswagen*
  321 F. Supp. 3d 375 (E.D.N.Y. 2018) ............................................................................ 6, 8

*Roberts v. Weight Watchers International, Inc.*
  217 F. Supp. 3d 742 (S.D.N.Y. 2016) ......................................................................... 23, 24

*Ruta v. Delta Airlines, Inc.*
  322 F. Supp. 2d 391 (S.D.N.Y. 2004) ............................................................................... 17

*Schneberger v. Air Evac EMS, Inc.*
  2017 WL 1026012 (W.D. Okla. Mar. 15, 2017)
  *aff'd*, 749 F. App'x 670 (10th Cir. 2018) ........................................................................ 20

*Seippel v. Jenkens & Gilchrist, P.C.*
  341 F. Supp. 2d 363 (S.D.N.Y. 2004) ............................................................................... 23

*Source Search Techs., LLC v. Lending Tree, LLC*
  2007 WL 1302443 (D.N.J. May 2, 2007) .......................................................................... 12

*State Employees Bargaining Agent Coal. v. Rowland*
  494 F.3d 71 (2d Cir. 2007) ................................................................................................ 25

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*
  463 F.3d 646 (7th Cir. 2006) ............................................................................................. 11

*Thomas v. Mayberry*
  586 So. 2d 1325 (Fla. Dist. Ct. App. 1991 .................................................................. 13, 14

*Walker v. Thompson*
  404 F. Supp. 3d 819 (S.D.N.Y. 2019) ......................................................................... 10, 13

*Waul v. American Airlines, Inc.*
  2003 WL 22719273 (Cal. Ct. App. Nov. 17, 2003) .......................................................... 20

*Weisblum v. Prophase Labs, Inc.*
  88 F. Supp. 3d 283 (S.D.N.Y. 2015) ................................................................................... 9

## STATUTES

49 U.S.C. § 41713(b)(4)(A) ..................................................................................................... 18

9 U.S.C. § 3 .............................................................................................................................. 22

Cal. Civ. Code § 1668 .............................................................................................................. 24

COC § 10c2 ................................................................................................................... 16

COC § 3c4 ..................................................................................................................... 16

COC § 3c5 ..................................................................................................................... 16

COC § 3c6 ..................................................................................................................... 16

COC § 3c9 ..................................................................................................................... 16

## OTHER AUTHORITIES

13 Williston on Contracts § 39:3 (4th ed.) ................................................................... 14

17A Am. Jur. 2d Contracts § 675 .................................................................................. 12

17A Am. Jur. 2d Contracts § 703 .................................................................................. 12

Restatement (First) of Contracts § 315 ......................................................................... 12

## RULES

Fed. R. Evid. 201 ............................................................................................................. 6

## I.      INTRODUCTION

British Airways plc ("BA") canceled flights due to the Covid-19 pandemic. According to BA's contract, the General Conditions of Carriage ("COC"), if British Airways cancels a flight, the customer "can choose" one of three remedies: to be carried on a different flight to the same destination as soon as possible at no extra charge, to be carried on a different flight to the same destination at the customer's convenience at no extra charge, or a cash refund. But BA did not provide any of these remedies to Plaintiffs. Instead, it offered vouchers for "part payment" toward a future booking, and it made obtaining a cash refund prohibitively difficult. These actions breached the contract.

BA puts forward three principal reasons to dismiss Plaintiffs' breach of contract claims, but none should lead to dismissal here. First, BA contends that it fully performed on the contract, but the vouchers are not any of the remedies BA promised to provide in the contract, and BA did not permit Plaintiffs to choose their preferred remedy, as the contract requires. Second, BA argues that Mr. Tenn is not entitled to a refund based on extrinsic evidence that the Court should not consider. Even if the Court reaches the issue, these documents at most affect the size of the refund to which Mr. Tenn is entitled, not whether he may recover at all. Third, BA suggests the Airline Deregulation Act ("ADA") preempts Plaintiffs' claims, but the Supreme Court held that the claim that Plaintiffs assert here—breach of contract—is not preempted by the ADA.

BA also makes two other requests. First, BA requests that the Court compel arbitration of Mr. Dominique's claim. Plaintiffs do not oppose this request, but Plaintiffs ask that the Court stay his case rather than dismiss it, as the Second Circuit requires in these circumstances. Second, BA moves to strike the portions of Plaintiffs' complaint that request certain types of relief, but they have failed to meet their burden to show that these portions should be stricken.

## II.     FACTS

The facts here are straightforward. BA refuses to comply with its General Conditions of Carriage requiring BA to provide customers the option to choose refunds when BA cancels a flight. Specifically, Clause 9b3 of BA's General Conditions of Carriage enumerates three remedies when BA cancels a flight, providing:

> If we:
>
> - cancel a flight;
> - delay a flight by five hours or more;
> - fail to stop at your place of stopover or destination; or
> - cause you to miss a connecting flight on which you hold a confirmed reservation;
> - you can choose one of the three remedies set out immediately below.
>
> Remedy 1
>
> We will carry you as soon as we can to the destination shown on your ticket on another of our scheduled services on which a seat is available in the class of service for which you have paid the fare. If we do this, we will not charge you extra and where necessary, will extend the validity period of your ticket.
>
> Remedy 2
>
> We will carry you to the destination shown on your ticket in the class of service for which you have paid the fare at a later date at your convenience and within the validity period of your ticket on another of our scheduled services on which a seat is available. If we do this, we will not charge you extra.
>
> Remedy 3
>
> We will give or obtain for you an involuntary fare refund. We will give you additional assistance, such as compensation, refreshments and other care and reimbursement, if required to do so by any law which may apply. We will have no further liability to you.

Plaintiffs' First Amended Class Action Complaint, ECF No. 30 ("FAC") ¶ 46. There is no option to provide a voucher for the price of the ticket in lieu of complying with the three remedies set forth in the contract.

An "involuntary fare refund" is defined as "a refund, under clause 10b, of the fare for your ticket." *Id.* ¶ 47. Clause 10b, in turn, provides:

> 10b1) We will pay fare refunds as set out below if we:
>
> - cancel a flight
>
> - make a significant change to a flight time which is not acceptable to you
>
> - delay a flight by five hours or more
>
> - fail to stop at your place of destination or stopover
>
> - cause you to miss a connecting flight on which you held a confirmed reservation or refuse to carry you because a banning notice is in force against you or for some other reason pursuant to these conditions where reference is made to this clause.
>
> 10b2) If you have not used any part of the ticket, the refund will be equal to the fare and any carrier imposed charges and surcharges, and taxes, fees and charges you have paid.
>
> 10b3) If you have used part of the ticket, the refund will be equal to at least the difference between the fare and any carrier imposed charges and surcharge and taxes, fees and charges you have paid and the correct fare and carrier imposed charges and surcharges, and taxes, fees and charges for travel between the points for which you have used your ticket.

*Id.* ¶ 48.

BA's COC are consistent with long-standing Department of Transportation policy, which provides that airline carriers must "provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier." *Id.* ¶ 55.

The Covid-19 pandemic caused mass cancellations of airline flights. Instead of offering a refund as required by its COC, BA modified its website to mislead its customers into receiving vouchers rather than the refunds it was contractually required to make available. *Id.* ¶ 58. Passengers with cancelled flights are shown a website that looks like the following:

3



*Id.* ¶ 59. When the customer, however, clicks on the "Cancel and refund flight(s)" link, the customer is not taken to a page that provides refunds. Instead, the customer is taken to a page titled "Future Travel Voucher Application" where the only option is to select a voucher. *Id.* ¶ 60-61. The Future Travel Voucher Application states that the voucher "can be used as part payment towards a future booking." *Id.* ¶ 60. Nowhere on the application does it state that if a customer selects a voucher, they are no longer eligible for a refund. But if the customer fills out the Future Travel Voucher Application, BA will refuse to provide a refund. *Id.* ¶ 63. There is no consistently usable method on the website to request a refund. *Id.* ¶ 64.

The only hope passengers have for obtaining a refund is to call BA. *Id.* ¶ 65. But customers are often disconnected or have to wait hours on hold to speak to a customer service representative. *Id.* There is no automated way on the phone to request a refund. *Id.*

Plaintiffs are BA customers who had their flights cancelled. After finding no way to request a refund on BA's website, Plaintiff Ide applied for a voucher. *Id.* ¶ 13. He attempted to call BA four times to convert the voucher into a refund but was disconnected each time. *Id.* ¶ 14. When he eventually reached a customer service representative on his fifth attempt, the customer service representative told him that a refund was not available because Mr. Ide had selected a

voucher. *Id.* ¶ 17. Plaintiff Steele-Clarke has a similar story. She filled out a form online where she thought she was requesting a refund but received a voucher instead. *Id.* ¶ 21. BA has refused to provide with a refund for her full fare. *Id.* ¶ 24. Plaintiffs Dominique and Tenn had round trip tickets for which the return flights were cancelled by BA. *Id.* ¶¶ 26-27, 33-34. Neither Mr. Dominique nor Mr. Tenn have received a refund or a voucher. *Id.* ¶ 31, 36-37.

BA's provisions of vouchers does not comply with the remedies set forth in terms in the COC. Moreover, BA failed to allow consumers to choose their remedy as required by the COC. On behalf of themselves and a class of those similarly situated, Plaintiffs seek the refunds from BA to which they are contractually entitled.

## III.   LEGAL STANDARD

"In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 468 (S.D.N.Y. 2014) (Furman, J.). To defeat a Rule 12(b)(6) motion, the complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint does so "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   ARGUMENT

In its motion, BA attempts to introduce a number of documents to support its arguments. With the exception of the COC and two documents related to BA's motion to compel arbitration, none of these documents should be considered.

As for the merits, BA's motion should be denied. First, a voucher is not a remedy allowed under the COC. It is not a refund, nor it is a guarantee that the passenger will be able to

fly at a later date in the same class of service at no extra charge. Moreover, BA breached its COC by not letting passengers "choose" their preferred remedy as required by the COC. Next, BA argues that Plaintiff Tenn is not entitled to a refund because he missed his outbound flight, but its argument is not consistent with the terms of the COC. Additionally, BA raises preemption, but Plaintiffs' breach of contract claims are not preempted.

Further, BA requests that the Court dismiss Plaintiff Dominique's claim because it is subject to arbitration, but under Second Circuit law, the Court is required to stay rather than dismiss his claims upon request. Last, BA's motion to strike portions of Plaintiff's requested relief misses the mark. Plaintiffs plausibly plead that they are entitled to punitive or exemplary damages, and Plaintiffs have standing for injunctive relief because the harm is ongoing.

### A.    The Court should not consider Exhibits 1-6 and 8-11 in relation to BA's motion to dismiss.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBS Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).[1] For documents to be incorporated by reference, the "complaint must make a clear, definite, and substantial reference to the documents . . . ." *Rice v. Smithtown Volkswagen*, 321 F. Supp, 3d 375, 383 (E.D.N.Y. 2018). "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion." *Orosz v.*

---

[1] The Court may also consider "matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). But BA did not request judicial notice of any of the documents, and they are not "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

6

*Regeneron Pharm., Inc.*, 2016 WL 11484449, at *3 (S.D.N.Y, Aug. 30, 2016) (emphasis in original) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).[2]

Here, BA has sought to introduce into the record, and have the Court rely on, a number of documents that are not referenced in Plaintiffs' complaint or relied on by Plaintiffs. As explained below, with the exception of Exhibit 7 (a copy of BA's Conditions of Carriage), none of BA's exhibits was attached to Plaintiffs' complaint, incorporated by reference in the complaint, or relied upon in drafting their complaint. These exhibits should not be considered.

### 1.      Exhibits 1, 2, 3, 4, 5, and 6 should not be considered.

Exhibits 1, 2, and 6 purportedly show the adverse effects of Covid-19 on the airline industry, including a reduced passenger capacity, a slowdown in air travel, and potential financial losses. British Airways's Memorandum of Law in Support of Its Motion To Dismiss the First Amended Class Action Complaint and Compel Arbitration ("Mem.") at 1, 4. The extent to which Covid-19 has reduced airline capacity or caused losses for airlines is entirely irrelevant to the issue in dispute. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (extrinsic material can only be considered where "there exist no material disputed issues of fact regarding the relevance of the document"). But more importantly, Plaintiffs relied on none of the documents in drafting their complaint; none of documents is even mentioned in the complaint.

Exhibit 3 is letter from BA's parent company to the Chair of the British Transport Committee stating that BA has allegedly provided cash refunds for over 921,00 tickets. This is also not a document that Plaintiffs relied on or referenced in their complaint. While BA may seek to use such information in support of its defenses at later stages of the litigation, Exhibit 3 is not

---

[2] To the extent a different standard may apply to a motion to compel arbitration, none of the Exhibits relate to the only issue left for the Court: whether to dismiss or stay pending arbitration. *See infra* Section IV.D.

properly a part of the record on a motion to dismiss. *See Rice*, 321 F. Supp. 3d at 384 (documents not properly considered on a motion to dismiss where "Defendants attached these documents to their motion to dismiss solely for the purpose of refuting facts alleged in the Complaint"). In addition, Plaintiffs have not had an opportunity to test the assertions made in the document—such as how many of those alleged refunds were provided to U.S. customers and the circumstances in which the refunds were allegedly provided—through discovery.[3]

BA cites Exhibits 4 and 5—which are printouts from BA's website—in support of its argument that it made refunds available to passengers. Mem. at 1, 5, 8, 9. Neither of these webpages was relied on by Plaintiffs or cited in their complaint. Plaintiffs do not, for example, contend that the terms of their contracts with BA were contained in these webpages.[4] The fact that BA believes that the webpages support its position is an insufficient basis on which to have the documents considered as part of a motion to dismiss. *See Chunn v. Amtrak*, 2015 WL 10520663, at *4 (S.D.N.Y. Aug. 6, 2015) (declining to consider documents that defendant claimed proved that it did not confiscate plaintiffs' money or property).

Furthermore, even if the Court considered these documents, they could not support the claims for which BA relies on them. When a court takes judicial notice of a document for a motion to dismiss, "the court should generally take judicial notice to determine what statements the documents contain" rather than "for the truth of the matters asserted." *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 415 (S.D.N.Y. 2010) (internal quotation marks, and brackets

---

[3] BA's statements about this document in its Memorandum of Law illustrate the reason the Court should not consider these documents at this time. BA claims that this document shows that "BA provided cash refunds to about 2.1 million people." Mem. at 5. Exhibit 3 actually says that BA has provided cash refunds on 921,000 tickets involving 2.11 million flights, not to 2.1 million people. Discovery will clarify the underlying facts.

[4] While Plaintiffs refer to certain of BA's webpages in its complaint (*see* FAC ¶¶ 7, 17, 21, 35, 58, 64, 67-70), they do not reference the webpages included as Exhibits 4 and 5.

omitted). Thus, even if the Court considered these documents, they would only show that, for example, BA claims that it provided refunds to various customers, not that BA has actually provided refunds to various customers. Plaintiffs allege that refunds were not, in fact, provided to many customers, FAC ¶ 66, and "the Court is required to assume the truth of the allegations at this stage of the litigation." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 298 (S.D.N.Y. 2015) (Furman, J.).

        **2.**        **Internal BA documents concerning Plaintiffs (Exhibits 8 and 11) and Expedia documents (Exhibits 9 and 10) should not be considered.**

Exhibits 8 and 11 are allegedly excerpts of a "Passenger Name Record" for Plaintiffs Dominique and Tenn. BA cites these exhibits as support for its statements that Mr. Dominique and Mr. Tenn purchased non-refundable fares and did not board their outbound flights. Mem. at 6, 7. Neither document is attached to the complaint or referenced in the complaint, and Plaintiffs did not rely on either document in support of their claims. Thus, neither document is properly a part of the motion to dismiss record. To the extent BA contends that the documents demonstrate circumstances in which Mr. Dominique and Mr. Tenn are not entitled to refunds, BA may present such arguments as part of a motion for summary judgment after both parties have engaged in discovery.

Consideration of these documents at this stage is particularly inappropriate because they give only a one-sided and incomplete picture of the facts. For example, Mr. Tenn contacted BA before his outbound flight departed, but the Gordon Declaration does not reflect this fact. As discussed below, this fact significantly affects BA's arguments. The details of Mr. Tenn's situation should be deferred until after discovery when they can be addressed on a complete factual record.

For substantially the same reasons, Exhibits 9 and 10 may be considered to the extent they are relevant to BA's motion to compel arbitration, but not for BA's motion to dismiss.

**B.     BA breached the COC.**

BA argues that it has complied with terms of its contract, that Plaintiff Tenn is not entitled to a refund because he missed the first leg of his flight, and that Plaintiffs have not alleged damages. None of Defendant's arguments have merit.

First, BA breached its COC because vouchers are not a permitted remedy for a flight cancelled by BA. Second, BA breached the COC by preventing consumers from choosing their remedy when BA cancelled its flight. Third, Mr. Tenn is entitled to a refund because BA cancelled his return flight. Finally, Plaintiffs have alleged damages.

**1.     BA has not provided any of the remedies that its COC guarantees for a canceled flight.**

The COC provides specific remedies to customers when BA cancels a flight. BA has not provided any of these remedies, breaching the contract.

BA's COC provides that when BA cancels a flight, a consumer "can choose" one of three remedies: (1) be carried to the same destination as soon as BA can "in the class of service of for which you have paid the fare[,]" for which BA will not charge "extra"; (2) be carried to the same destination "in the class of service for which you have paid the fare at a later date at your convenience[,]" for which BA will not charge "extra"; or (3) a "fare refund." FAC ¶ 46.

But when BA canceled flights, the primary remedy it offered was a voucher. FAC ¶ 58. A voucher is not one of the contractually promised remedies.[5] A voucher is not Remedy 3, a cash

---

[5] To the extent that BA disagrees with Plaintiffs' interpretation of the contract, the Court must resolve all ambiguities in Plaintiffs' favor for the purpose of this motion. *Walker v. Thompson*, 404 F. Supp. 3d 819, 823 (S.D.N.Y. 2019); *Lussoro v. Ocean Fin. Fed. Credit Union*, No. 18CV7400PKCST, 2020 WL 1941236, at *4 (E.D.N.Y. Apr. 22, 2020) (holding that, for a

refund. Unlike cash, BA's vouchers are not transferable and expire. If a passenger booked a flight for a specific reason and would not otherwise have a reason to book a flight with BA in the future (or has no reason to book a flight prior to the expiration of the voucher), a voucher provides that customer with no value. Moreover, "compensation in kind is worth less than cash of the same nominal value." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006).

Nor is a voucher either of the other remedies. Remedy 1 and Remedy 2 both require BA to carry the passenger to the same destination in the same class of service at no extra charge, either as soon as BA can (Remedy 1) or at the passenger's convenience (Remedy 2). But the voucher is for the value of the fare paid, not for a flight to the destination regardless of differences in cost. The email accompanying Mr. Ide's voucher stated that the voucher "can be used as ***part*** payment towards a future booking." FAC ¶ 15 (emphasis added). If BA raises the price for travel to the same destination in the same class of service, BA will charge extra to carry the passenger to the destination, contrary its contractual obligations. Indeed, one of the common criticisms of vouchers is that the cost of the voucher can be "offset (in whole or in part) by raising prices during the period before the coupons expire." *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001).

BA argues that Remedy 2 is "essentially a voucher." Mem. at 4, 15. But it does not address the differences between the voucher with a face value of the canceled flight's fare and BA's promise to carry the passenger to the same destination at no extra charge. Remedy 2 is not

---

motion to dismiss, if the contract is ambiguous, Plaintiffs' interpretation should be accepted if it is plausible).

a voucher of the sort that BA provided.[6] Thus, BA has not provided any of the three remedies required to be provided by its contract. By refusing to do so, BA has breached the COC.

### 2. BA did not allow consumers to choose their remedy.

#### a. BA was contractually obligated to let its consumers choose a refund.

Even if a voucher could be construed as a type of rebooking remedy, BA would still be in violation of its contract by not allowing consumers to choose a refund. Clause 9b3 of the contract provides that if BA cancels a flight, the customer "can choose" any one of three remedies, one of which is that BA "will give or obtain for" the customer an involuntary fare refund. FAC ¶ 46. The COC defines an involuntary fare refund as "equal to the fare and any carrier imposed charges and surcharges, and taxes, fees and charges you have paid." FAC ¶¶ 47-48.

By promising in the contract that customers "can choose" their preferred remedies, BA expressly permitted customers to make their own choice. *See Source Search Techs., LLC v. Lending Tree, LLC*, No. CIV 04-4420 DRD, 2007 WL 1302443, at *8 (D.N.J. May 2, 2007) ("can" is permissive). Interfering with what a contract expressly allows a party to do is a breach of the contract. *See Nikish Software Corp. v. Manatron, Inc.*, 801 F. Supp. 2d 791, 801 (S.D. Ind. 2011). This principle derives from the well-established rule that "[p]revention or hindrance by a party to a contract of any occurrence or performance requisite under the contract for the creation or continuance of a right in favor of the other party, or the discharge of a duty by him, is a breach of contract . . . ." Restatement (First) of Contracts § 315; *see also* 17A Am. Jur. 2d Contracts §§ 675, 703.

---

[6] BA makes no argument that a voucher is equivalent to Remedy 1. In any event, Remedy 1 is not equivalent to a voucher for not for the same reasons as Remedy 2.

BA's promise that the customer "can choose" would lack any practical effect if BA could cut off all avenues by which the customer reasonably could make that choice and force customers to receive a less-preferred remedy. Courts do not ordinarily interpret provisions of a contract so as to render them superfluous or meaningless. *See, e.g.*, *Walker v. Thompson*, 404 F. Supp. 3d 819, 825 (S.D.N.Y. 2019). Furthermore, interpreting the contract to require BA to provide customers at least the option of obtaining a refund for a canceled flight conforms with the Department of Transportation's guidance regarding longstanding legal requirements and practices in the aviation industry. FAC ¶¶ 54-55.

### b.   BA unlawfully interfered with its customers' choice of a refund.

BA breached its promise to let the customers choose their preferred remedy. BA removed the option to select a refund from its website. FAC ¶¶ 58-64. BA's call center frequently disconnected calls, and there was no automated way to obtain a refund by phone. *Id.* ¶ 65, 68-70. Those callers who were not disconnected were subject to extraordinary wait times that often did not allow customers to reach live representatives. *Id.* ¶¶ 65-70. Due to BA's interference, Plaintiffs could not choose for BA to give them a refund. BA thus breached the contract.

The allegations here are similar to those in *Thomas v. Mayberry*, 586 So. 2d 1325 (Fla. Dist. Ct. App. 1991). In *Thomas*, two tenants asserted claims for, among other things, breach of contract against a landlord with whom they had contracted to obtain an option to purchase the rental property. *Id.* at 1326. The tenants asserted in an affidavit that they attempted to mail their notice to exercise the option, but the landlord had given them an incorrect address. *Id.* They made an appointment to meet with the landlord, but he did not show up to the meeting and referred them to an escrow agent. *Id.* The landlord then "held himself incognito" from the escrow agent until after the expiration of the option. *Id.* The court held that, based on this affidavit, there

was a dispute of material fact that precluded summary judgment because there was evidence that

the landlord had prevented the tenants from exercising their option to purchase the property,

breaching the contract. *Id.* at 1327. Similarly, here, BA prevented Plaintiffs from exercising their

option to obtain refunds for their canceled flights, breaching the contract.

> **c.      BA's contentions that it did not unlawfully interfere are meritless.**

Any argument by BA that it did not interfere with Plaintiffs is premature because

"'[w]hether interference by one party to a contract amounts to prevention so as to excuse

performance by the other party and constitute a breach by the interfering party is a question of

fact to be decided by the jury under all of the proved facts and circumstances.'" *Nikish Software

Corp.*, 801 F. Supp. 2d at 801 (quoting 13 Williston on Contracts § 39:3 (4th ed.))

Nonetheless, BA contends that the contract permits BA to require customers to call to

obtain a refund. Mem. at 16-17. Plaintiffs allege, however, that BA often disconnected the calls,

and when customers were able to get through, wait times were so long that many customers were

unable to reach customer service representatives. FAC ¶¶ 65-70. BA minimizes this as mere

emotional frustration, Mem. at 17, but as a practical matter, many customers could not dial over

and over again only to remain on hold for many hours to reach a representative. BA's obligation

was to permit customers to choose a refund. FAC ¶¶ 44-49. Providing a phone number that

frequently does not reach BA at all, but instead disconnects or results in prohibitively long wait

times, does not satisfy this contractual obligation. Many customers, including Mr. Ide, were not

able to choose to obtain a refund despite attempts to do so. *Id.* ¶ 12-13, 65.

If BA is suggesting that it was not able to provide an adequately accessible call center,

BA is still liable because its decision to remove the option to obtain a refund from its website led

to the need for customers to attempt to receive refunds through the call center. "It is well settled

that a party cannot avoid liability for the nonperformance of an obligation by placing such performance beyond its control by its own voluntary act." *Davis v. Key Gas Corp.*, 124 P.3d 96, 105 (Kan. App. 2005).

Likewise, if BA contends that Plaintiffs were required to take more affirmative steps to request refunds, BA prevented Plaintiffs from doing so. Hindering contract performance, or rendering it impossible, excuses performance and breaches the contract. *LaSociete Generale Immobiliere v. Minneapolis Cmty. Dev. Agency*, 44 F.3d 629, 638 (8th Cir. 1994). In other words, a party to a contract "obligates himself to cooperate in the performance of his contract and the law will not permit him to take advantage of an obstacle to performance which he has created or which lies within his power to remove." *Gulf, M. & O. R. Co. v. Illinois Cent. R. Co.*, 128 F. Supp. 311, 324 (N.D. Ala. 1954). But BA deleted the refund option from its website and provided only a dysfunctional call center. Also, BA's website is deceptive. The button on BA's website that says "cancel and refund flight(s)" leads consumers to a form, but BA refuses to provide refunds, and instead provides vouchers, to those who fill out the form. FAC ¶¶ 59-63. BA thwarted Plaintiffs' efforts to request refunds.

BA interfered with consumers' ability to request the refunds to which they were contractually entitled. This is a breach of contract.

### 3. BA was obligated to refund Mr. Tenn[7] for his canceled flight.

Based on documents outside the complaint, BA argues that Mr. Tenn is not entitled to a refund because he missed his outbound flight. As explained above, the Court should not consider

---

[7] The same analysis applies to Mr. Dominique, but the Court need not decide the issue because Mr. Dominique does not oppose staying his claim pending arbitration, as discussed below.

these documents. But even if the Court considers the documents, they would not result in the outcome BA suggests.

The COC provides that "[i]f you fail to cancel a booking before the check-in deadline for your flight and do not show up for the flight, we may decide to cancel your return or onward reservations." COC § 3c10. This provision merely gives BA the right to cancel the reservation. It does not, however, provide that BA may pocket the money from the canceled return reservation. BA also cites COC §§ 3c5, 6 (Mem. at 14), but those provisions merely allow BA to charge additional money if the passenger changes their transportation.

Thus, because Mr. Tenn had the second half of his flight cancelled by BA, he is still entitled to a refund for that leg. At minimum, he is entitled to a voluntary fare refund, which provides "[i]f you have not used any part of the ticket, the refund will be equal to the fare and any carrier imposed charges and surcharges, and taxes, fees and charges you have paid, less any cancellation and reasonable service charge." COC § 10c2. But Mr. Tenn has not received either a refund or a voucher. FAC ¶¶ 36-37.[8]

The fact that Mr. Tenn's ticket was marked as "non-refundable" is also irrelevant. While the designation of the ticket as "non-refundable" may impact whether a customer can obtain a refund if *he or she chooses* to cancel his or her flight, the COC explicitly states when *BA* cancels a flight, it must provide a refund option. Non-refundable tickets are not excluded from that provision of the CAC. While BA cites section 3(a)(3) of the COC, that provision says nothing

---

[8] As mentioned above, Mr. Tenn also sought to comply with COC § 3c4, which provides that the customer should contact BA as soon as possible if he needed to change his transportation because of events beyond his control. Mr. Tenn is therefore entitled to a full refund for the canceled flight. *See* COC § 3c9. But because the pertinent facts are not in the FAC, judicially noticeable documents, or the documents that BA improperly seeks for the Court to consider in relation to this motion, Plaintiffs do not ask the Court to rule on this issue now.

about BA's obligations when it chooses to cancel a flight; it simply alludes to the existence of
non-refundable tickets generally.

BA also cites *Martin v. United Airlines, Inc.*, but the contract in that case stated that the
airline "will not refund any portion of a Ticket that is purchased with a non-refundable fare[.]"
727 F. App'x 459, 460 (10th Cir. 2018). As noted above, the COC here contains different
language that suggests the opposite. BA relies on *Dennis v. Delta Air Lines, Inc.*, in which the
airline denied boarding to a passenger who was late, in accordance with the contract. No. 10 CV
973 DLI LB, 2011 WL 4543491, at *4 (E.D.N.Y. Aug. 18, 2011). This case does not involve
denial of boarding due to lateness, and BA did not comply with the terms of the contract here.

### 4.   Plaintiffs have damages.

In a footnote, BA contends that "the plaintiffs have failed to allege damages." Mem. at 18
n.4. BA then explains that the Plaintiffs have not alleged damages because they have "not
alleged a breach." *Id.* BA's argument is circular and not properly presented. *Boone v. United
States*, No. 02-CR-1185 (JMF), 2017 WL 398386, at *2 (S.D.N.Y. Jan. 30, 2017) (noting that
"footnotes are plainly insufficient to raise any argument" and collecting authority). In any event,
Plaintiffs have alleged damages. Plaintiffs were entitled to refunds. Mr. Ide and Ms. Steele-
Clarke received vouchers, and Mr. Tenn received nothing at all. Plaintiffs are entitled to an order
directing BA to provide refunds to Plaintiffs (in place of the vouchers, where applicable). The
amounts of the refunds constitute damages. *See* Black's Law Dictionary (11th ed. 2019)
(defining "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation
for loss or injury").

BA again relies on *Dennis*, 2011 WL 4543491. In *Dennis*, the contract limited the
customer's refund to "the refund value of the unused portion of his or her ticket[,]" which the
airline had already provided. *Id.* at *4. BA also cites *Ruta v. Delta Airlines, Inc.*, which involved

17

a similar contract, but "there [wa]s no unused portion of the ticket . . . . " 322 F. Supp. 2d 391, 399 (S.D.N.Y. 2004). In each of these cases, the plaintiff had already obtained the only remedy available under the contract. Here, the contract provides for a remedy that Plaintiffs have not already obtained. Hence, *Dennis* and *Ruta* do not apply.

### C.    The Airline Deregulation Act does not preempt Plaintiffs' claims.

#### 1.    Breach of contract claims are not preempted.

The ADA provides that, in general, "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . when such carrier is transporting property by aircraft . . . ." 49 U.S.C. § 41713(b)(4)(A). The ADA "permits state-law-based court adjudication of routine breach-of-contract claims." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232 (1995). Plaintiffs assert a routine breach-of-contract claim of the sort expressly permitted by *Wolens*. The ADA does not preempt this claim.

This case squarely fits within the rationale of *Cox v. Spirit Airlines, Inc.*, 786 F. App'x 283 (2d Cir. 2019). In *Cox*, the plaintiffs asserted breach of contract claims based on the airline's additional fees for carry-on items, and the district court held that the claims were preempted because they "'depend[ed] on an enlargement or enhancement of the scope of' their agreements with Spirit . . . . " *Id.* at 285. The Second Circuit reversed, holding that "[i]f carriage of Plaintiffs' carry-on items was within the scope of Spirit's contractual obligations, then the ADA does not preempt Plaintiffs' breach-of-contract claims[,]" but if not, then the plaintiffs' claims should be dismissed for failure to state a claim, not because of preemption. *Id.* The same applies here.

BA asserts that the Court should not follow *Cox*, Mem. at 21 n.5, but provides no proper basis for this conclusion. BA notes that *Cox* is not precedential, but *Cox* is correctly reasoned, consistent with the Supreme Court's decision in *Wolens*, and should guide the Court. BA asserts

that *Cox* acknowledged that courts are limited to enforcing the parties' bargain, but enforcing the

parties' bargain is precisely what Plaintiffs ask the Court to do here. BA states that the issue in

*Cox* was a matter of contract interpretation, but it is not clear what importance BA attaches to

this point. As *Cox* explained, because the plaintiffs asserted a breach of contract claim,

preemption could not apply, and the same is true here. Finally, BA incorrectly states that "the

Second Circuit did not actually conclude that the ADA would not have ultimately pre-empted the

plaintiff's claim." Mem. at 21 n.5. The Second Circuit expressly reached the conclusion that

"ADA preemption does not apply . . . ." *Cox*, 786 F. App'x at 286.

### 2.   BA argues that other claims would be preempted, but Plaintiffs did not assert those claims.

BA contends that Plaintiffs' claims "amount to purported breaches of the covenant of

good faith and fair dealing or state consumer protection statutes." Mem. at 23. But claims that

Plaintiffs did not assert are not relevant here. Plaintiffs asserted only a claim for breach of

contract. FAC ¶¶ 81-93. Plaintiffs are "the master[s] of the complaint" and may plead any claims

they choose. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998). BA must address the

claims that Plaintiffs actually asserted, not other, additional claims that Plaintiffs potentially

could have asserted, but did not.

None of the cases that BA cites suggest otherwise. In *Feldman v. United Parcel Service,*

*Inc.*, the plaintiff argued that "UPS had a contractual covenant and/or duty to act in good faith

and deal fairly with the plaintiff" based on an implied covenant. No. 06 CIV. 2490(MHD), 2008

WL 800989, at *17 (S.D.N.Y. Mar. 24, 2008). The court held that the claim for breach of the

implied covenant of good faith and fair dealing was preempted because the implied covenant was

"based on state policies external to the agreement." *Id*. at *17-18. The Supreme Court later came

to the same conclusion about the same issue. *See Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 289

(2014). Plaintiffs here do not assert a claim premised on an implied covenant of good faith and fair dealing, so *Feldman*—like *Ginsberg*—does not apply.

BA also selectively quotes *Schneberger v. Air Evac EMS, Inc.*, No. CIV-16-843-R, 2017 WL 1026012, at *4 (W.D. Okla. Mar. 15, 2017), *aff'd*, 749 F. App'x 670 (10th Cir. 2018). In *Schneberger* the plaintiffs asserted a claim for breach of implied contract, and facing a preemption defense, sought to recast it in various ways. The court held that "it is immaterial whether Plaintiffs package their claim as one for charging unreasonable rates or one for failing to deal in good faith; Plaintiffs are still alleging that Defendants breached the 'state-imposed obligation[ ]' to charge reasonable rates." *Schneberger*, 2017 WL 1026012, at *4 (quoting *Wolens*, 513 U.S. at 228). Relying on *Schneberger*, the court in *Chanze v. Air Evac EMS, Inc.*, reached the same decision regarding the same type of claim for breach of implied contract. No. 5:18CV89, 2018 WL 5723947, at *4-5 (N.D.W. Va. Nov. 1, 2018). Similarly, in *Waul v. American Airlines, Inc.*, the plaintiffs sought to enforce an implied-in-law contract—that is, an obligation "based on equitable policies external to the parties' actual agreement." No. A101212, 2003 WL 22719273, at *4 (Cal. Ct. App. Nov. 17, 2003). In an unpublished opinion, the California Court of Appeal held that this claim was preempted because the obligation was not "found within the terms of the contract." *Waul*, 2003 WL 22719273, at *4.

Plaintiffs here do not assert a claim for breach of implied contract or any other claim that arises purely out of state law extrinsic to the parties' agreement. Instead, Plaintiffs seek to enforce the express terms of the contract. *Schneberger* held that "[i]f Plaintiffs were simply attempting to enforce a specific term of the contract, their claims could proceed." 2017 WL 1026012, at *4. Hence, preemption does not apply.

Even if the Court concludes that Plaintiffs are seeking to enforce implied terms of the contract, those would not be preempted. States may not impose their own standards on airlines, but they may enforce obligations that airlines voluntarily undertake. *Wolens*, 513 U.S. at 228. Thus, implied terms are preempted only when they seek "to ensure that a party does not violate community standards of decency, fairness, or reasonableness." *Ginsberg*, 572 U.S. at 286 (internal quotation marks omitted). "When the law of a State does not authorize parties to free themselves from the covenant," or [w]hen the application of the implied covenant depends on state policy," then "a breach of covenant claim is pre-empted under the reasoning of *Wolens*." *Id.* at 287. But when state law interprets a contract to contain an implied term "to effectuate the intentions of parties or to protect their reasonable expectations," a claim for breach of the implied term is not preempted. *Id.* at 286 (internal quotation marks omitted).

Here, Plaintiffs allege that BA breached express terms of the COC in failing to provide the required remedies and failing to provide consumers with the ability to choose their remedy. Plaintiffs disclaim any reliance on non-waivable implied covenants or those based on state policy. But to the extent that the Court holds that Plaintiffs' breach of contract claims rest on breaches of implied terms, preemption would not apply because those terms are required to protect Plaintiffs' reasonable expectations based on the express terms of the contract.

Furthermore, nothing would have prevented the parties from contracting around those terms. Certainly, BA points to no authority holding that it could not have changed the terms providing remedies for canceled flights. *Dover v. British Airways, PLC (UK)*, No. 12CV5567RJDCLP, 2017 WL 4358726, at *4 n.2 (E.D.N.Y. Sept. 29, 2017) (finding that because parties had ability "to modify or exclude the implied limitations on contractual discretion by the express terms of their contract, such a claim is not preempted").

21

### D.      Mr. Dominique's claim should be stayed pending arbitration.

BA argues that Plaintiff Dominique's claim are subject to arbitration based on the Terms and Conditions of Expedia's website through which Mr. Dominique booked his ticket. Mem. at 10-14. BA requests that Mr. Dominique's claim be dismissed "with prejudice" from the case. *Id.* at 14.

Mr. Dominique does not contest that his claim is subject to arbitration per the terms of Expedia's arbitration agreement. He does not agree, however, that his claim should be dismissed. Instead, he requests that the Court stay his claim pending arbitration. The Federal Arbitration Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, **the court in which such suit is pending**, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall on application of one of the parties stay the trial of the action until such arbitration has been had** in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). The Second Circuit has held that this language requires that a claim be stayed rather than dismissed pending arbitration. *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested. The FAA's text, structure, and underlying policy command this result."). BA cites *Borrero v. Ruppert Hous. Co., Inc.*, 2009 WL 1748060, at *2 (S.D.N.Y. June 19, 2009) for its request to dismiss with prejudice. Mem. at 10. But *Borrero* predates *Katz* and is not good law. Thus, Mr. Dominique requests that his claim be stayed pending arbitration.

####    E.    BA's request to strike portions of Plaintiffs' complaint should be denied.

Plaintiffs' complaint requests that the Court, among other things, "[a]ward damages and refunds in the amount of unrefunded monies paid for BA airline tickets, in addition to statutory damages, punitive or exemplary damages, and pre-judgment and post-judgment interest, and such other relief as permitted by law" and "[e]nter injunctive relief to stop Defendants' unlawful conduct . . . ." FAC at 20. BA requests that the Court strike the phrases "statutory damages, punitive or exemplary damages" and "injunctive relief" from this request. Plaintiffs do not oppose the request to strike statutory damages, but BA's request should otherwise be denied.

In general, "the courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). "Motions to strike are generally disfavored and will be denied unless it is clear that under no circumstances could the demand succeed." *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 383 (S.D.N.Y. 2004). Moreover, "a motion to strike for insufficiency was never intended to furnish an opportunity for the determination of disputed and substantial questions of law." *Id.*

####    1.    BA's limitation of liability clause does not apply here.

BA argues that under a clause in the contract, which provides that BA is liable to its customers "only for compensatory damages which you are entitled to recover for proven losses and costs under the convention[,]" the Court is powerless to award any other relief. Mem. at 24. BA cites *Roberts v. Weight Watchers International, Inc.*, which noted that "New York courts recognize that limitation of liability provisions may be unenforceable in certain circumstances where, for example, the contract is an unenforceable contract of adhesion, or a party willfully and tortiously breaches the contract." 217 F. Supp. 3d 742, 754 n.5 (S.D.N.Y. 2016). Such a rule is common in many states. *See, e.g.*, *Doe v. Bank of Am., N.A.*, No. CV 16-3075, 2018 WL 295565, at *8 (D.N.J. Jan. 3, 2018) (holding that a limitation of liability clause in a contract of

adhesion was unenforceable because it, among other things, "forecloses any possibility that a consumer can recover for readily demonstrable damages caused by [the defendant's] potential breaching or tortious conduct"); Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another . . . are against the policy of the law. ").

Plaintiffs plausibly allege that BA willfully and tortiously breached the contract. Plaintiffs allege that BA intentionally and fraudulently misled its customers about the way to obtain a refund for a canceled flight. FAC ¶¶ 59-70. BA presented screens that were "confusing and misleading to an ordinary customer." *Id.* ¶ 62. One of the buttons on one of the screens contained false information. *Id.* ¶¶ 59, 62-63. Under BA's own authority, its limitation of liability provision does not apply here. *See Roberts*, 217 F. Supp. 3d at 754 n.5.

### 2. Punitive or exemplary damages are available.

This is a nationwide class action, and the parties have not briefed choice of law issues. Hence, at this stage, the Court has not decided—and should not decide in the context of a motion to strike—which states' laws apply to the claims of the putative class. In some states, punitive damages are available for breach of contract in certain circumstances. *See, e.g., Cuson v. Maryland Cas. Co.*, 735 F. Supp. 966, 970 (D. Haw. 1990) ("It is clear in Hawaii that punitive damages may be awarded in a breach of contract case."); *Davidoff v. Progressive Hawaii Ins. Co.*, No. 3:12-00965, 2013 WL 124353, at *2 (M.D. Tenn. Jan. 9, 2013) (holding that punitive damages for breach of contract are available "for cases involving fraud, malice, gross negligence or oppression") (internal quotation marks and brackets omitted); *Pogge v. Fullerton Lumber Co.*, 277 N.W.2d 916, 920 (Iowa 1979) (holding that "[p]unitive damages may be recovered when the breach also constitutes an intentional tort, or other illegal or wrongful act, if committed

maliciously"). Striking claims for punitive damages at this stage would thus put the cart before the horse.

Plaintiffs allege facts suggesting that punitive damages may be available where permitted. As noted above, Plaintiffs allege that BA intentionally and fraudulently misled its customers about the way to obtain a refund for a canceled flight. FAC ¶¶ 59-70. Thus, this breach of contract was also fraudulent and independently tortious.[9]

### 3.       Plaintiffs have standing to seek injunctive relief.

BA argues that Plaintiffs do not have standing to seek injunctive relief, but this argument is meritless. Plaintiffs allege ongoing harm. FAC ¶ 67. "[A] plaintiff has standing to pursue injunctive relief where the plaintiff is suffering 'continuing, present adverse effects.'" *Hill v. UnitedHealthcare Ins. Co.*, No. SACV150526DOCRNBX, 2017 WL 7038128, at *4 (C.D. Cal. Mar. 21, 2017); *see also State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96-97 (2d Cir. 2007) (holding that a plaintiff has standing to seek an injunction regarding ongoing harm). Here, Plaintiffs' harms are ongoing. BA has not provided Plaintiffs the refunds owed under the contract. Injunctive relief requiring BA to comply with its contract and provide Plaintiffs their choice of the three contractual remedies for their canceled flights would redress Plaintiffs' harms. Plaintiffs have standing to seek an injunction.

## V.    CONCLUSION

For the above reasons, BA's motion to dismiss should be denied.

---

[9] If BA argues that punitive damages are preempted, it is mistaken. Notwithstanding the ADA, states may provide remedies for violations of federal aviation regulations. *Drake v. Lab. Corp. of Am. Holdings*, 458 F.3d 48, 64 (2d Cir. 2006) ("[T]he federal government's intent to preempt substantive state-law standards does not necessarily imply an intent to preempt state-law remedies for violations of federal standards."). For similar reasons, the ADA does not preempt remedies for a breach of contract claim where the claim itself is not preempted.

Respectfully submitted,

Dated:  August 21, 2020

/s/ *Scott Grzenczyk*
Adam E. Polk
Scott Grzenczyk
Tom Watts
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
scottg@girardsharp.com
tomw@girardsharp.com

E. Michelle Drake
John G. Albanese
**BERGER MONTAGUE PC**
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel: (612) 594-5933
Fax: (612) 584-4470
emdrake@bm.net
jalbanese@bm.net

Shanon J. Carson
**BERGER MONTAGUE PC**
1818 Market Street
Suite 3600
Philadelphia, PA 19103
scarson@bm.net
215-875-4656

*Attorneys for Plaintiff*