IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

STEPHEN IDE, KAREN STEELE-CLARKE, DONALD DOMINIQUE, JR., AND PHILIP TENN, on behalf of themselves and all others similarly situated,

        Plaintiffs,

v.

BRITISH AIRWAYS, PLC (UK),

        Defendant.

Case No. 1:20-cv-03542-JMF

---

**DEFENDANT BRITISH AIRWAYS' REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT AND COMPEL ARBITRATION (IN PART)**

**DLA Piper LLP (US)**

| | |
|---|---|
| Keara M. Gordon | Haley D. Torrey (*pro hac vice* forthcoming) |
| Colleen Carey Gulliver | One Liberty Place |
| William J. Diggs | 1650 Market Street, Suite 5000 |
| 1251 Avenue of the Americas, 27th Floor | Philadelphia, PA 19103-7300 |
| New York, NY 10020-1104 | (215) 656-2436 |
| (212) 335-4500 | haley.torrey@us.dlapiper.com |
| keara.gordon@us.dlapiper.com | |
| colleen.gulliver@us.dlapiper.com | |
| william.diggs@us.dlapiper.com | |

*Attorneys for Defendant British Airways*

# TABLE OF CONTENTS

                                                  **Page**

ARGUMENT ......................................................................................................................... 2

I.     THE PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT ................................................................................................................. 2

        A.     Mr. Tenn ................................................................................................ 2

        B.     Mr. Ide and Ms. Steele-Clarke ............................................................... 3

II.    THE ADA PRE-EMPTS THE CLAIMS ................................................................. 6

        A.     The Narrow Wolens Exception for Breach of Contract Claims Does Not Apply ........................................................................................... 6

        B.     The Plaintiffs' Breach of Contract Claims Are Really Pre-Empted Claims for Breach of Good Faith and Fair Dealing or Consumer Protection Laws ............ 7

III.   THE PLAINTIFFS CAN ONLY RECOVER COMPENSATORY DAMAGES ............... 9

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abacus Fed. Savings Bank v. ADT Sec. Servs., Inc.*,
   967 N.E.2d 666 (N.Y. 2012)...........................................................................................8

*Am. Airlines, Inc. v. Wolens*,
   513 U.S. 219 (1995)..................................................................................................1, 6

*Buonasera v. Honest Co., Inc.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016)........................................................................10

*Cattaneo v. Am. Airlines, Inc.*,
   2015 WL 5610017 (N.D. Cal. Sept. 24, 2015) ............................................................2

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983).....................................................................................................10

*Cox v. Spirit Airlines, Inc.*,
   786 F. App'x 283 (2d Cir. 2019) .................................................................................6

*D'Engle v. City of New York*,
   2015 WL 4476477 (S.D.N.Y. July 9, 2015) ...............................................................8

*Davis v. Key Gas Corp.*,
   124 P.3d 96 (Kan. App. 2005) .....................................................................................4

*Davis v. VCP S., LLC*,
   297 Ga. 616 (2015) ......................................................................................................9

*Dennis v. Delta Air Lines, Inc.*,
   2011 WL 4543491 (E.D.N.Y. Aug. 18, 2011)............................................................3

*DeRose v. Putnam Management Co., Inc.*,
   398 Mass. 205 (1986) ..................................................................................................9

*Diveroli v. Am. Airlines, Inc.*,
   2019 U.S. Dist. LEXIS 190519 (S.D. Fla. 2019)........................................................2

*Drake v. Lab. Corp. of Am. Holdings*,
   458 F.3d 48 (2d Cir. 2006).........................................................................................10

*FAMM Steel, Inc. v. Sovereign Bank*,
   571 F.3d 93 (1st Cir. 2009).........................................................................................9

*Five Star Dev. Resort Communities, LLC v. iStar RC Paradise Valley, LLC*,
    2012 WL 4119561 (S.D.N.Y. Sept. 18, 2012) ..................................................................9

*Gordon v. United Cont'l Holding, Inc.*,
    73 F. Supp. 3d 472 (D.N.J. 2014) .................................................................................8

*Hall Special Situations Inv. Fund v. Basix Corp.*,
    1994 WL 132235 (S.D.N.Y. April 14, 1994) ................................................................9

*Hardwick v. Williams*,
    265 Ga. App. 752, S.E.2d 596 (2004) .........................................................................10

*People ex rel. Harris v. Delta Air Lines, Inc.*,
    247 Cal. App. 4th 884 (2016) ........................................................................................8

*Hekmat v. U.S. Transp. Sec. Admin.*,
    247 F. Supp. 3d 427 (S.D.N.Y. 2017) .......................................................................4, 5

*Hesse v. Godiva Chocolatier, Inc.*,
    2020 WL 2793014 (S.D.N.Y. May 29, 2020) ...............................................................2

*Hill v. UnitedHealthcare Ins. Co.*,
    2017 WL 7038128 (C.D. Cal. Mar. 21, 2017) ............................................................10

*Johnson v. Priceline.com, Inc.*,
    711 F.3d 271 (2d Cir. 2013) ........................................................................................10

*Kai Peng v. Uber Techs., Inc.*,
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) ............................................................................5

*Lyn-Lea Travel Corp. v. American Airlines, Inc.*,
    1999 WL 777716 (N.D. Tex. Sept. 29, 1999) ..............................................................7

*Martin v. United Airlines, Inc.*,
    727 F. App'x 459 (10th Cir. 2018) ...............................................................................3

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003) ..........................................................................9

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
    84 N.Y.2d 430 (NY. App. 1994) ..................................................................................9

*Minnick v. Clearwire US, LLC*,
    683 F. Supp. 2d 1179 (W.D. Wash. 2010) ...................................................................4

*Nicosia v. Amazon*,
    834 F.3d 220 (2d Cir. 2016) ........................................................................................10

*Nikish Software Corp.*,
 801 F. Supp. 2d 794 (S.D. Ind. 2011) ............................................................................4

*Northwest v. Ginsberg*,
 572 U.S. 273 (2014) ..................................................................................................7, 8

*O'Callaghan v. Uber Corp. of California*,
 2018 WL 3302179 (S.D.N.Y. July 5, 2018) ................................................................6

*Onanuga v. Pfizer, Inc.*,
 2003 WL 22670842 (S.D.N.Y. Nov. 7, 2003) .............................................................9

*Palin v. N.Y. Times Co.*,
 940 F.3d 804 (2d Cir. 2019) ........................................................................................2

*Pena v. British Airways, PLC (UK)*,
 2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020) .............................................................6

*Pica v. Delta Airlines, Inc.*,
 2018 WL 5861362 (C.D. Cal. Sept. 18, 2018) .............................................................8

*Roberts v. Weight Watchers Int'l, Inc.*,
 217 F. Supp. 3d 742 (S.D.N.Y. 2016) ..........................................................................9

*Romano v. Kazacos*,
 609 F.3d 512 (2d Cir. 2010) ........................................................................................7

*Shin v. Am. Airlines Grp., Inc.*,
 2017 WL 3316129 (E.D.N.Y. Aug. 3, 2017) ...............................................................8

*Starker v. Spirit Airlines*,
 2019 WL 4194572 (S.D.N.Y. Sept. 3, 2019) (FL) .............................................8, 9, 10

*State Employees Bargaining Agent Coal. v. Rowland*,
 494 F.3d 71 (2d Cir. 2007) ........................................................................................10

*Thomas v. Mayberry*,
 586 So. 2d 1325 (Fla. Dist. Ct. App. 1991) .................................................................4

*In re UBS AG Sec. Litig.*,
 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) .............................................................4

*Waul v. Am. Airlines, Inc.*,
 2003 WL 22719273 (Cal. Ct. App. Nov. 17, 2003) .....................................................7

This is a breach of contract case. The plaintiffs' opposition to BA's Motion to Dismiss ("Opposition"), like the FAC, fails to identify any express provision of the operative contract—the COC—that BA allegedly breached. The COC provided that BA would make the option of a refund or voucher available to those eligible and who requested it. BA did. Two of the plaintiffs elected to receive a voucher—which BA provided. The remaining plaintiffs bought non-refundable tickets and then failed to show up for their flight. Under the COC, their failure to appear rendered the entire ticket worthless and, given the non-refundable nature of the fare, BA was not required to refund their money. Nevertheless, BA offered them vouchers for the full price of the fare. The plaintiffs' complaint appears to be frustration that BA required them to call to obtain a refund (rather than providing an online option) and BA's customer service group experienced a heavy volume of calls during an unprecedented global pandemic that increased wait times. But the COC does not require online refunds, and the unfortunate nature of long wait times in the face of Covid-19-related cancellations does not breach the COC. (*See* Section I).

Because the plaintiffs' claims are not predicated upon a provision of the COC, their claims do not fall within the narrow exception to ADA pre-emption recognized in *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995). Although the plaintiffs style their claims as "breach of contract," they do not seek to enforce a single term to which BA "itself stipulated," as *Wolens* requires. Rather, the plaintiffs expressly seek to enlarge the terms of their contract with BA using state common law. The lower courts uniformly find that the ADA pre-empts such claims, including in circumstances identical to those alleged here. (*See* Section II.)

Even if some portion of the FAC survives (which it should not), the COC and applicable law limits the plaintiffs' recovery to compensatory damages only. (*See* Section III).

Finally, Mr. Dominique does not dispute that the Expedia's Terms of Use requires him to arbitrate his claim. As a result, BA does not address his claims further here.

Accordingly, the Court should dismiss the FAC with prejudice.

## ARGUMENT

**I. THE PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT.[1]**

    **A.    Mr. Tenn.** As explained in BA's moving brief, when a customer chooses not to appear for a flight, the cancellation of that flight and subsequent flights in the booking is not an involuntary cancellation requiring a refund under the COC. (MTD at 14-15.) To argue otherwise, the plaintiffs misconstrue the COC. (Opp. at 15-17.) The COC provides that, in those circumstances, BA can cancel the return flight as well and BA "will refund the fare … *as set out in the fare rules*." (Ex. 7, §§ 3c10, 10c1 (emphasis added.)) Non-refundable tickets are non-refundable. As the DOT recognizes, "[p]assengers who purchase a non-refundable ticket . . .are generally not entitled to a refund or travel voucher" – even if they cancel their flight due to Covid-related concerns. (Ex. 12.) Because Mr. Tenn admits that his ticket was non-refundable (Opp. at 16), he was not entitled to a "voluntary fare refund." (Ex. 7 § 10c1.) Moreover, Mr. Tenn's return ticket was "no longer valid" because he "did not use all the coupons in the sequence provided in the ticket" (Ex. 7 § 3c2), and since Mr. Tenn changed his transportation without BA's agreement,

---

[1] The plaintiffs spend considerable effort seeking to prevent the Court's consideration of documents attached to BA's Motion. (Opp. at 6-10.) They are properly before the Court. The Court "may take judicial notice of information announced on a … website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Hesse v. Godiva Chocolatier, Inc.*, 2020 WL 2793014, at *3 (S.D.N.Y. May 29, 2020) (internal quotations omitted) (collecting cases). The plaintiffs do not dispute the authenticity of any of the websites reflected in Exhibits 1-6. The Court may also consider "documents that are 'integral to the complaint,' such that the complaint 'relies heavily upon [the documents'] terms and effect,'" including BA's website (FAC ¶ 7, 13, 21, 59-60), the voucher application form and instructions on BA's website (*id.* ¶ 13), and ticket records, (*id.* ¶¶ 10, 19, 26, 33). *Hesse*, 2020 WL 2793014, at *3 (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019)); *see also Diveroli v. Am. Airlines, Inc.*, 2019 U.S. Dist. LEXIS 190519 at *17 (S.D. Fla. 2019) (considering Passenger Name Record); *Cattaneo v. Am. Airlines, Inc.*, 2015 WL 5610017, at *1 n.2 (N.D. Cal. Sept. 24, 2015) (considering plaintiff's itinerary). References herein to Exhibits 1-11 refer to those exhibits attached to BA's opening brief. In addition, BA submits Exhibit 12 with this reply brief.

his "unused flight coupons w[ere] not valid …. and [] *ha[d] no value*," (*id.* § 3c5 (emphasis added)).

The plaintiffs fail to distinguish many of BA's authorities and their attempt to distinguish two of them fail. (Opp. at 17, discussing *Martin v. United Airlines, Inc.*, 727 F. App'x 459 (10th Cir. 2018) and *Dennis v. Delta Air Lines, Inc.*, 2011 WL 4543491, at *3 (E.D.N.Y. Aug. 18, 2011)). As to *Martin*, the plaintiffs claim that the COC requires the payment of the non-refundable ticket, which, as established above, is not accurate. And their observation that *Dennis* concerned a passenger who was late, as opposed to a no-show, is immaterial. There, Delta—like United in *Martin* and like BA here—acted in accordance with the express terms of the contract.

**B.     Mr. Ide and Ms. Steele-Clarke**. The plaintiffs claim that BA breached the COC because it did not let them "choose their preferred remedy." (Opp. at 12-13.) But that is precisely what BA did. As detailed in BA's moving brief, the plaintiffs repeatedly admit that BA made options available—*including cash refunds*. (FAC ¶ 1; *see also id.* ¶ 7 ("*option* to claim a voucher"), ¶ 49 ("*option* to receive a full refund of the fare"), ¶ 59 (listing options "to re-book *or* refund") (emphasis added).) Mr. Ide and Ms. Steele-Clark admit that they viewed BA's website—which explicitly advised them to call BA on a toll-free number if they wanted a refund—but they chose not to call for a refund and instead elected to request a voucher, which they received, and which is for the full amount of the purchase price for their flights. (FAC ¶¶ 13, 21-22; Exs. 4, 5.)

Next, the plaintiffs assert that BA somehow "unlawfully interfered" with their choice (Opp. at 14), which amounts to their dissatisfaction with the timeliness of BA's customer service response in the midst of a global pandemic that devastated the airline industry. The DOT recently acknowledged the unprecedented and unavoidable impact of Covid-19 on airlines' customer service functions when it announced that it was suspending strict enforcement of 14 CFR § 259.5(b)(5), which suggests that refunds be processed within 7 or 20 days, because, "given the

3

significant volume of refund requests resulting from the COVID-19 public health emergency, processing refunds may take longer than normal." (Ex. 12 at 3.)[2]

Despite BA's challenge to do so, the plaintiffs do not (and cannot) point to any COC contractual provision[3] that mandates that BA provide refunds in any particular manner or that providing them by way of a telephone call violates a contractual provision. Requiring customers to call to obtain a refund is not a breach of contract and the Court cannot read into the contract an implied term that does not exist. Courts have rejected similar contract claims for this precise reason. *See Hekmat v. U.S. Transp. Sec. Admin.*, 247 F. Supp. 3d 427, 433 (S.D.N.Y. 2017); *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1188 (W.D. Wash. 2010) (internet service provider did not breach its service contract by providing poor customer service because the service contract lacked "a … duty to handle customer complaints in any particular fashion").

In *Hekmat*, for example, the plaintiff sued JetBlue airlines for breach of contract for "failure to deliver [its] jewelry" safely. 247 F. Supp. 3d at 433. The plaintiff, however, could "not point to any language" in the contract that JetBlue had breached. *Id.* The Court therefore held that the

---

[2] None of the cases the plaintiffs cite involve *unintentional* actions by a party, let alone those caused by a global pandemic. (*See* Opp. at 13-14.) To the contrary, in each of these cases, the offending party *intentionally* interfered in a party's contractual rights. *See, e.g., Nikish Software Corp.*, 801 F. Supp. 2d 794, 801 (S.D. Ind. 2011) (defendant intentionally disseminated defamatory letter); *Thomas v. Mayberry*, 586 So. 2d 1325, 1326 (Fla. Dist. Ct. App. 1991) (defendant intentionally evaded tenants); *Davis v. Key Gas Corp.*, 124 P.3d 96, 105 (Kan. App. 2005) ("voluntary acts"). And in *LaSociete Generale Immobiliere v. Minneapolis Cmty. Dev. Agency*, the court found a mayor's intentional announcement of displeasure with a development project *did not* "unjustifiably" hinder the developer's ability to obtain a commercial tenant where there was no evidence that the statements had any adverse effect. 44 F.3d 629, 638 (8th Cir. 1994).

[3] In its moving brief, BA demonstrated that plaintiffs cannot rely on the DOT Guidance to support their breach of contract claim because it is not incorporated into the COC, private plaintiffs do not have the power to enforce DOT regulations, and it is only guidance. (MTD at 18-20.) The plaintiffs' Opposition ignores these arguments entirely and thereby "concedes" them "through silence." *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (dismissing claim).

plaintiffs failed to plead a breach and dismissed the claim. *Id.* Because the plaintiffs here also fail to tie BA's alleged misconduct to any express provision of the COC, it fails.[4]

Finally, the plaintiffs argue that BA was "not permitted" to offer a voucher for a cancelled flight. (Opp. at 10-12.) This argument fails. Indeed, the DOT has opined that "[a]irlines . . .can offer consumers alternatives to a refund, such as credits or vouchers, so long as the option of a refund is also offered and clearly disclosed if the passenger is entitled to a refund." (Ex. 12, at 3). BA offered a refund, which it clearly disclosed, but the plaintiffs affirmatively selected a voucher through BA's website, thereby accepting BA's offer. A party is bound to a contract "by clicking a button declaring assent, so long as the party is given a sufficient opportunity to read the ... agreement, and assents thereto after being provided with an unambiguous method of accepting or declining the offer." *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 47 (E.D.N.Y. 2017) (internal quotations omitted) (plaintiffs assented to terms and conditions by clicking "YES, I AGREE" when signing up for defendant's services). Here, the form that the plaintiffs filled out to receive a voucher made clear that it was a request for a "**FUTURE TRAVEL VOUCHER**," as those words appeared in large font and bold. (FAC ¶ 60.) A box at the top of the page also expressly instructed customers to "please fill out this form to receive [their] *voucher*, or contact us to discuss your refund options." (*Id.* (emphasis added).) Given this conspicuous language, any alleged confusion as to whether the plaintiffs were electing to receive a voucher would be perplexing and, importantly, "fail[ure] to review the contract carefully is not a valid defense" to contract formation. *O'Callaghan v. Uber Corp. of California*, 2018 WL 3302179, at *8 (S.D.N.Y. July 5, 2018) (enforcing agreement), *appeal dismissed*, 2019 WL 1958696 (2d Cir. Mar. 11, 2019).

---

[4] For the same reasons identified in BA's moving brief, the plaintiffs have not been damaged. (MTD at 18, n.4.) Although the plaintiffs classify BA's argument as circular, they argue simply that a breach by BA equals damage. (Opp. at 17-18.) It is also irrelevant that the COC provides an alternative remedy—the plaintiffs have chosen their remedy and BA fulfilled its obligation.

## II. THE ADA PRE-EMPTS THE CLAIMS.

### A. The Narrow *Wolens* Exception for Breach of Contract Claims Does Not Apply.

The plaintiffs do not dispute that their claims relate to BA's prices and services. They instead classify their claims as "routine" breach of contract claims in an attempt to avoid ADA re-emption under *Wolens*. 513 U.S. 219. (Opp. at 18.) But *Wolens* only permits claims that seek to recover "solely for the airline's alleged breach of its own, self-imposed undertakings." *Id*. at 228. If the claim requires "enlargement or enhancement based on state laws or policies external to the agreement," it is pre-empted. *Id.* at 232-33. Such is the case here.

Ignoring all of BA's authority, the Opposition exclusively relies on the Second Circuit's summary order in *Cox v. Spirit Airlines, Inc.*, 786 F. App'x 283 (2d Cir. 2019). (Opp. at 25.) While *Cox* reiterates the Supreme Court's holding that the exception to ADA pre-emption applies only to "self-imposed undertakings," and "the parties' bargain," it ultimately disregarded that precedent when it held that if the contractual duty falls outside the scope of the contract then the claim must be dismissed not because of ADA pre-emption but "dismissal ... [i]s proper because" the plaintiff has "failed to state a claim." 786 F. App'x at 285. As other district courts within this Circuit have recognized, "unlike many of its sister circuits, the Second Circuit has held that claims that do not fall under the *Wolens* exception must be dismissed under Rule 12(b)(6) for failure to state a claim, not on the grounds of ADA pre-emption." *Pena v. British Airways, PLC (UK)*, 2020 WL 3989055, at *4 (E.D.N.Y. Mar. 30, 2020) (dismissing claim). *Cox* does not conform to Supreme Court precedent, but in any event, it supports dismissal of the plaintiffs' claim for failure to state a claim.

### B. The Plaintiffs' Breach of Contract Claims Are Really Pre-Empted Claims for Breach of Good Faith and Fair Dealing or Consumer Protection Laws.

The plaintiffs do not dispute that courts routinely dismiss claims for violation of consumer protection statutes and breach of good faith and fair dealing as pre-empted. They instead argue that because they did not expressly assert these causes of action, BA's argument is irrelevant and its authorities "do not apply." (*See* Opp. at 19-20.) The plaintiffs are mistaken. In each of these cases, the court found it *immaterial* what claim the plaintiff actually asserted; if "the source of the asserted obligation is not a commitment that [the airline] has made ... but plaintiffs' conception of what fairness requires," the plaintiffs' claims are pre-empted. *Waul v. Am. Airlines, Inc.*, 2003 WL 22719273, at *3-4 (Cal. Ct. App. Nov. 17, 2003). The same result follows here. The gravamen of the plaintiffs' breach of contract claims are that BA deceived them as to its refund mechanism or that they were treated unfairly. (*See, e.g.*, FAC ¶¶ 56, 58, 62, 70; Opp. at 3-5, 14-15.) Such claims are pre-empted. *See Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 1999 WL 777716 (N.D. Tex. Sept. 29, 1999) (ADA "expressly authorizes the DOT to investigate and act upon instances of unfair or deceptive conduct on the part of air carriers."). A plaintiff cannot avoid dismissal through "artful" pleading. *See Romano v. Kazacos*, 609 F.3d 512, 523 (2d Cir. 2010).

The plaintiffs rely on a fragmented sentence from *Northwest v. Ginsberg*, 572 U.S. 273, 281 (2014) to argue that to the extent the Court determines that the plaintiffs' breach of contract claim is based on breaches of implied terms, "preemption would not apply because those terms are required to protect Plaintiffs' reasonable expectations." (Opp. at 21.) *Ginsberg* rejects that exact argument. 572 U.S. at 278. The plaintiff asserted that application of the doctrine was appropriate because, if the express terms in the parties' contract were applied as written, they would "contravene[] his reasonable expectations." *Id.* The Court held that an implied covenant of good

7

faith and fair dealing claim "is pre-empted if it seeks to enlarge the contractual obligations that the parties voluntarily adopt" by acting as a "state-imposed obligation." *Id* at 286.

An implied covenant acts as a state-imposed obligation when (1) "parties cannot contract out of the covenant" because "a State's 'unwillingness to allow people to disclaim the obligation … shows that the obligation cannot be implied, but is law imposed'" and (2) the implied covenant "depends on state policy." *Id.* at 287-288. The plaintiffs are mistaken that if the parties can contract around a state-law rule, it is not pre-empted under the ADA. (*See* Opp. at 21).) Just because it is possible to contract around a given rule does not mean that the implied covenant necessarily does not "depend on state policy." In fact, many rules that parties can contract around nevertheless represent state-imposed policies and the ADA pre-empts them. *Compare Abacus Fed. Savings Bank v. ADT Sec. Servs., Inc.*, 967 N.E.2d 666, 682 (N.Y. 2012) ("parties are free to enter into contracts that absolve a party from its own negligence") with *D'Engle v. City of New York*, 2015 WL 4476477, at *5 (S.D.N.Y. July 9, 2015) (ADA pre-empted negligence claim). Accordingly, courts repeatedly have made clear post-*Ginsberg* that the ADA pre-empts alleged breaches of implied terms. *See, e.g., Shin v. Am. Airlines Grp., Inc.*, 2017 WL 3316129, at *4 (E.D.N.Y. Aug. 3, 2017) *aff'd sub nom.* 726 F. App'x 89 (2d Cir. 2018); *Pica v. Delta Airlines, Inc.*, 2018 WL 5861362, at *4-5 (C.D. Cal. Sept. 18, 2018); *People ex rel. Harris v. Delta Air Lines, Inc.*, 247 Cal. App. 4th 884, 902 (2016); *see also Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 480 (D.N.J. 2014) (claims pre-empted).

Here, "New York law does not allow a party to contract out of the implied covenant of good faith and fair dealing." *Shin,* 2017 WL 3316129, at *4.[5] Accordingly, a claim for breach of implied covenant of good faith is pre-empted. 572 U.S. at 286.

---

[5] To the extent that the law of the named plaintiffs' residency applies, the covenant is also a state obligation that is pre-empted. *See, e.g., Starker v. Spirit Airlines*, 2019 WL 4194572, at *7

8

## III. THE PLAINTIFFS CAN ONLY RECOVER COMPENSATORY DAMAGES.

BA established that the plaintiffs' request for "punitive or exemplary damages" and "injunctive relief" must be stricken. (MTD at 24-25.) In response, the plaintiffs concede that their request for statutory damages should be stricken but continue to assert that the other relief is proper. (*See* Opp. at 23.) They are mistaken for the following three reasons.

First, the plaintiffs assert that the COC's limitation of liability provision does not apply because they alleged that BA "willfully and tortiously breached the contract." (Opp. at 24 (citing *Roberts v. Weight Watchers Int'l, Inc.*, 217 F. Supp. 3d 742, n.5 (S.D.N.Y. 2016).) But, "[t]here is no such thing as a tortious breach of contract under New York law." *Onanuga v. Pfizer, Inc.*, 2003 WL 22670842, at *3 (S.D.N.Y. Nov. 7, 2003) (dismissing claim).[6]

Second, the plaintiffs seek to avoid dismissal of their request for punitive damages by suggesting that the law of fifty states, not New York law, will apply to the putative class. (Opp. at 24-25). The inquiry on a motion to dismiss a putative class action is whether the *named plaintiffs* themselves have asserted claims. *See, e.g.*, *In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*, 272 F. Supp. 2d 243, 255 (S.D.N.Y. 2003); *Hall Special Situations Inv. Fund v. Basix Corp.*, 1994 WL 132235, at *1 (S.D.N.Y. April 14, 1994). To the extent that the law of the named plaintiffs' residency applies, punitive damages are also unavailable. *See, e.g., Starker*, 2019 WL 4194572, at *7 (FL); *DeRose v. Putnam Management Co., Inc.*, 398 Mass. 205, 212

---

(S.D.N.Y. Sept. 3, 2019) (FL); *Davis v. VCP S., LLC*, 297 Ga. 616, 625 (2015) (GA); *FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 100 (1st Cir. 2009) (MA).

[6] *Roberts* relies on the holding of *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 438 (NY. App. 1994), where the contract contained a provision which exempted "willful acts" from the limitation on consequential damages (which is not present in the COC). *Metro. Life* "holds that an allegation that a breach of contract was willful … does not allow a court to disregard an unambiguous limitation of liability provision …." *Five Star Dev. Resort Communities, LLC v. iStar RC Paradise Valley, LLC*, 2012 WL 4119561, at *5 (S.D.N.Y. Sept. 18, 2012) (internal quotation omitted).

(1986) (MA); *Hardwick v. Williams*, 265 Ga. App. 752, 752, 595 S.E.2d 596, 597 (2004) (GA).[7] The ADA also pre-empts the plaintiffs' request for punitive damages because the COC limits the plaintiffs' recovery to compensatory damages. *Starker*, 2019 WL 4194572, at *8 (dismissing punitive damages claim).[8]

Finally, entirely ignoring the Supreme Court precedent and other authority BA cited, the plaintiffs argue that they have standing to seek injunctive relief because their harms are "ongoing" since "BA has not provided the refunds." (Opp. at 25.) But "a plaintiff cannot rely on a *past* injury alone because '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.'" *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)) (emphasis added). "Rather, the plaintiff must 'demonstrate that she is likely to be harmed *again* in the future in a *similar way*.'" *Id.* (quoting *Nicosia v. Amazon*, 834 F.3d 220, 239 (2d Cir. 2016)) (emphasis added).

Because the plaintiffs have not alleged that they will purchase a BA flight in the future, that BA will cancel because of Covid-19, and then deny them a refund, they lack standing.

## CONCLUSION

For the foregoing reasons, BA's Motion should be granted in its entirety.

---

[7] Because the parties have not presented a conflict of laws analysis, the Court should apply New York law to evaluate these allegations. *See, e.g., Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 276 (2d Cir. 2013).

[8] *Drake v. Lab. Corp. of Am. Holdings*, 458 F.3d 48, 51 (2d Cir. 2006) did not address punitive damages. *Hill v. UnitedHealthcare Ins. Co.*, 2017 WL 7038128, at *4 (C.D. Cal. Mar. 21, 2017) and *State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96- 97 (2d Cir. 2007) are distinguishable because they involved (a) an ongoing violation of federal law and (b) relief properly characterized as prospective.

Dated: September 16, 2020                                   Respectfully submitted,

                                                            */s/ Keara M. Gordon*
                                                   Keara M. Gordon
                                                   Colleen Carey Gulliver
                                                   William J. Diggs
                                                   DLA Piper LLP (US)
                                                   1251 Avenue of the Americas
                                                   New York, New York 10020-1104
                                                   Phone: (212) 335-4500
                                                   Facsimile: (212) 335-4501
                                                   keara.gordon@us.dlapiper.com
                                                   colleen.gulliver@us.dlapiper.com
                                                   william.diggs@us.dlapiper.com

                                                   *Attorneys for Defendant British Airways*