# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN IDE, et al., on behalf of themselves and all others similarly situated, | Case No. 1:20-cv-03542-JMF |
| Plaintiff, | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND ORDER OF DISMISSAL WITH PREJUDICE** |
| v. | |
| BRITISH AIRWAYS, PLC (UK), | |
| Defendant. | |

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND .................................................................................................. 2

III.   ARGUMENT ....................................................................................................... 8

    A.    The Settlement Class Meets All the Requirements For Certification. ................... 8

        1.    The class is numerous. ............................................................................. 10

        2.    There are questions of law and fact common to the class........................ 10

        3.    The named plaintiffs' claims and defenses are typical. ........................... 11

        4.    The named plaintiffs are adequate. ......................................................... 11

        5.    Common questions predominate over individualized ones. .................... 12

        6.    A class action is superior to other available methods. ............................ 13

    B.    The Proposed Settlement Should Be Granted Final Approval. ............................ 14

        1.    The Proposed Settlement is procedurally fair. ......................................... 16

        2.    The Proposed Settlement is substantively adequate. ............................... 17

            a.    The Proposed Settlement provides the core relief that
                Plaintiffs sought, and more. ........................................................ 18

            b.    The allocation is equitable. ......................................................... 20

            c.    The settlement provisions for attorney fees and service
                awards are reasonable. ................................................................ 21

            d.    The resolutions of Plaintiff Tenn's and Plaintiff
                Dominique's claims do not affect the fairness of the
                Proposed Settlement................................................................... 21

        3.    The remaining *Grinnell* factors weigh in favor of approval or are
            neutral. ..................................................................................................... 22

    C.    Notice Was Reasonable and Appropriate. ........................................................... 24

IV.    CONCLUSION................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abraham v. WPX Energy Prod., LLC*
   322 F.R.D. 592 (D.N.M. 2017) ................................................................................. 9

*Amchem Prod., Inc. v. Windsor*
   521 U.S. 591 (1997) ............................................................................................. 13

*Asare v. Change Grp. of New York, Inc.*
   2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ........................................................ 23

*Babcock v. C. Tech Collections Inc.*
   2017 WL 1155767 (E.D.N.Y. Mar. 27, 2017) ........................................................ 16

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*
   2019 WL 2428631 (S.D.N.Y. June 11, 2019) ........................................................ 11

*Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*
   290 F.R.D. 409 (S.D.N.Y. 2012) ..................................................................... 10, 11

*City of Detroit v. Grinnell Corp.*
   495 F.2d 448 (2d Cir. 1974) .................................................................................. 15

*Consol. Rail Corp. v. Town of Hyde Park*
   47 F.3d 473 (2d Cir. 1995) .................................................................................... 10

*D'Amato v. Deutsche Bank*
   236 F.3d 78 (2d Cir. 2001) .................................................................................... 16

*Ge Dandong v. Pinnacle Performance Ltd.*
   2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013) .................................................. 11, 12

*Goldberger v. Integrated Res., Inc.*
   209 F.3d 43 (2d Cir. 2000) .................................................................................... 15

*Hanks v. Lincoln Life & Annuity Co. of New York*
   330 F.R.D. 374 (S.D.N.Y. 2019) ........................................................................... 13

*Hochstadt v. Bos. Sci. Corp.*
   708 F. Supp. 2d 95 (D. Mass. 2010) ...................................................................... 22

*In re Advanced Battery Techs., Inc. Sec. Litig*
   298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................... 24

*In re Am. Int'l Grp., Inc. Sec. Litig.*
   689 F.3d 229 (2d Cir. 2012) .................................................................................. 12

*In re Forest Lab'ys, Inc. Sec. Litig.*
2009 WL 10738220 (S.D.N.Y. May 15, 2009) ...................................................... 23

*In re Giant Interactive Grp., Inc. Sec. Litig.*
279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................ 18

*In re IMAX Sec. Litig.*
283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................ 18

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*
2016 WL 7625708 (S.D.N.Y. Dec. 21, 2016) ......................................................... 14

*In re Linkedin User Priv. Litig.*
309 F.R.D. 573 (N.D. Cal. 2015) ............................................................................ 23

*In re MetLife Demutualization Litig.*
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................................... 22

*In re Namenda Direct Purchaser Antitrust Litig.*
462 F. Supp. 3d 307 (S.D.N.Y. 2020) ............................................................... 15, 16

*In re Nissan Radiator/Transmission Cooler Litig.*
2013 WL 4080946 (S.D.N.Y. May 30, 2013) ......................................................... 17

*In re PaineWebber Ltd., P'ships Litig.*
171 F.R.D. 104 (S.D.N.Y. 1997)
*aff'd*, 117 F.3d 721 (2d Cir. 1997) ......................................................................... 16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*
2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ........................................................ 22

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*
330 F.R.D. 11 (E.D.N.Y. 2019) ..................................................................... 12, 14, 15

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*
335 F.R.D. 1 (E.D.N.Y. 2020) ................................................................................. 10

*In re Sony SXRD Rear Projection Television Class Action Litig.*
2008 WL 1956267 (S.D.N.Y. May 1, 2008) ........................................................... 21

*In re U.S. Foodservice Inc. Pricing Litig.*
2011 WL 6013551 (D. Conn. Nov. 29, 2011)
*aff'd*, 729 F.3d 108 (2d Cir. 2013) .......................................................................... 13

*In re U.S. Foodservice Inc. Pricing Litig.*
729 F.3d 108 (2d Cir. 2013) .................................................................................... 12

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*
  302 F.R.D. 448 (N.D. Ohio 2014) ............................................................ 9

*McReynolds v. Richards-Cantave*
  588 F.3d 790 (2d Cir. 2009) ................................................................... 17

*Melito v. Am. Eagle Outfitters, Inc.*
  2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017).......................................... 22

*Puddu v. 6D Glob. Techs., Inc.*
  2021 WL 1910656 (S.D.N.Y. May 12, 2021) .......................................... 16

*Robidoux v. Celani*
  987 F.2d 931 (2d Cir. 1993) ................................................................... 10

*Rodriguez v. It's Just Lunch, Int'l*
  300 F.R.D. 125 (S.D.N.Y. 2014) ............................................................ 14

*Swinton v. SquareTrade, Inc.*
  454 F. Supp. 3d 848 (S.D. Iowa 2020)
  *appeal dismissed*, 2020 WL 6743476 (8th Cir. June 18, 2020)................ 20

*UFCW Local 1776 v. Eli Lilly & Co.*
  620 F.3d 121 (2d Cir. 2010) ................................................................... 12

*Vaccaro v. New Source Energy Partners L.P.*
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ......................................... 24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
  396 F.3d 96 (2d Cir. 2005) ................................................................ 15, 16

*Weinberger v. Kendrick*
  698 F.2d 61 (2d Cir. 1982) ..................................................................... 24

*Zeno v. Ford Motor Co.*
  238 F.R.D. 173 (W.D. Pa. 2006) ............................................................ 13

*Zepeda v. PayPal, Inc.*
  2017 WL 1113293 (N.D. Cal. Mar. 24, 2017).......................................... 23

**Rules**

Fed. R. Civ. P. 23 ................................................................................ passim

## I.    INTRODUCTION

British Airways Plc ("BA") canceled certain flights due to the Covid-19 pandemic. According to BA's contract, the General Conditions of Carriage ("COC"), when British Airways canceled those flights, customers should have been given the ability to "choose" one of three remedies: to be carried on a different flight to the same destination as soon as possible at no extra charge, to be carried on a different flight to the same destination at the customer's convenience at no extra charge, or a cash refund. But Plaintiffs allege that BA did not provide any of these remedies to Plaintiffs. Instead, Plaintiffs allege it offered vouchers for "part payment" toward a future booking, and it made obtaining a cash refund prohibitively difficult. Plaintiffs claim that these actions breached the contract.

Now, after Plaintiffs overcame BA's motion to dismiss and engaging in discovery, the parties have reached a settlement (the "Proposed Settlement"). The Proposed Settlement provides relief beyond that which BA agreed to provide class members pursuant to a recent commitment to the EU Consumer Protection Cooperation ("CPC"). While BA's commitment to the CPC provides settlement class members with canceled flights between March 1, 2020, and November 19, 2020, an opportunity to claim a refund, the Proposed Settlement provides that same opportunity to settlement class members with canceled flights between November 20, 2020, and December 31, 2021. In addition, settlement class members whose flights were canceled between March 1, 2020, and November 19, 2020 will be able to claim an additional four percent cash payment or $25, whichever is greater. Finally, BA customers who did not receive any remedy for their canceled flights, for example because they attempted to contact BA to request a refund but did not succeed and eventually stopped trying, will receive a notice of remedies informing them that they can request a refund through BA's website if they booked directly through BA. The Proposed Settlement thus provides settlement class members with the core relief that this lawsuit

sought—the opportunity to obtain refunds—and more, satisfying all requirements for substantive adequacy. No class members have objected and only five have opted out, further demonstrating that the Proposed Settlement is substantively adequate. It also bears all the hallmarks of procedural fairness and should be approved.

The settlement class also meets all the requirements of Rule 23(a) and (b)(3) for class certification: the class consists of thousands of members, there are numerous common issues of law and fact that predominate over any individualized issues, the named plaintiffs' claims are typical, both the named plaintiffs and class counsel adequately represent the class, and a class action is superior to any other available method of adjudication. Plaintiffs request that the Court grant final approval to the Proposed Settlement, certify the settlement class, and enter the proposed order dismissing the action with prejudice. The proposed final approval order will be submitted in conjunction with the reply brief on this motion so that the final number of objections and opt-outs can be included in the order. A further declaration from the settlement administrator, Angeion Group, LLP ("Angeion"), will also be filed in connection with Plaintiffs' reply brief that will summarize the notice program.

## II.    BACKGROUND

***Complaint and Amended Complaint.*** On May 6, 2020, Plaintiff Stephen Ide filed the first complaint in this Action. ECF No. 1. On June 19, 2020, Plaintiffs Ide, Karen Steele-Clarke, Donald Dominique, Jr., and Philip Tenn filed the First Amended Complaint, ECF No. 30 ("FAC"), asserting a claim for breach of contract on behalf of a putative class of U.S. passengers "who purchased at least one ticket for a British Airways flight that was canceled between January 1, 2020, and the present and who did not receive a refund[.]" FAC ¶ 71.

***Motion to Dismiss.*** On July 24, 2020, BA moved to dismiss the FAC and compel arbitration. ECF No. 31. On August 21, 2020, Plaintiffs filed their opposition. ECF No. 35.

Plaintiffs did not oppose the motion to compel arbitration as to Mr. Dominique but requested that his case be stayed rather than dismissed. On September 16, 2020, BA filed its reply. ECF No. 38. On March 26, 2021, the Court issued an opinion and order largely denying BA's motion to dismiss. ECF No. 53. The Court granted the motion to compel arbitration as to Mr. Dominique and stayed the case as to him.

*Fact Discovery.* On April 22, 2021, each side served interrogatories and requests for production of documents on the other side. The parties served responses and objections and negotiated search parameters. Plaintiffs responded to interrogatories, produced documents, and sat for depositions as follows:

| Plaintiff | Deposition Date |
| --- | --- |
| Philip Tenn | September 21, 2021 |
| Karen Steele-Clarke | September 23, 2021 |
| Stephen Ide | October 4, 2021 |

BA made prioritized productions of over 29,000 pages of documents that Plaintiffs requested they prioritize. Discovery has been contested, including one discovery dispute that Plaintiffs raised with the Court. *See* ECF No. 72.

*CPC Proposal*. While the parties were discussing a potential mediation, BA disclosed to Plaintiffs' counsel that in September 2021, BA informed the CPC that BA would offer refunds to customers worldwide who selected a voucher during the period from March 9, 2020 to/through November 19, 2020 (the "CPC Proposal"). The CPC Proposal consists of more than 93 percent of the Settlement Class. ECF No. 112 ¶ 5.

*Mediation.* In October 2021, after completion of Plaintiffs' depositions, the parties agreed to participate in a mediation session, and submitted a letter to that effect to the Court on November 1, 2021. ECF No. 80. On January 14, 2022, the parties participated in private mediation before Judge Diane M. Welsh. After all-day mediation and detailed follow-on

3

discussions, the parties made substantial progress towards agreeing on principal settlement terms on the relief provided to the Settlement Class. The parties eventually reached and signed a term sheet regarding the relief to be provided to the Settlement Class. After executing the term sheet, the parties then held separate negotiations regarding attorneys' fees, costs, and service payments to the Class Representatives. In other words, the amount of attorneys' fees, costs, and service awards were not discussed between the parties until the relief for the Settlement Class had been set forth in an executed term sheet. During this time, the parties also negotiated a modest individual settlement for Plaintiff Tenn, who is not a member of the Settlement Class for the reasons explained below. Over the next two months, the parties continued their settlement discussions, and reached agreement in priniple on settlement terms in mid-March 2022. Thereafter, the parties determined that Plaintiff Dominique is also not a member of the Settlement Class for reasons similar to those of Mr. Tenn, and the parties negotiated an individual settlement for Mr. Dominique.

 ***The Proposed Settlement.*** The parties' Proposed Settlement expands upon the relief provided by the CPC Proposal, and affords complete relief to all proposed settlement class members. Members of the settlement class are those who purchased a ticket for a BA flight, where (a) BA later canceled that flight between March 1, 2020, and December 31, 2021, (b) the customer did not cancel the flight or fail to show for the first leg of the flight prior to the cancellation of a later leg; (c) the customer did not receive a refund or rebooking from BA; and (d) the customer received a voucher from BA, which the customer did not use at all or, for passengers whose flights were canceled between March 1, 2020, and November 19, 2020 (the "March 1–November 19 Passengers"), the customer did not use in full.

Under the CPC Proposal and the Proposed Settlement, for the entire settlement class, BA will provide the opportunity to receive a 100% refund for their canceled ticket directly from BA. For the March 1–November 19 Passengers, BA will also provide the opportunity to receive four percent of the value of the purchase price, less the value of any voucher used by the passenger, or $25, whichever is greater. In addition, to passengers who meet the requirements of (a) and (b) above but have not elected a remedy—no refund, no rebooking, no voucher—and for whom BA has the email contact information for the customer, BA will send a notification by email apprising the customer of the fact that BA's records indicate that the passenger has not selected a remedy and for those passengers who booked directly, the e-mail, to the extent feasible from a technical perspective, will provide a link to BA's website where the passenger can select a remedy (a full refund, voucher, or rebooking) for the cancelled flight subject to BA's COC. These individuals are also not releasing any claims they may have against BA.

After the parties signed a binding term sheet reflecting the key terms of the Proposed Settlement, they began negotiating the amount of attorneys' fees and expenses to be paid by BA. Subject to the Court's approval, BA agreed to pay $1.26 million for Plaintiffs' counsel's fees, and Plaintiffs' expenses in an amount not to exceed $16,250, which shall be paid in addition to the relief provided to the class and shall in no way reduce the payments that class members receive. BA has likewise agreed to pay, in addition to the relief afforded to class members, service awards of $5,000 to Plaintiffs Ide and Steele-Clarke.

On June 1, 2022, the Court granted preliminary approval to the Proposed Settlement, preliminarily certified the settlement class, and approved the manner and form of notice. ECF No. 113.

*Class notice and class response.* The Court appointed experienced class action notice and claims administration firm Angeion as the settlement claims administrator and to effectuate the robust notice plan preliminary approved by the Court and effected as set forth herin. *Id.*

Pursuant to Section 1715(b) of the Class Action Fairness Act, Angeion mailed notice of the parties' settlement to the appropriate federal and state officials, including copies of the documents listed in the CAFA notice. ECF No. 114. On June 6, 2022, Angeion established a settlement website and toll-free number to enable potential Settlement Class Members to obtain information about the Settlement and to file a claim electronically. ECF No. 116. On July 15, 2022, Angeion disseminated notice to the Class via e-mail and first-class mail.On August 19, 2022, Angeion disseminated a reminder notice via-email to all Settlement Class Members for whom e-mails are available and who have not yet submitted a claim form.

On August 18, 2022, the parties notified the Court of an inadvertent exclusion from the original notice. ECF No. 116. The Court approved a supplemental notice plan for those who were inadvertently excluded (the "Supplemental Class" and "Supplemental Class Members"). ECF No. 117. In accordance with the supplemental notice plan, on August 25, 2022, Angeion disseminated via e-mail the Long Form Notice to all Supplemental Class Members for whom BA has an e-mail address and by first-class mail the Summary Notice to the last known address for those Supplemental Class Members for whom BA does not have an e-mail address, or if the e-mail is undeliverable. On September 29, 2022, Angeion disseminated a reminder notice via e-mail to the Supplemental Class Members for whom e-mails are available who have not yet submitted a claim form.

BA's records indicate the Settlement Class consists of 22,104 people on the Initial Class List and 3,962 on the Supplemental Class List, for a total of 26,066 Settlement Class members.

Weisbrot Decl. ¶¶ 10, 19. BA had e-mail addresses for 21,341 Initial Class List members and 3,952 Supplemental Class List members, for a total of over 97% of the Settlement Class. *Id.* ¶¶ 11, 20. Email notices were successfully delivered without bounceback to 20,397 Initial Class List members and 3,795 Supplemental Class members, for a total of about 93% of the class. *Id.* ¶¶ 14, 23. Angeion mailed notice to 116 Initial Class List members and 116 Supplemental Class List members for whom BA did not have a valid email address. *Id.* ¶¶ 15, 24. A total of twenty mailed notices have been returned as undeliverable, and two have been re-mailed to updated addresses. *Id.* ¶¶ 17, 26. Angeion thus "estimates that the Notice and Supplemental Notice detailed above reached 93.62% of the relevant population." *Id.* ¶ 31. Angeion also sent reminder notices. *Id.* ¶¶ 18, 27.

The deadline for class members to submit a claim form was October 3, 2022, except for those who received the supplemental notice, for whom the deadline was extended to October 25, 2022, to ensure they had at least sixty (60) days to submit a claim. The deadline for class members to object or opt-out is October 11, 2022, except for those who received the supplemental notice, for whom the deadline was extended to October 25, 2022 to ensure they had at least sixty (60) days to object or opt-out.

As of October 3, Angeion has received 2,837 claims, 5 requests to opt out, and no objections. Weisbrot Decl. ¶¶ 28-30. Plaintiffs will provide updated numbers in their reply brief in support of final approval, which is due on November 8, 2022. The final approval hearing is scheduled for November 15, 2022.

As Angeion attests in its declaration:

In my professional opinion, the proposed Notice Plan is the best notice that is practicable under the circumstances and fully comports with due process and Federal Rule of Civil Procedure 23. The Notice Plan provides for individual direct notice to the Settlement Class Members via email and/or mail, combined with the

implementation of a dedicated website and toll-free telephone support to further inform Settlement Class Members of their rights and options pursuant to the terms of the Settlement.

Weisbrot Decl. ¶ 32.

## III.    ARGUMENT

Final approval is a multi-step inquiry: first, the Court must certify the proposed settlement class; second, it must determine that the settlement proposal is "fair, reasonable, and adequate;" and third, it must assess whether notice has been provided in a manner consistent with Rule 23 and due process. Fed. R. Civ. P. 23(e)(2). The Proposed Settlement satisfies each of these requirements.

### A.    The Settlement Class Meets All the Requirements For Certification.

Federal Rule of Civil Procedure 23(a) provides that a movant must meet four requirements to be entitled to class certification: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). In addition, Federal Rule of Civil Procedure 23(b)(3) provides that the movant must show both (i) that common questions predominate over any questions affecting only individual members, and (ii) that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

In its Preliminary Approval Order, the Court preliminarily approved the following Settlement Class definition:

All persons or entities in the United States who purchased a ticket for a BA flight:

    a.  where BA later canceled that flight between March 1, 2020 and December 31, 2021; and

    b.  the customer did not cancel the flight or fail to show for the first leg of the flight prior to the cancellation of a later leg; and

    c.  the customer did not receive a refund or rebooking from BA; and

    d.  the customer received a voucher from BA and (1) with respect to the March 1 - November 19 Settlement Class Members did not already use the entire full value of the voucher; and (2) with respect to the November 20 - December 31 Settlement Class Members did not already use their voucher in whole or in part.

8

> **"March 1 – November 19 Settlement Class Members"** means all Settlement Class Members who purchased a ticket for a BA flight where BA later canceled that flight between March 1, 2020 and November 19, 2020.
>
> **"November 20 – December 31 Settlement Class Members"** means all Settlement Class Members who purchased a ticket for a BA flight where BA later cancelled that flight between November 20, 2020 and December 31, 2021.[1]

ECF No. 113.

The class definition is somewhat narrower than the putative class definition in the operative complaint. *See* ECF No. 30 at ¶ 71. Such revisions are common, since "[s]ettlement review also may provide an occasion to review the cogency of the initial class definition." Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment; *see also Abraham v. WPX Energy Prod.*, *LLC*, 322 F.R.D. 592, 611 (D.N.M. 2017) (concluding that "a plaintiff is not bound to the class definition in the operative complaint"); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 302 F.R.D. 448, 463 (N.D. Ohio 2014) (modifying a class definition after class certification to exclude certain class members whose inclusion would make the class not satisfy the requirements of Rule 23).

In particular, the revised class definition excludes two notable categories of passengers. First, the class definition excludes those passengers who canceled their flight or failed to show for the first leg of the flight prior to any cancellation of a later leg. Second, the class definition excludes those passengers whose flights were canceled after November 19, 2020, who received a voucher despite BA having changed its website to include an option for claiming a refund, and who used the voucher in whole or in part. The individuauls in these two categories are much

---

[1] The Settlement Class excludes: (1) all persons who validly opt out of the Settlement in a timely manner; (2) governmental entities; (3) counsel of record (and their respective law firms) for the Parties; (4) BA's officers, directors, and employees; (5) any judge to whom the Litigation is assigned, along with his or her staff; and (6) anyone who has already released the Released Claims. ECF No. 113.

differently postured than settlement class members, and their claims would be significantly more difficult to certify and prevail on at trial. While these individuals will receive no benefits from the settlement, they also will not release any claims that they may have.[2]

For the class definition described above, all of the requirements of Rule 23(a) and (b)(3) are satisfied.

### 1.    The class is numerous.

"In the Second Circuit, numerosity is presumed for classes of 40 or more." *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 11 (E.D.N.Y. 2020) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). "At the same time, '[c]ourts have not required evidence of exact class size or identity of class members in order to satisfy the numerosity requirement.'" *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 418 (S.D.N.Y. 2012) (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Here, the class is estimated to consist of more than 20,000 individuals.

### 2.    There are questions of law and fact common to the class.

Commonality is satisfied when class members "have claims that depend upon a common contention, that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Brooklyn Ctr.*, 290 F.R.D. at 418 (internal quotation marks omitted). This requirement "is not demanding and is met so long as there is at least one issue common to the class." *Id.* (internal quotation marks omitted).

---

[2] Compared to the class definition in the complaint, this class definition also does not include passengers whose flights were canceled in January or February 2020. The Covid-related disruptions that affected BA flights, including a partial travel ban between the United States and Europe and local lockdowns, began in March 2020.

There are numerous common questions of law and fact here, including:

- Whether BA took deliberate acts, such as changing its website, that hindered passengers' ability to request a refund for canceled flights;

- Whether hindering passengers' ability to request a refund for canceled flights constitutes a breach of BA's Conditions of Carriage; and

- Whether vouchers are one of the remedies that BA may offer to its passengers for canceled flights.

### 3. The named plaintiffs' claims and defenses are typical.

The commonality and typicality requirements "tend to merge." *Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 CIV. 8086 JMF, 2013 WL 5658790, at *5 (S.D.N.Y. Oct. 17, 2013). Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-CV-563 (JMF), 2019 WL 2428631, at *7 (S.D.N.Y. June 11, 2019) (internal quotation marks omitted). When "the alleged injuries derive from a unitary course of conduct by a single system, typicality is generally found. *Brooklyn Ctr.*, 290 F.R.D. at 419 (internal quotation marks omitted).

Here, the named plaintiffs and all members of the class are in essentially the same situation: they booked a ticket on a BA flight, BA canceled the flight, and they received a voucher rather than a refund. All claim that BA did not adequately provide them the opportunity to choose a refund and that BA thus breached the COC. Typicality is satisfied.

### 4. The named plaintiffs are adequate.

"Class representatives can adequately represent a class if they (1) have an interest in vigorously pursuing the claims of the class and (2) have no interests antagonistic to the interests of other class members." *Beach*, 2019 WL 2428631, at *8 (internal quotation marks omitted).

11

The named plaintiffs have an interest in vigorously pursuing the claims of the class because they seek the same relief for themselves as for the rest of the class: the opportunity to obtain refunds for their canceled flights. They have no interests antagonistic to the interests of other class members. They adequately represent the class.

The Court also considers whether "plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Ge Dandong*, 2013 WL 5658790, at *7; Fed. R. Civ. P. 23(g)(1) ("Unless a statute provides otherwise, a court that certifies a class must appoint class counsel."). Plaintiffs' attorneys are experienced in class actions and consumer litigation and are qualified to conduct this litigation. *See* Declaration of Adam Polk; Declaration of Shanon J. Carson.

## 5.    Common questions predominate over individualized ones.

"The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)). "For common questions to predominate over individual ones, it is not necessary for each element of plaintiffs' claims to be susceptible to classwide proof, but only for common questions to predominate over any questions affecting only individual class members." *Ge Dandong*, 2013 WL 5658790, at *8 (internal quotation marks and brackets omitted). Often, predominance is "easier to satisfy in the settlement context." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 56 (E.D.N.Y. 2019) (quoting *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012)). "Whether a contract has been breached is a question of contract interpretation that does not vary from state to state." *In re U.S. Foodservice Inc. Pricing Litig.*, No. 3:06-CV-1657 CFD, 2011 WL 6013551, at *12 (D. Conn. Nov. 29, 2011), *aff'd*, 729

12

F.3d 108 (2d Cir. 2013); *see also Hanks v. Lincoln Life & Annuity Co. of New York*, 330 F.R.D.

374, 383 (S.D.N.Y. 2019) (holding that "the applicable legal standard for breach of contract is

not materially different across jurisdictions").

The principal questions in this case relate to BA's actions, such as: the content and

interpretation of the COC, BA's refund policies throughout 2020 and 2021, the content of BA's

website at different times in the same time period, and the capacity of and scripts used by BA's

call center. These issues are largely the same for all class members, with some slight variations

over time as BA changed its conduct at different stages of the pandemic. *See Zeno v. Ford Motor

Co.*, 238 F.R.D. 173, 194 (W.D. Pa. 2006) (finding predominance met because the plaintiffs'

breach of contract theory "can be proved or disproved by reference to and interpretation of

standard form documents"). Any individualized issues relating to the actions of specific class

members are less significant than these common issues.

### 6.    A class action is superior to other available methods.

In general, four factors are pertinent to superiority:

(A) the class members' interests in individually controlling the prosecution or
defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun
by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in
the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "Confronted with a request for settlement-only class certification, a

district court need not inquire whether the case, if tried, would present intractable management

problems, for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S.

591, 620 (1997) (citation omitted). Hence, only factors (A)-(C) are relevant here.

13

All three pertinent factors favor certification. The named plaintiffs' individual damages range from a few hundred to just over a thousand dollars, and there is no reason to believe that absent class members' individual damages are significantly greater, so the class members have little interest in individually controlling the prosecution of separate actions. *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 141 (S.D.N.Y. 2014) ("[T]he Court finds that the class members have little interest in controlling the litigation individually because it would be prohibitively expensive relative to the expected recovery.") (internal quotation marks omitted). There are no similar lawsuits filed by class members, and it is desirable to concentrate the litigation in this forum because BA's North American headquarters is in this District. *See id.*

## B.    The Proposed Settlement Should Be Granted Final Approval.

Approval of a class action settlement "typically occurs in two stages:" first, "preliminary approval—where 'prior to notice to the class, a court makes a preliminary evaluation of fairness,'" and second, "final approval—where 'notice of a hearing is given to the class members, [and] class members and settling parties are provided the opportunity to be heard on the question of final court approval.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019) (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-CV-5450, 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016)). The Court granted preliminary approval on June 1, 2022. ECF No. 113. The final approval hearing is scheduled for November 15, 2022. ECF No. 117.

With respect to whether the settlement warrants final approval under Rule 23(e)(2), courts consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (listing factors), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Courts also analyze certain non-enumerated factors—in the Second Circuit, the *Grinnell* factors—because the factors in Rule 23(e)(2) were intended "not to displace any factor" previously developed by courts to analyze class action settlements "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment; *see In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311-15 (S.D.N.Y. 2020). Many of the *Grinnell* factors are substantively similar to those in Rule 23(e)(2) and may be considered together.[3]

In this analysis, "[c]ourts should remain mindful . . . 'of the "strong judicial policy in favor of settlements, particularly in the class action context."'" *Interchange Fee*, 330 F.R.D. at 27 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). From

---

[3] Specifically, the first, fourth, fifth, eighth, and ninth *Grinnell* factors are largely the same as the analysis under Rule 23(e)(2). These factors are, respectively: the complexity, expense, and likely duration of the litigation; the risk of establishing liability; the risk of establishing damages; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *See Namenda*, 462 F. Supp. 3d at 311-15.

that starting point, the Court looks to both the procedural and the substantive fairness of the

proposed settlement. *See Babcock v. C. Tech Collections Inc.*, Nos. 1:14-CV-3124 (MDG), 2:14-

CV-3576 (MDG), 2017 WL 1155767, at *4 (E.D.N.Y. Mar. 27, 2017) (citing *Wal-Mart*, 396

F.3d at 116). Both considerations weigh in favor of final approval here.

### 1.    The Proposed Settlement is procedurally fair.

The first two factors in Rule 23(e)(2) concern the procedural fairness of a settlement. Fed.

R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment; *Namenda*, 462 F. Supp. 3d at

311. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement

reached in arm's-length negotiations between experienced, capable counsel." *Puddu v. 6D Glob.*

*Techs., Inc.*, No. 15-CV-8061 (AJN), 2021 WL 1910656, at *4 (S.D.N.Y. May 12, 2021)

(quoting *Wal-Mart*, 396 F.3d at 116). There is also "a presumption of fairness when a settlement

is reached with the assistance of a mediator." *Id.*; *see also In re PaineWebber Ltd., P'ships Litig.*,

171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Here, the Proposed Settlement has a presumption of fairness because it was reached with

the assistance of an experienced mediator, Judge Diane M. Welsh, who held a full-day session

with the parties on January 14, 2021, and subsequently supervised two months of negotiations.

The negotiations were at arm's-length, *see* Fed. R. Civ. P. 23(e)(2)(B), and, as discussed further

above, counsel for Plaintiffs are experienced in consumer class actions. Discovery of the named

plaintiffs was substantially complete, and British Airways produced nearly 30,000 pages of

documents. Enough discovery was completed that the parties were adequately informed about

the strengths and weaknesses of the case. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d

Cir. 2001) (affirming settlement approval when "although no formal discovery had taken place,

the parties had engaged in an extensive exchange of documents and other information"). BA also

produced further confirmatory discovery after the parties reached the settlement. *In re Nissan*

*Radiator/Transmission Cooler Litig.*, No. 10 CV 7493 VB, 2013 WL 4080946, at *5 (S.D.N.Y.

May 30, 2013) (granting final approval in part because the parties "engaged in confirmatory

discovery in support of the proposed settlement"). Hence, this settlement bears the hallmarks of

procedural fairness. *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009)

(holding that a settlement was procedurally fair because it was the product of arm's-length

negotiations between experienced counsel after substantial discovery).

Furthermore, the class representatives and class counsel have adequately represented the

class. *See* Fed. R. Civ. P. 23(e)(2)(A). Plaintiffs Ide and Steele-Clark have performed all the

duties of class representatives, including producing documents, answering interrogatories, sitting

for depositions, and keeping informed regarding—and providing strategic input to advance—the

progress of the litigation. Moreover, for settlement, "the focus at this point is on the actual

performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2) advisory

committee's note to 2018 amendment. Here, class counsel defeated a motion to dismiss, ECF

No. 53, and has vigorously pursued discovery, including substantially completing plaintiff

discovery and completing negotiations regarding search parameters for BA's custodial searches.

When the parties could not reach agreement regarding discovery, Plaintiffs brought the dispute to

the Court and substantially prevailed. *See* ECF No. 72.

### 2.      The Proposed Settlement is substantively adequate.

The second two factors in Rule 23(e)(2) concern the substantive adequacy of the

settlement. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. At this stage,

the primary pertinent factor is the relief to the class, taking into account "the costs, risks, and

delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). "The adequacy of the amount achieved

in settlement may not be judged in comparison with the possible recovery in the best of all

possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re*

*Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (internal quotation

marks omitted). "[W]e must examine whether the settlement amount lies within a range of

reasonableness, which range reflects the uncertainties of law and fact in any particular case and

the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re*

*IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) (internal quotation marks omitted).

> **a.    The Proposed Settlement provides the core relief that Plaintiffs**
> **sought, and more.**

The Proposed Settlement provides the Settlement Class with significant economic

consideration, and more than they would likely receive if they litigated this case through trial.

The essence of Plaintiffs' breach-of-contract claim was that BA's customers were deprived of

the opportunity to request a refund. *See* ECF No. 53 ("[T]he Non-Arbitration Plaintiffs plausibly

allege that British Airways breached the COC by preventing them from choosing their preferred

remedy under Section 9(b)(3), namely, a refund of their ticket price."). Under the CPC Proposal

and the Proposed Settlement, BA will offer all Settlement Class Members the opportunity to

request a refund. This secures the core relief that Plaintiffs sought. In addition, March 1–

November 19 Passengers will receive the opportunity to receive four percent of the value of the

purchase price less the value of any voucher used by the passenger, with a minimum payment of

$25.

The value of the relief to the class also appropriately reflects the risks of continued

litigation.  BA has represented that it would oppose class certification on multiple grounds,

including that the precise factual circumstances that led to each customer not obtaining a refund

are too disparate and will predominate over any common issues, among other arguments. *See*

ECF No. 108. Plaintiffs do not expect that these arguments would have prevailed, but continued

litigation carries risk that the Court would narrow or perhaps even not certify the class for litigation purposes.

Also, on the merits, BA denies all liability. BA contends that refunds were always available to Plaintiffs and the Settlement Class, that Plaintiffs and the Settlement Class were not misled by BA's voucher page or otherwise found it confusing, and that Plaintiffs and the settlement class voluntarily requested, accepted (and in some circumstances, subsequently used) vouchers, raising such defenses as accord and satisfaction. BA will be able to point out that many passengers with canceled flights were able to contact BA and did obtain refunds, and many passengers who obtained vouchers have used them. BA contends that these facts show that BA fully performed under the COC. While Plaintiffs believe that they could defeat these defenses on the merits, these defenses present a significant risk of non-recovery.[4]

Pursuing a litigated outcome would also involve substantial delay. Preparation of experts reports would require significant expense, which would ultimately be borne by the class. After that, the parties would have to brief motions for class certification, *Daubert* challenges, and summary judgment, followed by preparation for trial. Thus, Plaintiffs could not realistically expect to go to trial before the second half of 2023. Assuming Plaintiffs prevailed at trial, BA would appeal, adding another year or more.[5] But a large segment of the class has been waiting for a refund since 2020. Adding several years of additional delay and expense would not be in the best interests of the class.

---

[4] BA provided its views regarding class certification and the merits in response to Plaintiffs' motion for preliminary approval. *See* ECF No. 108.

[5] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_appsumary0331.2021.pdf at 2 (median time from notice of appeal to disposition in the Second Circuit is 14.2 months).

### b.    The allocation is equitable.

The difference in relief provided to the March 1–November 19 Passengers and to the rest of the class reflects the fact that on November 19, 2020, BA added a functionality to its website to allows consumers to request a refund on its website and the relief already provided to the March 1-November 19 Passengers under the CPC Proposal. Hence, class members after that date face significantly greater hurdles in establishing that BA breached its contract by not providing an easily usable way for passengers to request their preferred remedy. For this reason, March 1– November 19 Passengers are eligible to receive an additional cash payment on top of their refund. This difference in remedies treats class members equitably because it reflects key underlying factual differences. *See Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 875 (S.D. Iowa 2020) (approving a settlement where "the differences in the benefits bestowed upon Refund Class Members and non-Refund Class Members reflect the differences in their respective injuries and the strength of their respective claims"), *appeal dismissed*, No. 20-2002, 2020 WL 6743476 (8th Cir. June 18, 2020).

A final benefit of the Proposed Settlement is that passengers who did not receive a voucher but otherwise would be class members will receive a notice of remedies. Some passengers may not have tried to contact BA or may have given up pursuing a remedy after, for example, failing to reach a customer service agent at BA's call center or after finding only a voucher form, rather than a refund form, on BA's website. This notice of remedies thus notifies these passengers of their opportunity to request a remedy, such as a refund, through BA's website. This relief is tailored to these passengers' specific circumstances. These passengers are also not releasing any claims they may have against BA.

20

      **c.**      **The settlement provisions for attorney fees and service awards are reasonable.**

After agreeing to the key terms of the Proposed Settlement, the parties also agreed that, separate from the relief provided to the class, subject to Court approval, BA will pay up to $1.26 million for Plaintiffs' attorney fees, up to $16,250 for Plaintiffs' attorney expenses, and up to $5,000 each to Mr. Ide and Ms. Steele-Clark. The relief made available to settlement class members was not contingent upon, or even negotiated concurrently with, the payment of attorneys' fees. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at \*15 (S.D.N.Y. May 1, 2008) ("[T]he fee was negotiated only *after* agreement had been reached on the substantive terms of the Proposed Settlement benefiting the class. This tends to eliminate any danger of the amount of attorneys' fees affecting the amount of the class recovery."). Plaintiffs provide detailed support for their request for attorney fees and service awards concurrently.

      **d.**      **The resolutions of Plaintiff Tenn's and Plaintiff Dominique's claims do not affect the fairness of the Proposed Settlement.**

Separate from the Proposed Settlement, Plaintiff Philip Tenn and Plaintiff Donald Dominique, Jr., have entered into individual settlements with BA. Discovery revealed that Mr. Tenn and Mr. Dominique do not meet the definitions for settlement class members. Plaintiff Tenn cancelled his booking prior to BA canceling any of his flights, and Plaintiff Dominique did not board his outbound flight. Consumers like Plaintiff Tenn and Plaintiff Dominique are not included in the settlement class. Accordingly, the parties negotiated individual settlements to resolve their claims.

Their individual settlements were negotiated only after relief for the settlement class, and therefore had no effect on the negotiation or relief for the settlement class. Separate settlements with individual claimants are common. *See, e.g.*, *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d

95, 100 (D. Mass. 2010) (approving settlement in which two individual plaintiffs separately settled their claims). So long as the circumstances do not suggest a conflict of interest, as is the case here, the separate resolution of these claims do not affect the fairness of the proposed settlement. *Id*. at 100 n.7 (noting that the separate settlements "will not affect the amount being paid under the proposed class settlement" and that they do "not derogate from or otherwise adversely affect the proposed Class Settlement before me.")

### 3.    The remaining *Grinnell* factors weigh in favor of approval or are neutral.

The second *Grinnell* factor—the reaction of the class—weighs in favor of the Proposed Settlement. "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy. In fact, the lack of objections may well evidence the fairness of the Settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 WL 6875472, at *16 (E.D.N.Y. Dec. 16, 2019) (quoting *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010)).

Here, as of the date of the filing, no objections and only five requests to opt out have been received. The claims administrator has received 2,837 claims out of approximately 26,066 class members.[6] Weisbrot Decl. ¶¶ 11, 19. Claims from the Supplemental Notice group are still being submitted, and Angeion's review of the validity of claims is ongoing, but the claims rate falls well within the range of approval. *See Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2017 WL 3995619, at *12 (S.D.N.Y. Sept. 11, 2017) (finding that this factor weighs in favor of approval with a claims rate of six percent and few objections or opt-outs); *see also*

---

[6] The Settlement Administrator has not yet validated these claims.

*Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017) (finding that the "reaction of the Settlement Class is favorable" with a 2.8% claims rate and few objections or opt-outs); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (finding an "overall positive reaction by the class" with a roughly six percent claims rate and few objections or opt-outs). Plaintiffs will update the Court on the final numbers on the date of their reply brief in support of final approval, which is due after the deadline for claims, objections, or requests to opt out.

The third *Grinnell* factor is the stage of the proceedings and the amount of discovery completed, with a focus on whether the case was sufficiently advanced that the parties were sufficiently informed regarding the strengths and weaknesses of the case. *See In re Forest Lab'ys, Inc. Sec. Litig.*, No. 05 CIV. 2827 (RMB), 2009 WL 10738220, at *4 (S.D.N.Y. May 15, 2009). Here, after a decision on a motion to dismiss, plaintiff discovery, and certain core discovery of BA, the parties were sufficiently informed that this factor weighs in favor of approval. *See id.* Moreover, the parties completed additional confirmatory discovery before executing the settlement agreement.

The sixth factor is the risk of maintaining the class action through trial. "In any representative action, the risk of maintaining class status through trial is present." *Asare v. Change Grp. of New York, Inc.*, No. 12 CIV. 3371 CM, 2013 WL 6144764, at *12 (S.D.N.Y. Nov. 18, 2013). This case is no exception: as discussed above, BA's position is that it had strong defenses for class certification, and also as to each named plaintiffs' claims at summary judgment. *See* ECF No. 108. Hence, this factor weighs in favor of approval. *Id.*

The seventh *Grinnell* factor—whether the defendant is able to withstand a greater judgment—"is typically relevant only when a settlement is less than what it might otherwise be

but for the fact that the defendant's financial circumstances do not permit a greater settlement." *Namenda*, 462 F. Supp. 3d at 314. This factor is thus neutral here.

      **C.**      **Notice Was Reasonable and Appropriate.**

The Court must also ensure that notice was appropriate. *See* Fed. R. Civ. P. 23(e)(1) (explaining that the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal"). First, "[a] notice program must provide the 'best notice practicable under the circumstances' including individual notice to all members who can be identified through reasonable effort." *In re Advanced Battery Techs., Inc. Sec. Litig*, 298 F.R.D. 171, 182 (S.D.N.Y. 2014). Second, "[i]f the average class member understands 'the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings,' then the notice is adequate." *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *3 (S.D.N.Y. Dec. 14, 2017) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).

This Court correctly found on preliminary approval that notice met these requirements. The parties e-mailed plain language notice of the Settlement to all Class Members for whom BA has an active e-mail address (over 93% of the proposed class). And a plain language postcard notice was sent via first-class mail to those few Class Members for whom BA does not have a current e-mail address. The Notice to the Class contained information about how to exclude oneself, object to the settlement or fee application, or file a claim. Supplemental Class Members have sixty (60) days from the date of original mailing/emailing to submit opt-out requests or to comment on or object to the Settlement, while all other Class Members had eighty (80) days. This was sufficient time to give Class Members a fair opportunity to respond.

## IV.    CONCLUSION

For the above reasons, Plaintiffs request that the Court grant final approval to the

settlement, certify the settlement class, and enter the proposed order dismissing the action with

prejudice.


Respectfully submitted,

Dated:  October 4, 2022                    /s/ *Adam E. Polk*
                                          Adam E. Polk
                                          Scott Grzenczyk
                                          Tom Watts
                                          **GIRARD SHARP LLP**
                                          601 California Street, Suite 1400
                                          San Francisco, CA 94108
                                          Telephone: (415) 981-4800
                                          Facsimile: (415) 981-4846
                                          apolk@girardsharp.com
                                          scottg@girardsharp.com
                                          tomw@girardsharp.com

                                          E. Michelle Drake
                                          John G. Albanese
                                          **BERGER MONTAGUE PC**
                                          43 SE Main Street, Suite 505
                                          Minneapolis, MN 55414
                                          Tel: (612) 594-5933
                                          Fax: (612) 584-4470
                                          emdrake@bm.net
                                          jalbanese@bm.net

                                          Shanon J. Carson
                                          **BERGER MONTAGUE PC**
                                          1818 Market Street
                                          Suite 3600
                                          Philadelphia, PA 19103
                                          scarson@bm.net
                                          215-875-4656

                                          *Attorneys for Plaintiffs*